# EXHIBIT A-1

**Allied**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | **Case No. 3:23-MD-3071**<br>**MDL No. 3071**<br><br>**This Document Relates to:**<br>**ALL CASES**<br><br>**Hon. Judge Waverly D. Crenshaw, Jr.** |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of June 25, 2024 ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and Allied Orion Group, LLC ("Allied Orion") and collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs are prosecuting claims against Allied Orion and other Defendants for allegedly conspiring to fix and inflate the price of multifamily rental housing across the country on their own behalf and on behalf of the Settlement Class in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[1] (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of Allied Orion's alleged participation in an unlawful conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for

---

[1] The actions currently centralized in MDL No. 3071 include Cases No. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00410; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

1

residential units nationwide and to exchange competitively sensitive information about rental pricing in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Second Amended Consolidated Class Action Complaint, ECF No. 530;

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from Allied Orion's alleged conduct;

WHEREAS, Allied Orion denies Plaintiffs' allegations, denies any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against it in the Action, and asserts that it has a number of valid defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against Allied Orion, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the Settlement Amount (defined below) and the value of the cooperation that Allied Orion has agreed to provide pursuant to this Agreement;

WHEREAS, Allied Orion, despite its belief that it is not liable for the claims asserted by Plaintiffs, its belief that it has good defenses thereto and without admitting any wrongdoing, fault or other actionable conduct, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement;

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date does not occur;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to Allied Orion, subject to Court approval, on the following terms and conditions:

1.     **GENERAL DEFINITIONS**.  The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a.     "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

b.     "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

c.     "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

d. "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

e. "Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (ECF No. 530. *See also* ECF No. 728).

f. "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

g. "Defendants" means those Defendants named in Plaintiffs' Complaint (ECF No. 530) (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Group, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive

Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

h. "Effective Date" shall have the meaning set forth in Paragraph 2 of this Settlement Agreement.

i. "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

j. "Execution Date" means the latest date of the execution of this Agreement by all Parties.

k. "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

l. "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses, (b) Notice and Administration Expenses; (b) any Fee and Expense Award; (c) any Service Awards to Plaintiffs; and (d) other fees and expenses, if any, authorized by the Court.

m. "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow

5

Agent (if any). All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

n. "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

o. "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

p. "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

q. "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

r. "Allied Orion's Counsel" means Jackson Walker LLP and Sims|Funk, PLC.

s. "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, Selena Vincin, and Maya Haynes.

t. "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey

6

Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

u.    "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

v.    "Preliminary Approval Order" and "Preliminary Approval" mean the order preliminarily approving the Settlement and directing notice thereof to the Settlement Class.

w.    "Properties" means any building managed by Allied Orion.

x.    "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

y.    "Releasees" means Allied Orion Group, LLC together with its past and present parents and subsidiaries, Orion Real Estate Services, Inc, Orion Real Estate Services Texas, LLC, and Orion Real Estate Services Southeast, LLC, and their respective principals, officers, directors, shareholders, agents, employees, corporate successors, and assigns or future direct and indirect parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind. However, the release will not cover other Defendants or owners of multifamily properties for which Allied Orion provides management services, even if such owners are Allied Orion's past, present, or future direct and indirect parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and

7

all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind solely to the extent a claim arises from such person's ownership of a multifamily property.

z.      "Releasors" means Plaintiffs, the Settlement Class, and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, or through the Releasors, with such claiming parties to include any and all of Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

aa.      "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

bb.      "Settlement Administrator" means the professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of this Settlement to the Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

cc. "Settlement Amount" shall be USD $550,000.00 (five-hundred fifty thousand U.S. dollars) payable in two payments as specified in Paragraph 5.

dd. "Settlement Class" means the class defined in Paragraph 3 below.

ee. "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

ff. "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

gg. "Settlement Class Period" means from October 18, 2018, to the date of Preliminary Approval.

hh. "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

ii. "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

jj. "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Allied Orion with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

2. **APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST ALLIED ORION.**

a. Allied Orion shall use its reasonable best efforts in connection with Plaintiffs' Counsel's motions for approval of this Settlement and any related documents necessary

to effectuate and implement the terms and conditions of this Settlement Agreement. Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement.

b.      Plaintiffs shall, not longer than six (6) months from the Execution Date absent agreement by Allied Orion, submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

c.      Within thirty (30) days after the Execution Date, or as soon thereafter as is practicable, Allied Orion shall supply Plaintiffs with the reasonably available contact information of Settlement Class Members who rented multifamily housing units in buildings managed by Allied Orion during the Settlement Class Period. The contact information shall be provided in a mutually agreeable electronic format. Plaintiffs shall use their reasonable best efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering this Settlement. The Settlement Administrator and Plaintiffs may request from Allied Orion additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this Agreement, and Allied Orion will not unreasonably deny any such additional requests or fail to timely produce such data, if available.

d.      Plaintiffs shall submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion"). The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

e.	Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and Allied Orion shall agree upon, and such agreement will not be unreasonably withheld.  The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

i.	Certifying for settlement purposes only the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii.	approving finally this Settlement and its terms as being a fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

iii.	directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4)

iv.	directing that Allied Orion shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Allied Orion (as provided for in Paragraph 16);

v.	directing that the Action (including the Complaint) be dismissed as to Allied Orion with prejudice and, except as provided for in this Agreement, without costs;

vi.	reserving to the Court the exclusive jurisdiction over this Settlement and this Agreement, including the interpretation, administration, and consummation of this Settlement, as well as over Allied Orion for its provision of cooperation pursuant to this Agreement;

vii.      determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to Allied Orion shall be final;

viii.      certifying the Settlement Class for settlement purposes only;

ix.      providing that Plaintiffs and Allied Orion have each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure; and

x.      providing that (1) the Court's certification of the Settlement Class for settlement purposes is without prejudice to, or waiver of, the rights of any (a) non-settling Defendant to contest certification of any other class proposed in the Action, or of (b) Allied Orion's ability to contest certification of any other class proposed in the Action should this Agreement not become final; (2) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify any class in the Action or on the Court's rulings concerning any motion to certify any class or Defendant's motion; and (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

f.      This Agreement shall become final and be deemed to have received final approval when the Court has (i) entered in the Action a final order certifying the Settlement Class described in Paragraph 3,approved this Agreement under Federal Rule of Civil Procedure 23(e), and entered a final judgment dismissing the Action with prejudice as to Allied Orion and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to Allied Orion described in (i) hereof has expired in the Action or, if appealed,

Case 3:23-cv-00357    Document 645-2    Filed 10/01/25    Page 13 of 325 PageID #: 9825

approval of this Agreement and the order and final judgment in the Action as to Allied Orion have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review (the "Effective Date"). It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and Allied Orion shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

3.    **CERTIFICATION OF A SETTLEMENT CLASS**.  Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any Owner, Managing Defendants, and/or Owner-Operator participating in RealPage's Revenue Management Solutions,[2] including its pricing software and/or lease renewal staggering software programs, or from a division, subsidiary, predecessor, agent, or affiliate of any such Owner, Managing Defendant, and/or Owner-Operator, at any time during the period of October 18, 2018 until entry of an order preliminarily approving the Settlement Agreement (the "Class Period"). Excluded from the Settlement Class are Opt-Outs; the judge presiding over this matter and any members of his judicial staff; federal governmental entities and instrumentalities of the federal government; and states and their subdivisions, agencies, and instrumentalities. Also excluded from the Settlement Class are Defendants, their parent companies, subsidiaries or affiliates, or co-conspirators.

Allied Orion agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only.  If the Effective Date does not occur, Allied Orion shall have the full ability to oppose any motion for

---

[2] "Owner," "Managing Defendants," and "Owner Operator" are defined in the Complaint and include the Defendants other than RealPage, Thoma Bravo Fund XIII, L.P., Thoma Bravo Fund XIV, L.P., and Thoma Bravo. "RealPage's Revenue Management Solutions" are defined in the Complaint.

certification of a litigation class, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against Allied Orion.

4. **SETTLEMENT CLASS'S RELEASE**.

a. Upon the occurrence of the Effective Date and in consideration of the payment by Allied Orion of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph 13 of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees from any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had or now have directly, representatively, derivatively or in any other capacity against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, arising from the conduct that was alleged or could have been alleged in this Action and relating to the Properties based on any or all of the same factual predicate of the Action, including but not limited to Allied Orion's alleged participation in a conspiracy to fix or inflate the price of multifamily residential lease prices through the use of RealPage, Inc.'s Revenue Management Solutions including, Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM") (the "Released Claims"). Released Claims shall not include: (i) any claims that arise specifically from landlord property-related obligations to a tenant under their rental agreement; (ii)

any claims relating to the enforcement of the Settlement; and (iii) any claims of any person or entity that submits a request for exclusion and whose request is accepted by the Court.

b.     In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein.   Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

c.     The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

d.     The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

5. **SETTLEMENT AMOUNT**.

      a.    Allied Orion agrees that an amount equal to USD $ 550,000.00, all in cash, will be paid on behalf of Allied Orion as the Settlement Amount in settlement of the Action, and divided in two payments, one of $300,000 (the "Initial Settlement Payment") and a second of $250,000 (the "Second Settlement Payment") inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action. The payments described above shall constitute the total amount to be paid by Allied Orion in settlement of these claims. The Initial Settlement Payment shall be paid into an interest-bearing escrow account (the "Escrow Account") maintained by an escrow agent on behalf of the Settlement Class, within thirty (30) days of the later of either the Court's grant of Preliminary Approval, or Plaintiffs providing wiring instructions to Allied Orion for the Escrow Account. The Second Settlement Payment shall be paid no later than December 31, 2025 or within 30 days of the Court's grant of Preliminary Approval, whichever is later. The Parties agree and acknowledge that none of the Settlement Amount paid by Allied Orion under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

      b.    If Allied Orion (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified above, then Settlement Class Counsel, in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the

Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

        c.     The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement, and there will be no reversion of settlement funds to Allied Orion, its insurance carriers, or any other person or entity who or which funded the Settlement Amount. Upon the occurrence of the Effective Date, neither Allied Orion, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of Allied Orion's insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

        6.     **ESCROW ACCOUNT**.  An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel.  The Escrow Account shall be administered under the Court's continuing supervision and control.

        a.     Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion

thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b. The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

c. Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

d. The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

e.    In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to Allied Orion via wire transfer all funds remaining in the Escrow Account at that time, less any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante. Allied Orion shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective. Settlement Class Counsel shall ensure that the Settlement Administrator also provides Allied Orion full and complete information related to the Escrow Account to enable Allied Orion to determine whether any taxes may be owed on the funds returned to Allied Orion.

7.    **TAX TREATMENT**.

a.    The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and Allied Orion, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation §1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations.

It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

b.  For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treas. Reg. §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

c.  All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, Allied Orion and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses.  Plaintiffs and Allied Orion agree to cooperate with the Escrow Agent, each

other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

        d.      Allied Orion, Releasees, and Allied Orion's Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each Allied Orion, Releasees, and Allied Orion's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

        e.      Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

        8.      **CLASS ADMINISTRATION AND NOTICE**.  As soon as practicable, Settlement Class Counsel will retain one or more Settlement Administrator(s) that, jointly or separately, are responsible for all aspects of settlement administration.  Such Settlement Administrator(s) shall be approved by the Court and, if approved, overseen by Settlement Class Counsel.  Allied Orion will not have any involvement in the selection of the Settlement Administrator(s), the claims administration process, or the plan of allocation of the settlement proceeds. The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement.  In no event shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice

and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

a. At no time and under no circumstances shall Plaintiffs, Allied Orion, Settlement Class Counsel, Plaintiff's Counsel, Allied Orion's Counsel, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

b. Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs. Written notice to Settlement Class Members of this Agreement shall conform to the form of notice(s) approved by the Court, after proposed notice(s) are submitted to the Court by Plaintiffs. The Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs. The procedures for submitting claims shall conform to the procedures outlined below.

c. Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form. Each Claim Form must be signed under penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

d. All Claim Forms must be received by the Settlement Administrator within the time prescribed in the Preliminary Approval Order unless otherwise ordered by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (ii)

waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted. No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e.     Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

f.     Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

g.     Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h.     All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims,

shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process. All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein. The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including but not limited to the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

        i.      No Person shall have any claim against Allied Orion, Allied Orion's Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made pursuant to this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

        9.      **EXCLUSIONS**.

        a.      Allied Orion reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

        b.      A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice. Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

        c.      Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided

that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

        d.      Allied Orion or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

      10.    **PAYMENT OF EXPENSES**.  Subject to Court approval, disbursements for payment of Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to Allied Orion, its insurance carriers, or any other person or entity who or which funded the Settlement Amount,  in the event this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses have actually been expended or incurred.  Any refund that becomes owed to Allied Orion if this Settlement does not become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court.  Other than as set forth in this Paragraph, Allied Orion shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs.  To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action and to apportion the costs of notice and administration in an equitable manner across the applicable settlements.

11. **THE SETTLEMENT FUND**.

a.  The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b.  After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation.  Allied Orion will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court.  In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

c.  The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives.  Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

12. **FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS**.

a.  Allied Orion understands that Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval of the Agreement, submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action; and/or (iii) and Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the

"Fee and Expense Award"). Allied Orion understands that Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable service awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

b. Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon the entry of the Fee and Expense Award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Amount is required, then within fifteen (15) business days after receiving notice from Allied Orion of such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction. Each law firm that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Attorneys' Fees and Expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this paragraph.

c. The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement.

d. Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph. No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of Allied Orion or the Releasees, under this Agreement.

13. **DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION**.

a. On or before April 22, 2025, in addition to any structured data already produced by RealPage, Allied Orion shall produce to Plaintiffs structured data consistent with the Parties' negotiated agreement regarding structured data on their multifamily lease transactions, in a reasonable manner to be agreed by the Parties (*i.e.,* Excel or .csv) or ordered by the mediator, that is reasonably available for the time period of January 1, 2010 through the date of the execution of the Term Sheet and answer reasonable questions concerning such structured data.

b.      Allied Orion shall produce to Plaintiffs any documents produced to any other plaintiffs, or any federal, state, or other domestic regulator, concerning the subject matter of the Action or any allegations within the same factual predicate of the Action within five (5) business days of the execution this Agreement, with any documents produced to such entities after execution of this Agreement to be produced five (5) business days after their production to such other plaintiffs or regulators, including any transcripts of governmental or regulatory proceedings or testimony involving any current or former Allied Orion personnel (so long as former personnel were questioned within the scope of their employment with Allied Orion), whether at trial, at a hearing, at a deposition, in a declaration, in an affidavit, or at a sworn interview, and any and all privilege logs associated with documents produced to any other plaintiffs, or any federal, state, or other domestic regulator concerning the subject matter of this Action or any allegations within the same factual predicate of the Action.

c.      Allied Orion will consider a reasonable request to conduct an attorney proffer on limited and previously identified topics.

d.      Allied Orion shall use reasonable efforts to assist Plaintiffs in authenticating documents and/or things produced in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations or affidavits, or, if declarations or affidavits are not reasonably sufficient, depositions, hearings, and/or at trial(s) as may be necessary for the Action. Allied Orion will consider reasonable requests for additional relevant information about Plaintiffs' claims in the Action from Interim Co-Lead Counsel, taking into account the information it has or will, or may produce in discovery in this Action or any related action, and whether providing the requested information will be burdensome.

29

e.     Within thirty (30) calendar days from the Execution Date, Allied Orion shall provide Plaintiffs the contact information for Settlement Class members who rented multifamily housing units in properties owned and/or managed by Allied Orion during the Settlement Class Period as needed to give notice to the Settlement Class, to the extent such information is reasonably available.

f.     *Arbitration Non-Enforcement.* For a period of five (5) years after final approval of the Settlement Agreement, with respect to claims or actions arising from or related to the factual predicate of the Action, Allied Orion agrees not to (a) require that any Settlement Class member arbitrate any such claims against Allied Orion or against any alleged co-conspirator or co-Defendant, (b) add a provision to any agreements with any Settlement Class member requiring that any such claims against Allied Orion be arbitrated, (c) argue that any Settlement Class member is required to arbitrate such claims against Allied Orion or against any alleged co-conspirator or co-Defendant based on principles of estoppel, and/or (d) enforce any provisions in any agreements with one or more Settlement Class members purporting to ban collective or class actions against Allied Orion.

g.     *Data Sharing.* For a period of five (5) years after the Court enters Final Judgment as to Allied Orion in this Action, or such shorter time or less restrictive injunctive relief as the Court may order, whichever is least restrictive and shortest in duration, Allied Orion shall (a) not provide to RealPage, Inc., any nonpublic data concerning multifamily residential leases for use in whole or in part, commingle with, and/or as an input of any kind in RealPage's revenue management software, or permit RealPage, Inc., or any other company providing revenue management services that Allied Orion knows or should have known uses as an input non-public data provided to RealPage, Inc. by Allied Orion's competitors, to share Allied Orion's nonpublic

data concerning multifamily residential leases for use in whole or in part, commingle with, and/or an input of any kind in RealPage's revenue management software; and (b) not contract with RealPage, Inc. or any other company providing revenue management services, to use a revenue management service or program that Allied Orion knows or should have known uses as an input non-public data provided to RealPage, Inc. by Allied Orion's competitors; provided that Settlement Class Counsel may consent, or Allied Orion may petition the Court, to delete or modify this provision based upon changed circumstances.

14. **TERMINATION AND RESCISSION**.

a. *Rejection or Alteration of Settlement Terms*. If (i) the Court refuses to grant preliminary or final approval of this Agreement or certify the Settlement Class or such grant or certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to Allied Orion or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs exceed ten percent of Settlement Class Members and Allied Orion elects to revisit the terms of this Settlement, then the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement automatically terminates, unless an extension is otherwise agreed upon by the Parties. Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement Agreement, Allied Orion and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination is appropriate, unless an extension is otherwise agreed upon by the Parties. A refusal to approve or modification or reversal on appeal based solely on or relating solely to the Settlement Class Counsel's fees and expenses award and/or Plan of Allocation shall not be deemed a refusal to approve or modification of the terms of this Settlement Agreement.

b. *Termination of Settlement*. In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Class Notice and costs of administration of the Settlement Fund, if any, shall be refunded by the escrow agent to Allied Orion pursuant to written instructions from Allied Orion's Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of March 24, 2025, and without waiver of any positions asserted in the Action prior to that date. Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c. Plaintiffs, the Settlement Class, Settlement Class Counsel, and Allied Orion agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by Allied Orion or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly or indirectly except in a proceeding to enforce or interpret this Settlement Agreement. Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms.

15.   **COVENANT NOT TO SUE**.  The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims. Plaintiffs and Allied Orion agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

16.   **ALLIED ORION RELEASE**.  Pending the Effective Date, Allied Orion agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the pending Action. Upon the Effective Date, Allied Orion shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Allied Orion, except for claims relating to the enforcement of the Settlement.

17.   **NO ADMISSION OF LIABILITY**.  The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by Allied Orion, or any Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, and shall not be used against Allied Orion or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against Allied Orion or the Releasees.

18.   **JOINT AND SEVERAL LIABILITY PRESERVED**.  This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than Allied Orion and the Releasees.  All claims against

such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class. Allied Orion's and the other Releasees' pricing of multifamily housing rental properties for the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than Allied Orion and the other Releasees. Allied Orion and the Releasees shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount and the amounts specifically agreed to in Paragraphs 5 and 10.

19. **CONFIDENTIALITY**. The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain confidential until publicly filed with the Court for approval. Nothing in Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel. Similarly, nothing in this Paragraph 19 shall prohibit Allied Orion or any Releasee from making general disclosures as necessary to comply with the securities laws and other obligations, as well as in its public filings. Following the Execution Date, Allied Orion and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement.

20. **CAFA**. Allied Orion shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

21. **CONTINUING JURISDICTION**. The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and

34

agreement by Plaintiffs and Allied Orion, including challenges to the reasonableness of any party's actions. Allied Orion will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction. The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22. **ENTIRE AGREEMENT**. This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and Allied Orion pertaining to this Settlement of the Action against Allied Orion, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and Allied Orion in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and Allied Orion and approved by the Court.

23. **BINDING EFFECT**. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and Allied Orion. Without limiting the generality of the foregoing, upon the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than Allied Orion, which is a party to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

24. **EXECUTION IN COUNTERPARTS**. This Agreement may be executed in counterparts by Plaintiffs and Allied Orion, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25. **NOTICE**. Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

26. **PRIVILEGE**. Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

27. **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**. Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement. Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28.  **NO PARTY IS THE DRAFTER**.  This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for Allied Orion.  None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29.  **HEADINGS**.  The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30.  **OPPORTUNITY TO CURE**.  If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

31.  **GOVERNING LAW**.  All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles and shall be brought, for venue purposes, in the United States District Court for the Middle District of Tennessee.

32.  **REASONABLE EXTENSIONS**.  Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

33.  **COUNSEL'S EXPRESS AUTHORITY**.  Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

Dated: June 25, 2025

For the Plaintiffs:

Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com


Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com


Swathi Bojedla
Hausfeld LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
sbojedla@hausfeld.com

For Allied Orion Group, LLC:

By: _____

Printed Name: Ricardo Rivas

Title: CEO

Dated: 06/25/2025

**Approved as to Form:**

By: _____

Printed Name:

Title:

Dated:

For Allied Orion Group, LLC:

By: _____

Printed Name:

Title:

Dated:

**Approved as to Form:**

By: _____

Printed Name:  Edwin M. Buffmire

Title:    Attorney

Dated:   June 25, 2025

# EXHIBIT A-2

## AIR

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | **Case No. 3:23-MD-3071**<br>**MDL No. 3071**<br><br>**This Document Relates to:**<br>**ALL CASES**<br><br>**Chief Judge Waverly D. Crenshaw, Jr.** |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of the Execution Date (as defined below), by and between the Plaintiffs (as defined below), on behalf of themselves and on behalf of each Settlement Class Member (as defined below), and Apartment Income REIT LLC, formerly known as Apartment Income REIT Corp., ("AIR"). AIR and Plaintiffs are referred to herein, collectively, as the "Parties" and, individually, each a "Party."

WHEREAS, Plaintiffs are prosecuting claims against AIR and other Defendants (as defined below) on their own behalf and on behalf of the Settlement Class (as defined below) in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071 (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of AIR's alleged participation in an unlawful conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for residential units nationwide and to exchange competitively sensitive information about rental pricing in violation

1

of Section 1 of the Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Complaint (as defined below);

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from AIR's alleged conduct;

WHEREAS, AIR denies Plaintiffs' allegations, denies any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against it in the Action, and asserts that it has a number of valid defenses to Plaintiffs' claims;

WHEREAS, AIR represents that (1) AIR's contract with RealPage prohibited RealPage from sharing AIR's confidential, non-public information with competitors; (2) AIR never used RealPage pricing advisors; (3) as demonstrated by public SEC filings, AIR's occupancy rates have remained consistent since it entered into the above-referenced contract with RealPage, other than a brief dip in 2020 during the COVID pandemic; (4) AIR has not received revenue management services from RealPage since the termination of that contract at the end of June 2023; and (5) AIR's current contract for revenue management services with a third-party provider prohibits the provider from (a) sharing or otherwise using AIR's confidential, non-public pricing data with AIR's competitors and (b) sharing or otherwise using AIR's competitors' confidential, non-public pricing data with AIR;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against AIR, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the

Settlement Amount (defined below) and the value of the discovery and non-monetary consideration that AIR has agreed to provide pursuant to Paragraph 13 of this Agreement;

WHEREAS, AIR, despite its belief that it is not liable for the claims asserted by Plaintiffs and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement;

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date (defined below) does not occur and this Agreement does not obtain final approval;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to AIR, subject to Court approval, on the following terms and conditions:

1.  **GENERAL DEFINITIONS**.  The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

    a.  "AIR's Counsel" means Wheeler Trigg O'Donnell LLP.

b.      "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

c.      "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

d.      "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

e.      "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

f.      "Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (ECF No. 530).

g.      "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

h.      "Defendants" means those Defendants named in Plaintiffs' Complaint (*i.e.*, Allied Orion Group, LLC; AIR d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Property Trust, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty

Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

i.      "Effective Date" shall have the meaning set forth in Paragraph 2 of this Settlement Agreement.

j.      "Escrow Account" shall have the meaning set forth in Paragraph 5 of this Settlement Agreement.

k.      "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

l.      "Execution Date" means the latest date of the execution of this Agreement by all Parties.

m.      "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

n.  "Final Approval Order" means a final order certifying the Settlement Class and approving this Agreement under Federal Rule of Civil Procedure 23(e).

o.  "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses, (b) Notice and Administration Expenses; (b) any Fee and Expense Award; (c) any Service Awards; and (d) other fees and expenses, if any, authorized by the Court.

p.  "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with: locating the Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow Account (if any).  All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

q.  "Notice Plan" means any plan and methodology used to notify the Settlement Class Members of this Settlement that is approved by the Court.

r.  "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

s.  "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

t.  "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock

company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

u.     "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, Selena Vincin, and Maya Haynes.

v.     "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey Dannenberg, P.C.; Joe Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Korein Tillery P.C.

w.     "Plan of Allocation" means the plan approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

x.     "Preliminary Approval Order" means the order preliminarily approving the Settlement and directing notice thereof to the Settlement Class.

y.     "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

z.     "Releasees" means AIR and any and all of its past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, divisions, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners,

officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind. However, the release will not cover other Defendants, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind.

aa. "Releasors" means Plaintiffs, the Settlement Class, and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, or through the Releasors, with such claiming parties to include any and all of Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, divisions, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

bb. "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

cc.     "Settlement Administrator" means the professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of this Settlement to the Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

dd.     "Settlement Amount" shall be USD $3,500,000 (three million five hundred thousand dollars) as specified in Paragraph 5.

ee.     "Settlement Class" means the class defined in Paragraph 3 below.

ff.     "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

gg.     "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

hh.     "Settlement Class Period" means from October 18, 2018 to the Execution Date of this Settlement Agreement.

ii.     "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

jj.     "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

kk.     "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon AIR with respect to any income earned by the Settlement Fund for any

9

period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

2. **APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST AIR.**

a. Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and carry out the terms of this Settlement Agreement.

b. Within sixty (60) days after the Execution Date, or as soon thereafter as is practicable, AIR shall supply Plaintiffs with the contact information of Settlement Class Members who rented multifamily housing units in buildings managed by AIR during the Settlement Class Period. The contact information shall be provided in a mutually agreeable electronic format. Plaintiffs shall use their reasonable best efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering this Settlement. The Settlement Administrator and Plaintiffs may request from AIR additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this Agreement, and AIR will not unreasonably deny any such additional requests or fail to timely produce such data, if reasonably available without undue cost or effort.

c. Plaintiffs shall, not longer than six (6) months from the Execution Date absent agreement by AIR to a further delay, submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

d. Plaintiffs also shall submit to the Court—within six (6) months from the Execution Date (absent agreement by AIR to a further delay)—a motion for authorization to

disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion"). The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice. Before submission, AIR shall have a reasonable opportunity to review and comment on the Notice Motion, and Plaintiffs shall reasonably consider and implement AIR's comments.

        e.      Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and AIR shall agree upon, and such agreement will not be unreasonably withheld. The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

        i.      certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

        ii.      approving finally this Settlement and its terms as being a fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

        iii.      directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4);

        iv.      directing that AIR shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from any and all claims and causes of that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against AIR (as provided for in Paragraph 16);

v.  directing that the Action (including the Complaint) be dismissed as to AIR with prejudice and, except as provided for in this Agreement, without costs;

vi.  reserving to the Court the exclusive jurisdiction over this Settlement and this Agreement, including the interpretation, administration, and consummation of this Settlement, as well as over AIR for its compliance with and performance of its obligations under this Agreement;

vii.  determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to AIR shall be final; and

viii.  providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, any defense, argument, or position with respect to any other class in the Action or any other action, including, without limitation, the rights of any Defendant, including AIR, to contest certification of any other class proposed in the Action, (2) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify any class in the Action or on the Court's rulings concerning any Defendant's motion related thereto; and (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

f.  This Agreement shall become final and be deemed to have received final approval when (i) the Court has entered in the Action a Final Approval Order and has entered a final judgment dismissing the Action with prejudice as to AIR and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's Final Approval Order and final judgment as to AIR described in (i) hereof has expired

in the Action or, if appealed, the Final Approval Order and final judgment in the Action as to AIR have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review (the "Effective Date"). It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and AIR shall be bound by the terms of this Agreement, and this Agreement shall not be terminated and rescinded except in accordance with Paragraphs 5 and 14.

3. **CERTIFICATION OF A SETTLEMENT CLASS**. Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any Owner, Managing Defendants, and/or Owner-Operator[1] participating in RealPage's Revenue Management Solutions,[2] including its pricing software and/or lease renewal staggering software programs, or from a division, subsidiary, predecessor, agent, or affiliate of any such Owner, Managing Defendant, and/or Owner-Operator, at any time during the period of October 18, 2018 until the Execution Date of this Settlement Agreement (the "Class Period"). Excluded from the Settlement Class are Opt-Outs; the judge presiding over this matter and any members of his judicial staff; federal governmental entities and instrumentalities of the federal government; and states and their subdivisions, agencies, and instrumentalities. Also excluded from the Settlement Class are Defendants, their parent companies, subsidiaries or affiliates, or co-conspirators.

AIR agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. If the Effective Date does not occur, AIR shall have the full ability to oppose any motion for certification of a

---

[1] "Owner," "Managing Defendants," and "Owner Operator" are defined in the Complaint and include the Defendants other than RealPage, Thoma Bravo Fund XIII, L.P., Thoma Bravo Fund XIV, L.P., and Thoma Bravo.

[2] "RealPage's Revenue Management Solutions" are defined in the Complaint.

litigation class, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against AIR.

4. **SETTLEMENT CLASS'S RELEASE**.

a. Upon the occurrence of the Effective Date and in consideration of the payment by AIR of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph 13 of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees from any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, injuries, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had, now have, or hereinafter, can, shall, or may ever have, directly, representatively, derivatively or in any other capacity against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, on account of, or in any way arising out of, any act or omission occurring, in whole or in part, prior to the Execution Date and arising from or relating to AIR's use of RealPage, Inc.'s Rental Management Software (including Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM")) or the conduct that was alleged or could have been alleged in this Action or based on any or all of the same factual predicate of the Action, including, but not limited to, AIR's alleged participation in a conspiracy to fix the prices of multifamily residential lease prices through the use of RealPage, Inc.'s Revenue Management Solutions (the "Released Claims"). Released Claims shall not include: (i) claims

against any Defendant or co-conspirator other than AIR; (ii) any claims wholly unrelated to the allegations in the Complaint, including claims based on breach of contract, state landlord-tenant regulation, negligence, and personal injury; (iii) any claims relating to the enforcement of the Settlement; and (iv) any claims of any person or entity that submits a request for exclusion and whose request is accepted by the Court. The Released Claims shall be limited to the properties owned and/or operated, in whole or in part, by AIR in the United States. For purposes of clarity, Released Claims shall not include any claims related to properties owned and/or operated, in whole or in part, by (i) Blackstone Inc., or (ii) any real estate funds managed by affiliates of Blackstone Inc. (together with Blackstone Inc., "Blackstone"), other than those properties owned and/or operated, in whole or in part, by AIR in the United States.

b.      In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein.   Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

c.      The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

d.      The Releasors agree that they may hereafter discover facts in addition to, or different from, those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by AIR that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims, and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

5.      **SETTLEMENT AMOUNT**.

a.      AIR agrees that an amount equal to USD $3,500,000 (three million five hundred thousand dollars), all in cash, will be paid on behalf of AIR as the Settlement Amount in settlement of the Action, inclusive of Settlement Class recovery amounts, the Fee and Expense Award and any other fees, Service Awards, Notice and Administration Expenses, Taxes and Tax Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action. The payment described above shall constitute the total amount to be paid by AIR in settlement of these claims. The Settlement Amount shall be paid into an escrow account (the "Escrow Account") within thirty (30) calendar days of either the Court's entry of a Preliminary Approval Order or Plaintiffs providing wire instructions to AIR, whichever occurs later. The Parties agree and acknowledge that none of the Settlement Amount paid by AIR under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

b.      If AIR (or its successor) does not pay or cause to be paid the Settlement Amount, in full, within the time period specified above, then Settlement Class Counsel, in its sole discretion, may, at any time prior to such payment being made: (i) terminate and rescind the

Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount, in full, into the Escrow Account.

        c.    The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement. Upon the occurrence of the Effective Date, neither AIR, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of AIR's insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

        6.    **ESCROW ACCOUNT**.  An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel.  The Escrow Account shall be administered under the Court's continuing supervision and control.

        a.    Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion

thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b.     The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund.

c.     Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

d.     The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

e.     In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to AIR via wire transfer within fifteen (15) days of notice of the disapproval, rescission, termination, or failure of the Agreement to be effective, all funds remaining in the Escrow Account at that time, less any reasonable unpaid Notice and Administration Expenses, Taxes, and Tax Expenses incurred by Settlement Class Counsel in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement (as provided in Paragraph 10); provided, however, that any reimbursement under this Paragraph 6(e) shall be calculated as the *pro rata* share of such reasonable unpaid expenses in proportion to AIR's Settlement Amount in relation to all of the settlements for which those expenses were incurred. AIR shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective. Within the same fifteen (15) days, Settlement Class Counsel shall ensure that the Settlement Administrator also provides AIR full and complete information related to the Escrow Account to enable AIR to determine whether any taxes may be owed on the funds returned to AIR.

7.     **TAX TREATMENT**.

a.     The Parties agree that the Settlement Fund is intended at all times to be and shall, to the maximum extent permitted by law, be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and AIR, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this

19

paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation §1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

        b.    For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treas. Reg. §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

        c.    All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, AIR and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other

amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses. Plaintiffs and AIR agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

        d.     AIR, Releasees, and AIR's Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each AIR, Releasees, and AIR's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

        e.     Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

        8.     **CLASS ADMINISTRATION AND NOTICE**.  As soon as practicable, Settlement Class Counsel will retain one or more Settlement Administrators that, jointly or separately, are responsible for all aspects of settlement administration.  Such Settlement Administrator shall be approved by the Court and, if approved, overseen by Settlement Class Counsel.  Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement. In no event shall Plaintiff or Settlement Class Counsel be responsible for paying any amount of the Notice and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single notice to the extent possible.

a.      At no time and under no circumstances shall Plaintiffs, AIR, Settlement Class Counsel, Plaintiff's Counsel, AIR's Counsel, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

b.      Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs.  Written notice to Settlement Class Members of this Agreement shall conform to the form of notice(s) approved by the Court, after proposed notice(s) are submitted to the Court by Plaintiffs.  The Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs. The procedures for submitting claims shall conform to the procedures outlined below.

c.      Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form.  Each Claim Form must be signed under penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

d.      All Claim Forms must be received by the Settlement Administrator within the time prescribed in the Preliminary Approval Order unless otherwise ordered by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted.  No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, or the

Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e.      Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

f.      Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

g.      Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h.      All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process.  All Plaintiffs, Settlement Class Members, Claimants, and Releasors

expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein. The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

i.    No Person shall have any claim against AIR, AIR's Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

9.    **EXCLUSIONS**.

a.    AIR reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

b.    A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice. Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement upon the Effective Date.

c.    Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

24

d.    AIR or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

10.    **PAYMENT OF EXPENSES**.  Subject to Court approval, disbursements for payment of Notice and Administration Expenses and Tax and Tax Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to AIR in the event this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses previously have actually been expended or incurred; provided, however, that AIR's portion of any such expenses not refundable under this Paragraph 10 shall be calculated as the *pro rata* share of such expenses in proportion to AIR's Settlement Amount in relation to all of the settlements for which those expenses were incurred.  Otherwise, the Settlement Fund shall be fully refundable to AIR if this Settlement does not become final or is rescinded or otherwise fails to become effective, and any refund that is owed to AIR shall be paid in accordance with this Agreement (including, without limitation, Paragraphs 6(e), 12(b), and 14(b)) and may be paid out of the Escrow Account without approval of the Court.  Other than as set forth in this Paragraph, AIR shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including service awards, attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs.  To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action and to apportion the costs of notice and administration in an equitable manner across the applicable settlements.

11.    **THE SETTLEMENT FUND**.

a.      The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b.      After the Effective Date, the Net Settlement Fund shall be distributed in accordance with a Plan of Allocation, subject to approval by the Court. AIR will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

c.      The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives. Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

12.      **FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS.**

a.      AIR understands that Settlement Class Counsel may, at a time to be determined in its sole discretion after entry of the Preliminary Approval Order, submit an application or applications to the Court (the "Fee and Expense Application") for: (i) a Fee and Expense Award that includes (a) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (b) reimbursement of expenses and costs incurred in connection with prosecuting the Action, (c) plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court; and/or (ii) Service Awards for Plaintiffs. AIR understands that Settlement Class Counsel reserve

the right to make additional applications in this Action for Court approval of fees and expenses incurred and reasonable service awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except as expressly set forth in this Agreement and to the extent paid out of the Settlement Fund.

b.      After the Court's entry of the Final Approval Order, attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon the entry of the Fee and Expense Award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Amount is required, then within fifteen (15) business days after receiving notice from AIR of such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction.  Each law firm that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Fee and Expense Award, agrees, on behalf of itself and each partner, shareholder, or member of it, that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this paragraph.

c. The procedure for and the allowance or disallowance by the Court of the Fee and Expense Application and/or Service Awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to the Fee and Expense Application, the Fee and Expense Award or Service Award, or any appeal from any such order or award, shall not operate to terminate or rescind this Agreement, or affect or delay the finality of the judgment approving this Settlement.

d. Nothing in this Paragraph 12, nor anything related to the Fee and Expense Application, the Fee and Expense Award or the Service Award shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph. No order of a court or modification or reversal on appeal of any order of the Court concerning any attorney's fees, costs, expenses, or service awards shall constitute grounds for termination of this Agreement.

13. **DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION**.

a. As a material term to this Settlement, AIR agrees to provide the following voluntary discovery:

i. AIR shall produce to Plaintiffs, by the deadline to do so under any scheduling order entered by the Court and in a reasonable manner to be agreed by the Parties, YieldStar structured data in its possession, custody, or control on AIR's multifamily lease transactions for the period January 1, 2014, through the Execution Date; however, if RealPage, Inc. or its affiliates have substantially the same data fields, at the same level of granularity, in a

form agreed upon by the Parties, AIR may request that RealPage, Inc. or its affiliates provide such data to Plaintiffs, and if production is made under the terms of this subparagraph, AIR shall be relieved of its obligation to make its own data production;

ii. AIR shall answer reasonable questions concerning such structured data within 60 days of its production;

iii. AIR shall produce to Plaintiffs, by the deadline to do so under any scheduling order entered by the Court and in a reasonable manner to be agreed by the Parties, any documents produced by AIR, to any other plaintiffs, or any federal, state, or other domestic regulator, concerning the subject matter of the Action, with any documents produced to such entities after the execution of this Agreement to be produced within 10 days after their production to such other plaintiffs or regulators;

iv. AIR shall produce to Plaintiffs, by the deadline to do so under any scheduling order entered by the Court and in a reasonable, proportional manner and scope to be agreed by the Parties (including with respect to custodians and topics), AIR's external e-mail communications to and from RealPage, Inc. from January 1, 2016 through June 30, 2023, that are related to the allegations in the Complaint. Provided however, AIR will not produce any communications subject to a valid privilege claim;

v. AIR shall make available, within thirty (30) days prior to the deadline for depositions under any scheduling order entered by the Court or as otherwise agreed by the Parties, one appropriately noticed 30(b)(6) witness, for a

deposition not to exceed five (5) record hours regarding topics covered by the attorney proffer described in Paragraph 13(a)(vi);

     vi.   AIR shall make an attorney proffer subject to the mutual agreement of the Parties;

     vii.   AIR shall use reasonable efforts to assist Plaintiffs in authenticating documents and/or things produced by AIR in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations or affidavits, or, if declarations or affidavits are not reasonably sufficient, through an additional deposition or depositions of not more than three (3) record hours total.

     b.    The Parties agree that all discovery outlined above shall be kept confidential subject to the protective order entered in the Action. The Settlement Class, Plaintiffs, and Plaintiffs' Counsel shall not use or disclose such discovery outside of the Action except as required by law or pursuant to court order, in which case Plaintiffs' Counsel shall give reasonable prior notice to AIR so that AIR has an opportunity to object to any such use or disclosure.

     c.    If the Parties have a dispute over the reasonable scope of the voluntary discovery provided herein, or AIR's performance with respect to the voluntary discovery, the Parties reserve their rights to address those disputes through third party discovery procedures before the Court.

     d.    The Settlement Class, Plaintiffs, and Plaintiffs' Counsel shall suspend all proceedings and activities with respect to AIR in the Action pending the Effective Date, except as provided for in this Paragraph 13 above.

e.     During the pendency of this Action, with respect to the claims litigated in this Action, AIR agrees not to join or support any attempt by Defendants to enforce, through equitable estoppel, any arbitration provision or class/collective action waivers between AIR and any Settlement Class Member unless this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal).

f.   For a period of five (5) years after the Court's entry of the Final Approval Order, AIR shall (a) not permit RealPage, or any other company providing revenue management services to share with AIR's competitors AIR's confidential, non-public price data concerning multifamily residential leases; and (b) not contract with RealPage, Inc. or any other company providing revenue management services, to receive pricing recommendations that AIR knows are generated using as an input current, non-public pricing data provided by AIR's competitors to RealPage, Inc. or any other company providing revenue management services.

14.    **TERMINATION AND RESCISSION**.

a.     *Rejection or Alteration of Settlement Terms.*  If (i) the Court refuses to grant preliminary or final approval of this Agreement or certify the Settlement Class, or such grant of approval or certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to AIR or such final judgment is not affirmed on appeal or the Effective Date otherwise does not occur; or (iii) if Opt-Outs exceed ten percent of Settlement Class Members and AIR elects to revisit the terms of this Settlement, then in each case the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement automatically terminates and is rescinded, unless an extension is otherwise agreed by the Parties.  Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement Agreement, AIR and Plaintiffs

agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination and rescission is appropriate, unless an extension is otherwise agreed upon by the Parties. Any refusal to approve by the Court or any approval conditioned on a modification or any reversal on appeal that is based solely on, or relating solely to, the Fee and Expense Award, Service Award, and/or Plan of Allocation shall not be deemed a refusal to approve or modification of the terms of this Settlement Agreement.

b. *Termination of Settlement*. In the event of termination and rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less any Notice and Administration Expenses and Tax and Tax Expenses expended or incurred and allocated to AIR on a *pro rata* basis pursuant to Paragraphs 6(e) and 10, shall be refunded by the Escrow Agent to AIR pursuant to written instructions from AIR's Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of February 2, 2024, and without waiver of any defense, argument, or positions in the Action. Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c. Plaintiffs, the Settlement Class, Settlement Class Counsel, and AIR agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by AIR or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly or indirectly except in a proceeding to enforce,

implement, interpret or establish the terms of this Settlement Agreement. Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408.

15. **COVENANT NOT TO SUE**. The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims.

16. **AIR RELEASE**. Pending the Effective Date, AIR agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any and all claims relating to the institution, prosecution, or settlement of the pending Action. Upon the Effective Date, AIR shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against AIR, except for claims relating to the enforcement of the Settlement.

17. **NO ADMISSION OF LIABILITY**. The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by AIR, or any Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, and shall not be used against AIR or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against AIR or the Releasees.

18. **LIMITATION OF AGREEMENT TO AIR'S PROPERTIES**. For purposes of clarity, this Settlement, including, without limitation, the Released Claims that are released in Paragraph 4,

and the discovery obligations and non-monetary consideration set forth in Paragraph 13, shall not relate to properties owned and/or operated, in whole or in part, by Blackstone, other than those properties owned and/or operated, in whole or in part, by AIR in the United States prior to AIR's acquisition by Blackstone. Additionally, subject to Paragraph 24, this Settlement shall not impose any obligations on (i) Blackstone; or (ii) companies or properties owned and/or operated in whole or in part by Blackstone, other than AIR or those properties owned and/or operated by AIR prior to the acquisition.

19. **OTHER LIMITATIONS**.  This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than AIR and the Releasees.  All claims against such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class.  AIR and the Releasees shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount or such lesser amounts specifically agreed to in Paragraphs 10 and 14.

20. **CONFIDENTIALITY**.  This Settlement Agreement shall remain confidential until publicly filed with the Court for approval; ***provided however***: (i) AIR and Plaintiffs can each inform other parties to this Action, third-parties, and the public of the fact that they have reached a settlement in principle, as well as the Settlement Amount; and (ii) after the Execution Date, all other individual terms of the Settlement may be disclosed to third-parties or the public prior to it being publicly filed with the Court for approval.  Nothing in this Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel.  Similarly, nothing in this Paragraph 19 shall prohibit AIR or any Releasee from making disclosures as reasonably necessary to affiliates, directors, officers, partners, members, agents, representatives, joint venturers, lawyers, accountants, advisors, bankers, tax advisors, auditors, insurers, reinsurers,

regulators, or other professionals, including to other parties or professionals involved in this Action, as well as in its public filings; ***provided that,*** the disclosure of the information is reasonably necessary to effectuate the terms of this Agreement or for legal, tax, accounting, insurance, reporting, financial planning, or governmental compliance purposes.

21. **CAFA**. AIR shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished; ***provided however***, at AIR's sole election, AIR may choose to pay the Settlement Administrator to send the notices required by CAFA.

22. **CONTINUING JURISDICTION**. The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and AIR, including challenges to the reasonableness of any Party's actions. AIR will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction. The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

23. **ENTIRE AGREEMENT**. This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and AIR pertaining to this Settlement of the Action against AIR, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and AIR in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and AIR and approved by the Court.

24.    **BINDING EFFECT**.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and AIR.  Without limiting the generality of the foregoing, upon the Effective Date, each and every covenant and agreement (including, without limitation, Paragraph 18) that are made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors.  The Releasees (other than AIR, which is a Party to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.  Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any right or remedy under or by reason of this Agreement to any Person other than the Parties, any successors and assigns of the Parties, Settlement Class Members, Releasors, and Releasees.

25.    **EXECUTION IN COUNTERPARTS**.  This Agreement may be executed in counterparts by Plaintiffs and AIR, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

26.    **NOTICE**.  Where this Agreement requires either Party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 26), or letter by overnight delivery to the undersigned counsel of record for the Party to whom notice is being provided.

27.    **PRIVILEGE**.  Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection,

or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

28. **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**.  Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement.  Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel.  Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

29. **NO PARTY IS THE DRAFTER**.  This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for AIR.  None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

30. **HEADINGS**.  The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

31. **OPPORTUNITY TO CURE:**  If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

32.     **GOVERNING LAW:**  All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles.

33.     **REASONABLE EXTENSIONS:**  Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

34.     **COUNSEL'S EXPRESS AUTHORITY.**  Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

Dated: August __12__, 2024

For the Plaintiffs:

_(signature)_

Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughling@scott-scott.com

_(signature)_

Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com

_(signature)_

Swathi Bojedla
Hausfeld LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
sbojedla@hausfeld.com

39

Dated: August /5 , 2024

For Apartment Income REIT LLC:

_____

Lisa R. Cohn
Apartment Income REIT LLC
President and General Counsel
4582 S. Ulster St. Suite 1700
Denver, CO 80237

40

# EXHIBIT A-3

**Avenue5**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | **Case No. 3:23-MD-3071**<br>**MDL No. 3071**<br><br>**This Document Relates to:**<br>**ALL CASES**<br><br>**Hon. Judge Waverly D. Crenshaw, Jr.** |

**SETTLEMENT AGREEMENT**

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of September 26, 2025 ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and Avenue5 Residential LLC ("Avenue5") and collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs are prosecuting claims against Avenue5 and other Defendants for allegedly conspiring to fix and inflate the price of multifamily rental housing across the country on their own behalf and on behalf of the Settlement Class in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[1] (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of Avenue5's alleged participation in an unlawful conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for

---

[1] The actions currently centralized in MDL No. 3071 include Cases No. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

residential units nationwide and to exchange competitively sensitive information about rental pricing in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Second Amended Consolidated Class Action Complaint, ECF No. 530;

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from Avenue5's alleged conduct;

WHEREAS, Avenue5 denies Plaintiffs' allegations, denies any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against it in the Action, and asserts that it has a number of valid defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against Avenue5, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the Settlement Amount (defined below) and the value of the cooperation that Avenue5 has agreed to provide pursuant to this Agreement;

WHEREAS, Avenue5, despite its belief that it is not liable for the claims asserted by Plaintiffs and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement;

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date does not occur;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to Avenue5, subject to Court approval, on the following terms and conditions:

1.   **GENERAL DEFINITIONS**.  The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a.   "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

b.   "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

c.   "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

d.　"Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

e.　"Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (Dkt. 530, re-filed across the consolidated cases on February 5, 2024, at Dkt.728).

f.　"Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

g.　"Defendants" means those Defendants named in Plaintiffs' Complaint (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Property Trust, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo

Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

h.     "Effective Date" shall have the meaning set forth in Paragraph 2 of this Settlement Agreement.

i.     "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

j.     "Execution Date" means the latest date of the execution of this Agreement by all Parties.

k.     "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

l.     "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses, (b) Notice and Administration Expenses; (b) any Fee and Expense Award; (c) any Service Awards to Plaintiffs; and (d) other fees and expenses, if any, authorized by the Court.

m.     "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized

Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow Agent (if any). All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

n. "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

o. "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

p. "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

q. "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

r. "Avenue5's Counsel" means Baker Botts L.L.P.

s. "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, Maya Haynes, individually and on behalf of the Settlement Class Members.

t. "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey

Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

u.     "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

v.     "Preliminary Approval Order" and "Preliminary Approval" mean the order preliminarily approving the Settlement.

w.     "Properties" means any multifamily rental properties managed and/or owned in whole or in part by Avenue5, that at any point during the Settlement Class Period were subject to a license for RealPage's Revenue Management Solutions pricing recommendations for multifamily rental units.  The Properties account for all those for which Avenue5 is deemed to have participated in RealPage's RMS as described in Paragraph 3 of the Agreement defining the "Settlement Class."

x.     "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

y.     "Releasees" means Avenue5 and any and all of its past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind.  For the avoidance of doubt, "Releasees" does not include other Defendants or owners of Properties for which Avenue5 provides management services.

z. "Releasors" means Plaintiffs, the Settlement Class, and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, or through the Releasors, with such claiming parties to include any and all of Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

aa. "Revenue Management Solutions" or "RMS" means Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM"), and any RealPage product that incorporates RMS (i.e., Demandx).

bb. "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

cc. "Settlement Administrator" means the professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of this Settlement to the Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

dd.    "Settlement Amount" shall be USD $3,800,000.00 (three million eight-hundred thousand U.S. dollars) as specified in Paragraph 5.

ee.    "Settlement Class" means the class defined in Paragraph 3 below.

ff.    "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

gg.    "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

hh.    "Settlement Class Period" means from October 18, 2018 to the date of Preliminary Approval.

ii.    "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

jj.    "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

kk.    "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Avenue5 with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

2.    APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST AVENUE5.

a.    Avenue5 shall use its reasonable best efforts in connection with Plaintiffs' Counsel's motions for approval of this Settlement and any related documents necessary to

effectuate and implement the terms and conditions of this Settlement Agreement. Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement.

b.       Plaintiffs shall, on the schedule established by the Court, submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

c.       Within thirty calendar (30) days after the Execution Date, or as soon thereafter as is practicable, Avenue5 shall supply Plaintiffs with the contact information of Settlement Class Members who rented multifamily housing units in Properties managed by Avenue5 during the Settlement Class Period. To the extent necessary to effectuate notice to Settlement Class Members, Avenue5 shall make reasonable efforts to supplement the contact information to account for additional Settlement Class Members who may have been added through to the entry of an order preliminarily approving the Settlement Agreement. The contact information shall be provided in a mutually agreeable electronic format. Plaintiffs shall use their reasonable best efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering this Settlement. The Settlement Administrator and Plaintiffs may request from Avenue5 additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this Agreement, and Avenue5 will not unreasonably deny any such additional requests or fail to timely produce such data, if available.

d.     Plaintiffs shall, on the schedule established by the Court and without unnecessary delay,, submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion").  The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

e.     Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and Avenue5 shall agree upon, and such agreement will not be unreasonably withheld.  The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

i.     certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii.     approving finally this Settlement and its terms as being a fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

iii.     directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4)

iv.     directing that Avenue5 shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Avenue5 (as provided for in Paragraph 16);

11

v.        directing that the Action (including the Complaint) be dismissed as to Avenue5 with prejudice and, except as provided for in this Agreement, without costs;

vi.        reserving to the Court the exclusive jurisdiction over this Settlement and this Agreement, including the interpretation, administration, and consummation of this Settlement, as well as over Avenue5 for its provision of cooperation pursuant to this Agreement;

vii.        determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to Avenue5 shall be final;

viii.        providing that Plaintiffs and Avenue5 have each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure; and

ix.        providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any (a) non-settling Defendant, to contest certification of any other class proposed in the Action, or of (b) Avenue5's right to contest certification of any other proposed class in the Action should this Agreement not become final as described in subsection (f) to this Paragraph; (2) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify any class in the Action or on the Court's rulings concerning any Defendant's motion; and (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

f.        This Agreement shall become final and be deemed to have received final approval when (i) the Court has entered in the Action a final order certifying the Settlement Class

described in Paragraph 3, approved this Agreement under Federal Rule of Civil Procedure 23(e), and entered a final judgment dismissing the Action with prejudice as to Avenue5 and without costs other than those provided for in this Agreement; and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to Avenue5 described in (i) hereof has expired in the Action or, if appealed, approval of this Agreement and the order and final judgment in the Action as to Avenue5 have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review (the "Effective Date"). It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and Avenue5 shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

3. **CERTIFICATION OF A SETTLEMENT CLASS**. Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any Owner, Managing Defendants, and/or Owner-Operator participating in RealPage's Revenue Management Solutions,[2] including its pricing software and/or lease renewal staggering software programs, or from a division, subsidiary, predecessor, agent, or affiliate of any such Owner, Managing Defendant, and/or Owner-Operator, at any time during the period of October 18, 2018 until entry of an order preliminarily approving the Settlement Agreement (the "Class Period"). Specifically excluded from this Class are Opt-Outs; Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; any affiliate, legal representative, heir or assign of any Defendant; any federal, state, or local governmental entities; instrumentalities of the federal

---

[2] "Owner," "Managing Defendants," and "Owner Operator" are defined in the Complaint and include the Defendants other than RealPage, Thoma Bravo Fund XIII, L.P., Thoma Bravo Fund XIV, L.P., and Thoma Bravo. "RealPage's Revenue Management Solutions" are defined in the Complaint.

government; states and their subdivisions, agencies, and instrumentalities; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action.

Avenue5 agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. If the Effective Date does not occur, Avenue5 shall have the full ability to oppose any motion for certification of a litigation class, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against Avenue5.

**4. SETTLEMENT CLASS'S RELEASE**.

a. Upon the occurrence of the Effective Date and in consideration of the payment by Avenue5 of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph 13 of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees from any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had or now have directly, representatively, derivatively or in any other capacity against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, arising from the conduct that was alleged or could have been alleged in this Action and relating to the Properties based on any or all of the same factual predicate of the Action, including but not limited to Avenue5's alleged participation in a conspiracy to fix or inflate the price of

multifamily residential lease prices through the use of RealPage, Inc.'s Revenue Management Solutions including Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM"), and any joint and several liability claim(s) against Avenue5 related to or arising from the same factual predicate of this Action (the "Released Claims"). Released Claims shall not include: (i) claims asserted against any Defendant or co-conspirator other than Avenue5, or any owner or manager of any of the Properties other than Avenue5; (ii) any claims wholly unrelated to the allegations in the Complaint or that may exist as a result of a landlord-tenant relationship between the Parties, including claims based on breach of contract, state landlord-tenant regulation, negligence, and personal injury; (iii) claims relating to the enforcement of the Settlement or its terms; (iv) claims of any person or entity that submits a request for exclusion and whose request is accepted by the Court; and (v) claims that may be asserted against persons or entities (that are not affiliates of Avenue5's but with whom Avenue5 or one or more of its affiliates has a partnership, joint venture, or co-investor relationship.

      b.     In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein. Section 1542 of the California Civil Code provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

c.      The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

d.      The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by Avenue5 that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

5.      **SETTLEMENT AMOUNT**.

a.      Avenue5 agrees that an amount equal to USD $3,800,000.00 (three million eight-hundred thousand U.S. dollars), all in cash, will be paid on behalf of Avenue5 as the Settlement Amount in settlement of the Action, inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action. The payment described above shall constitute the total amount to be paid by Avenue5 in settlement of these claims. The Settlement Amount shall be paid into an interest-bearing escrow account (the "Escrow Account") maintained by an escrow agent on behalf of the Settlement Class, within thirty (30) business days of Plaintiffs providing all necessary information for their escrow agent after the Execution Date. The Parties agree and acknowledge that none of the Settlement Amount paid by Avenue5 under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

b.      If Avenue5 (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified above, then Settlement Class Counsel, in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

c.      The Settlement is non-recapture, *i.e*., it is not a claims-made settlement, and there will be no reversion of settlement funds to Avenue5, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, if the Settlement becomes final. Upon the occurrence of the Effective Date, neither Avenue5, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of Avenue5's insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

**6.      ESCROW ACCOUNT**.  An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel.  The Escrow Account shall be administered under the Court's continuing supervision and control.

a.      Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia*

17

*legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b.　　The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

c.　　Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

18

d.      The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

e.      In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to Avenue5 via wire transfer all funds remaining in the Escrow Account at that time, less any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante.  Avenue5 shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective.  Settlement Class Counsel shall ensure that the Settlement Administrator also provides Avenue5 full and complete information related to the Escrow Account to enable Avenue5 to determine whether any taxes may be owed on the funds returned to Avenue5.

7.    **TAX TREATMENT**.

a.      The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and Avenue5, shall jointly and

timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation §1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

b.     For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treas. Reg. §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

c.     All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, Avenue5 and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from

distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses. Plaintiffs and Avenue5 agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

        d.     Avenue5, Releasees, and Avenue5's Counsel shall have no liability for or obligations relating to Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each Avenue5, Releasees, and Avenue5's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

        e.     Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

        **8.**     **CLASS ADMINISTRATION AND NOTICE.** As soon as practicable, Settlement Class Counsel will retain one or more Settlement Administrator that, jointly or separately, are responsible for all aspects of settlement administration. Such Settlement Administrator shall be approved by the Court and, if approved, overseen by Settlement Class Counsel. Avenue5 will not have any involvement in the selection of the Settlement Administrator(s), the claims administration process, or the plan of allocation of the settlement proceeds. The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by

Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement. In no event shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

a. At no time and under no circumstances shall Plaintiffs, Avenue5, Settlement Class Counsel, Plaintiffs' Counsel, Avenue5's Counsel, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

b. Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs. The Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs. The procedures for submitting claims shall conform to the procedures outlined below.

c. Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form. Each Claim Form must be signed under the penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

d. All Claim Forms must be received by the Settlement Administrator within the time prescribed in the Plan for Notice as approved by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net

Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted. No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e.      Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

f.      Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

g.      Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h.      All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies

relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process. All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein. The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

i. No Person shall have any claim against Avenue5, Avenue5's Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

9. **EXCLUSIONS**.

a. Avenue5 reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

b. A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice. Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

c.     Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

d.     Avenue5 or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

**10.**    **PAYMENT OF EXPENSES**.  Subject to Court approval, disbursements for payment of Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to Avenue5, its insurance carriers, or any other person or entity who or which funded the Settlement Amount,  in the event this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses have actually been expended or incurred.  Any refund that becomes owed to Avenue5 if this Settlement does not become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court.  Other than as set forth in this Paragraph, Avenue5 shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs.  To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action and to apportion the costs of notice and administration in an equitable manner across the applicable settlements.

11. <u>THE SETTLEMENT FUND</u>.

        a.      The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

        b.      After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation. Avenue5 will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

        c.      The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives. Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

12. <u>FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS</u>.

        a.      Avenue5 understands that Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval of the Agreement, submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action; and/or (iii) and Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the

"Fee and Expense Award").  Avenue5 understands that Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable service awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses.

        b.     Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon final approval of the Settlement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Amount is required, then within fifteen (15) business days after receiving notice from Avenue5 of such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction.  Each law firm that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Attorneys' Fees and Expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this Paragraph.

c.     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement.

d.     Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph.  No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of Avenue5 or the Releasees, under this Agreement.

### 13.     DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION.

a.     Cooperation. Cooperation by Avenue5 is a material term of the Settlement and shall include the following categories of cooperation, with all disputes concerning the same to be resolved by the mediator, Clay Cogman.

i.     Avenue5 shall produce to Plaintiffs structured data on (i) Avenue5's multifamily lease transactions, in a reasonable manner to be agreed upon by the Parties, for the period January 1, 2015 through the present; and (ii) profit and loss data for the period January 1, 2013 through the present, in response to Plaintiffs' First Set of Requests to Defendant Owners,

Owner-Operators, and Managing Defendants in this Action. The Parties agree that, as of the date of this Agreement, Avenue5 has satisfied this obligation. Avenue5 shall answer reasonable questions concerning such structured data as necessary;

       ii. Avenue5 shall produce to Plaintiffs Avenue5's external e-mail communications, for each of the six agreed upon custodians, to and from RealPage, Inc. from January 1, 2015 through January 1, 2024 that are related to the allegations in the Complaint, on or before November 15, 2025, or soon thereafter should the Parties agree. Provided however, Avenue5 will not produce any communications subject to a valid privilege claim;

       iii. Avenue5 shall produce to Plaintiffs any documents produced to any other plaintiffs, third-party, and/or any federal, state, or other domestic regulator, including without limitation, documents produced to Attorneys General for the State of Washington, and the District of Columbia, concerning the subject matter of the Action or any allegations within the same factual predicate of the Action within fifteen (15) business days of the execution of this Agreement. . Regarding any documents produced to such entities *after* execution of this Agreement, Avenue5 shall make those productions available to Plaintiffs within five (5) business days after their production to such other plaintiffs, third parties, and/or regulators; Avenue5 shall produce to Plaintiffs a reasonable number of additional documents not previously produced to other plaintiffs, parties, or regulators. By so agreeing, Avenue5 does not waive any other objections or privileges generally applicable to non-parties to discovery;

       iv. Avenue5 shall make available one 30(b)(6) witness, for a deposition not to exceed seven (7) record hours;

       v. Avenue5 shall make available one 30(b)(1) witnesses, for a deposition not to exceed seven (7) record hours;

vi.    Avenue5 shall make available one witness for trial, should trial occur, accepting service of a trial subpoena and agreeing to waive any objections under Rule 45(c) relating to place of compliance;

vii.    Avenue5 shall use reasonable efforts to assist Plaintiffs in authenticating documents and/or things produced in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations or affidavits, or, if declarations or affidavits are not reasonably sufficient, depositions, hearings, and/or at trial(s) as may be necessary for the Action;

viii.    Avenue5 will consider reasonable requests for additional relevant information about Plaintiffs' claims in the Action from Interim Co-Lead Counsel, taking into account the information it has, or will produce in cooperative discovery, and whether providing the requested information will be burdensome;

ix.    To the extent not covered by its production of structured data, within thirty (30) calendar days of the execution of this Settlement Agreement, Avenue5 shall provide information needed to give notice to the Settlement Class to the extent such information is reasonably available.

b.    *Arbitration Non-Enforcement.* For a period of five (5) years after the Court enters Final Judgment in this Action, Avenue5 agrees not to (a) require that any member of the Settlement Class ("Class Member") arbitrate any claims based in federal or state antitrust, conspiracy or unfair competition which are not released or pre-empted by virtue of this Agreement ("Competition Claims") against Avenue5 or against any alleged co-conspirator or co-Defendant, (b) add a provision to any agreements with any Class Member specifically requiring that any such Competition Claims against Avenue5 be arbitrated, (c) argue that any Class Member or Class

Members are required to arbitrate such claims against Avenue5 or against any alleged co-conspirator or co-Defendant based on principles of estoppel, and (d) enforce any provisions in any agreements with one or more Class Members purporting to ban collective or class actions against Avenue5 related to such Competition Claims.

c. *RealPage Data Sharing.* For a period of five (5) years after the Court enters Final Judgment in this Action, Avenue5 shall (a) not provide to RealPage, Inc., any nonpublic data concerning Avenue5's multifamily residential leases under terms that would permit, or with its knowledge that Avenue5's provision of such non-public data would allow RealPage, Inc., or any other company providing revenue management services, share Avenue5's nonpublic data concerning its multifamily residential leases for use in revenue management services, with any other competitor of Avenue5; and (b) not contract with RealPage, Inc. or any other company providing revenue management services, to use a revenue management service or program that Avenue5 knows or should have known uses as an input non-public data provided to RealPage, Inc. by Avenue5's competitors; provided that Settlement Class Counsel may consent, or Avenue5 may petition the Court, to delete or modify this provision based upon changed circumstances.

14. **TERMINATION AND RESCISSION.**

a. *Rejection or Alteration of Settlement Terms.* If (i) the Court refuses to grant preliminary or final approval of this Agreement or certify the Settlement Class or such grant or certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to Avenue5 or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs exceed ten percent of Settlement Class Members and Avenue5 elects to revisit the terms of this Settlement, then the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement automatically terminates, unless an

31

extension is otherwise agreed upon by the Parties. Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement Agreement, Avenue5 and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination is appropriate, unless an extension is otherwise agreed upon by the Parties. A refusal to approve or modification or reversal on appeal based solely on or relating solely to the Settlement Class Counsel's fees and expenses award and/or Plan of Allocation shall not be deemed a refusal to approve nor modification of the terms of this Settlement Agreement.

b.    *Termination of Settlement*.    In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Class Notice and costs of administration of the Settlement Fund, if any, shall be refunded by the escrow agent to Avenue5 pursuant to written instructions from Avenue5's Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of April 23, 2025, and without waiver of any positions asserted in the Action prior to that date. Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c.    Plaintiffs, the Settlement Class, Settlement Class Counsel, and Avenue5 agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by Avenue5 or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel

in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly or indirectly except in a proceeding to enforce or interpret this Settlement Agreement. Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms.

15. **COVENANT NOT TO SUE**. The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims. Plaintiffs and Avenue5 agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

16. **AVENUE5 RELEASE**. Pending the Effective Date, Avenue5 agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the pending Action. Upon the Effective Date, Avenue5 shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Avenue5, except for claims relating to the enforcement of the Settlement.

17. **NO ADMISSION OF LIABILITY**. The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by Avenue5, or any Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other

pleading filed in the Action, and shall not be used against Avenue5 or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against Avenue5 or the Releasees.

18. **JOINT AND SEVERAL LIABILITY PRESERVED**. This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than Avenue5 and the Releasees. All claims against such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class. Avenue5's and the other Releasees' pricing of multifamily housing rental properties for the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than Avenue5 and the other Releasees. Avenue5 and the Releasees shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount and the amounts specifically agreed to in Paragraphs 5 and 10.

19. **CONFIDENTIALITY**. The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain confidential until publicly filed with the Court for approval. Nothing in Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel. Similarly, nothing in this Paragraph 19 shall prohibit Avenue5 or any Releasee from making general disclosures as necessary to comply with the securities laws and other obligations, as well as in its public filings. Following the Execution Date, Avenue5 and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement.

20. **CAFA**. Avenue5 shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

21. **CONTINUING JURISDICTION**. The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Avenue5, including challenges to the reasonableness of any party's actions. Avenue5 will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction. The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22. **ENTIRE AGREEMENT**. This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and Avenue5 pertaining to this Settlement of the Action against Avenue5, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and Avenue5 in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and Avenue5 and approved by the Court.

23. **BINDING EFFECT**. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and Avenue5. Without limiting the generality of the foregoing, upon the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than Avenue5, which is a party to this Agreement) are third-party

beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

24. **EXECUTION IN COUNTERPARTS**. This Agreement may be executed in counterparts by Plaintiffs and Avenue5, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25. **NOTICE**. Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

26. **PRIVILEGE**. Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

27. **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**. Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and

36

obligations created by this Agreement. Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28. **NO PARTY IS THE DRAFTER**. This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for Avenue5. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29. **HEADINGS**. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30. **OPPORTUNITY TO CURE**. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

31. **GOVERNING LAW**. All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles.

32. **REASONABLE EXTENSIONS**. Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

**33.** __C__OUNSEL'S __E__XPRESS __A__UTHORITY.  Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

Dated:  September 24, 2025

For the Plaintiffs:

_____
Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com


_____
Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com


_____
Swathi Bojedla
Hausfeld LLP
1200 17th Street, N.W., Suite 600
Washington, DC 20036
sbojedla@hausfeld.com

Docusign Envelope ID: 1700E203-19CC-4745-92E3-41E40395FE74

Dated: 9/26/2025

For Avenue5 Residential LLC:

_Walt Smith_
_____
Walter H Smith
Chief Executive Officer

# EXHIBIT A-4

**Bell Partners**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | **Case No. 3:23-MD-3071**<br>**MDL No. 3071**<br><br>**This Document Relates to:**<br>**ALL CASES**<br><br>**Judge Waverly D. Crenshaw, Jr.** |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of September 30, 2025 ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and Bell Partners Inc. ("Bell Partners"[1] and collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs are prosecuting claims against Bell Partners and other Defendants for allegedly conspiring to fix and inflate the price of multifamily rental housing across the country on their own behalf and on behalf of the Settlement Class in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[2] (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of Bell Partners' alleged participation in an

---

[1]     "Bell Partners" as used throughout this Agreement refers to Bell Partners Inc., together with its affiliated fund entities, collectively "Bell Partners."

[2]     The actions currently centralized in MDL No. 3071 include Cases No. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

unlawful conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for residential units nationwide and to exchange competitively sensitive information about rental pricing in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Second Amended Consolidated Class Action Complaint, ECF No. 530;

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from Bell Partners' alleged conduct;

WHEREAS, Bell Partners denies Plaintiffs' allegations, denies any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against it in the Action, and asserts that it has a number of valid defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against Bell Partners, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class, including because of the payment of the Settlement Amount (defined below) and the cooperation that Bell Partners has agreed to provide pursuant to this Agreement;

WHEREAS, Bell Partners, despite its belief that it is not liable for the claims asserted by Plaintiffs and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement;

2

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date does not occur;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to Bell Partners, subject to Court approval, on the following terms and conditions:

1.     **GENERAL DEFINITIONS**.  The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a.     "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

b.     "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

c.     "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

3

d.      "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

e.      "Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (Dkt. 530, re-filed across the consolidated cases at Dkt. 728).

f.      "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

g.      "Defendants" means those Defendants named in Plaintiffs' Complaint (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Property Trust, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive

4

Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

h.     "Effective Date" shall have the meaning set forth in Paragraph 2 of this Settlement Agreement.

i.     "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

j.     "Execution Date" means the latest date of the execution of this Agreement by all Parties.

k.     "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

l.     "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses, (b) Notice and Administration Expenses; (b) any Fee and Expense Award; (c) any Service Awards to Plaintiffs; and (d) other fees and expenses, if any, authorized by the Court.

m.     "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow

5

Agent (if any). All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

n. "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

o. "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

p. "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

q. "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

r. "Bell Partners' Counsel" means Maynard Nexsen PC.

s. "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes, individually and on behalf of Settlement Class Members.

t. "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey

6

Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

u.  "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

v.  "Preliminary Approval Order" and "Preliminary Approval" mean the order preliminarily approving the Settlement.

w.  "Properties" means all multifamily rental properties managed by Bell Partners that at any point during the Settlement Class Period were subject to a license for RealPage's Revenue Management Solutions pricing recommendations for multifamily rental units. The Properties account for all those for which Bell Partners is deemed to have participated in RealPage's RMS as described in Paragraph 3 of the Agreement defining the "Settlement Class."

x.  "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

y.  "Releasees" means Bell Partners and any and all of its past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers,  all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind. However, the release will not cover other Defendants or owners of Properties other than Bell Partners, or individual investors in the Properties, even if such investors are Bell Partners' past, present, or future direct and indirect parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint

venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind, solely to the extent a claim arises from such person's ownership of a multifamily property. For the avoidance of doubt, no Defendant other than Bell Partners is hereby released, nor is any individual investor in a Bell Partners affiliated fund released by virtue of the investment in that affiliated fund.

z. "Releasors" means Plaintiffs, the Settlement Class, and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, or through the Releasors, with such claiming parties to include any and all of Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

aa. "Revenue Management Solutions" or "RMS" means Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM").

bb.     "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

cc.     "Settlement Administrator" means the professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of this Settlement to the Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

dd.     "Settlement Amount" shall be USD $6,000,000.00 (six million U.S. dollars) as specified in Paragraph 5.

ee.     "Settlement Class" means the class defined in Paragraph 3 below.

ff.     "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

gg.     "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

hh.     "Settlement Class Period" means from October 18, 2018 to the date of Preliminary Approval.

ii.     "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

jj.     "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

kk.     "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that

may be imposed upon Bell Partners with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

2. <u>APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST BELL PARTNERS</u>.

a. Bell Partners shall not object to Plaintiffs' Counsel's motions for approval of this Settlement and the production of any related documents requested that Plaintiffs' Counsel reasonably believes is necessary to effectuate and implement the terms and conditions of this Settlement Agreement. Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement.

b. Plaintiffs shall submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion") on or before October 1, 2025, absent agreement between the Parties or by order of Court. The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

c. Within thirty (30) calendar days after the Execution Date, or as soon thereafter as is practicable, to the extent not already produced, Bell Partners shall supply Plaintiffs with reasonable contact information of Settlement Class Members who rented multifamily housing units in the Properties managed and/or owned by Bell Partners during the Settlement Class Period. To the extent necessary to effectuate notice to Settlement Class Members, Bell Partners shall reasonably supplement the contact information to account for additional Settlement Class Members who may have been added through to the entry of an order preliminarily approving the Settlement Agreement. The contact information shall be provided in a mutually agreeable

electronic format. Plaintiffs shall use reasonable efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering this Settlement. The Settlement Administrator and Plaintiffs may request from Bell Partners additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this Agreement, and Bell Partners will not unreasonably deny any such additional requests or fail to timely produce such contact information, if available in a reasonably accessible format and reasonable to so produce.

d.     Plaintiffs shall submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion"). The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

e.     Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and Bell Partners shall agree upon, and such agreement will not be unreasonably withheld. The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

i.     certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii.     approving finally this Settlement and its terms as being a fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

11

iii.        directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4)

iv.        directing that Bell Partners shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Bell Partners (as provided for in Paragraph 16);

v.        directing that the Action (including the Complaint) be dismissed as to Bell Partners with prejudice, and except as provided for in this Agreement, without costs;

vi.        reserving to the Court the exclusive jurisdiction over this Settlement and this Agreement, including the interpretation, administration, and consummation of this Settlement, as well as over Bell Partners for its provision of cooperation pursuant to this Agreement;

vii.        determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to Bell Partners shall be final;

viii.        providing that Plaintiffs and Bell Partners have each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure; and

ix.        providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any (a) non-settling Defendant to contest certification of any other class proposed in the Action, or of (b) Bell Partners' right to contest certification of any other proposed class in the Action should this Agreement not become final as described in subsection (f) to this Paragraph; (2) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on

any motion to certify any class in the Action or on the Court's rulings concerning any Defendant's motion; and (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

      f.     This Agreement shall become final and be deemed to have received final approval when (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 3, approved this Agreement under Federal Rule of Civil Procedure 23(e), and entered a final judgment dismissing the Action with prejudice as to Bell Partners without costs other than those provided for in this Agreement; and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to Bell Partners described in (i) hereof has expired in the Action or, if appealed, approval of this Agreement and the order and final judgment in the Action as to Bell Partners have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review (the "Effective Date"). It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and Bell Partners shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

      **3.**     <u>C</u>ERTIFICATION OF A <u>S</u>ETTLEMENT <u>C</u>LASS. Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any Owner, Managing Defendants, and/or Owner-Operator participating in RealPage's Revenue Management Solutions,[3] including its pricing software

---

[3] "Owner," "Managing Defendants," and "Owner Operator" are defined in the Complaint and include the

and/or lease renewal staggering software programs, or from a division, subsidiary, predecessor, agent, or affiliate of any such Owner, Managing Defendant, and/or Owner-Operator, at any time during the period of October 18, 2018 until entry of an order preliminarily approving the Settlement Agreement (the "Class Period"). Specifically excluded from this Class are Opt-Outs; Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; any affiliate, legal representative, heir or assign of any Defendant; any federal, state, or local governmental entities; instrumentalities of the federal government; states and their subdivisions, agencies, and instrumentalities; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action.

Bell Partners agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. If the Effective Date does not occur, Bell Partners shall have the full ability to oppose any motion for certification of a litigation class, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against Bell Partners.

4. **SETTLEMENT CLASS'S RELEASE**.

a. Upon the occurrence of the Effective Date and in consideration of the payment by Bell Partners of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph 13 of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees from any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had, now have, or in the future may have directly, representatively, derivatively or in any other capacity against any of the Releasees, whether known

---

Defendants other than RealPage, Thoma Bravo Fund XIII, L.P., Thoma Bravo Fund XIV, L.P., and Thoma Bravo. "RealPage's Revenue Management Solutions" are defined in the Complaint.

or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, arising from the conduct that was alleged or could have been alleged in this Action and relating to the Properties based on any or all of the same factual predicate of the Action, including but not limited to Bell Partners' alleged participation in a conspiracy to fix or inflate the price of multifamily residential lease prices through the use of RealPage, Inc.'s Revenue Management Solutions including Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM"), and any joint and several liability claim(s) against Bell Partners related to or arising from the same factual predicate of this Action (the "Released Claims"). Released Claims shall not include: (i) claims asserted against any Defendant or co-conspirator other than Bell Partners, or any owner of any of the Properties other than Bell Partners; (ii) any claims wholly unrelated to the allegations in the Complaint or that may exist as a result of a landlord-tenant relationship between the Parties, including claims based on breach of contract, state landlord-tenant regulation, negligence, and personal injury; (iii) claims relating to the enforcement of the Settlement or its terms; (iv) claims of any person or entity that submits a request for exclusion and whose request is accepted by the Court; or (v) claims that may be asserted against Persons that are not affiliates of Bell Partners' but with whom Bell Partners or one or more of its affiliates has a partnership, joint venture, or co-investor relationship.

      b.      In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle

of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein. Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

c.      The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

d.      The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by Bell Partners that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

5.      <u>**SETTLEMENT AMOUNT**</u>.

a.      Bell Partners agrees that an amount equal to USD $6,000,000.00 (six million U.S. dollars) will be paid on behalf of Bell Partners as the Settlement Amount in settlement of the Action, inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action. The Settlement Amount shall be paid over two payments equal to USD $3,000,000.00 (three million U.S. dollars)

each, with the first payment to be paid within five business days of the Execution Date, and the second payment to be paid on or before September 15, 2026. The payment described above shall constitute the total amount to be paid by Bell Partners in settlement of these claims. The Settlement Amount shall be paid into an interest-bearing escrow account (the "Escrow Account") maintained by an escrow agent on behalf of the Settlement Class. The Parties agree and acknowledge that none of the Settlement Amount paid by Bell Partners under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

b.       If Bell Partners (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified above, then Settlement Class Counsel, in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

c.       The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement, and there will be no reversion of settlement funds to Bell Partners, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, if the Settlement becomes final. Upon the occurrence of the Effective Date, neither Bell Partners, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of Bell Partners' insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

17

**6.     ESCROW ACCOUNT**.  An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel.  The Escrow Account shall be administered under the Court's continuing supervision and control.

a.     Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b.     The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the

Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

        c.     Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

        d.     The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

        e.     In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to Bell Partners via wire transfer all funds remaining in the Escrow Account at that time, less any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante. Bell Partners shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective. Settlement Class Counsel shall ensure that the Settlement Administrator also provides Bell Partners full and complete

information related to the Escrow Account to enable Bell Partners to determine whether any taxes may be owed on the funds returned to Bell Partners.

7. **TAX TREATMENT**.

a.   The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and Bell Partners, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation §1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

b.   For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treas. Reg. §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or

20

penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

c.     All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, Bell Partners and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses.  Plaintiffs and Bell Partners agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

d.     Bell Partners, Releasees, and Bell Partners' Counsel shall have no liability for or obligations relating to Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each Bell Partners, Releasees, and Bell Partners' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

e.     Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall

indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

8. <u>CLASS ADMINISTRATION AND NOTICE</u>. As soon as practicable, Settlement Class Counsel will retain one or more Settlement Administrator that, jointly or separately, are responsible for all aspects of settlement administration. Such Settlement Administrator shall be approved by the Court and, if approved, overseen by Settlement Class Counsel. Bell Partners will not have any involvement in the selection of the Settlement Administrator(s), the claims administration process, or the plan of allocation of the settlement proceeds. The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement. In no event shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

a. At no time and under no circumstances shall Plaintiffs, Bell Partners, Settlement Class Counsel, Plaintiffs' Counsel, Bell Partners' Counsel, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

b. Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs. The Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs. The procedures for submitting claims shall conform to the procedures outlined below.

22

c. Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form. Each Claim Form must be signed under the penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

d. All Claim Forms must be received by the Settlement Administrator within the time prescribed in the plan for Notice approved by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted. No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e. Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

f. Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim

23

will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

g.     Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h.     All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process.  All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein.  The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

i.     No Person shall have any claim against Bell Partners' Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations

24

or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

9. <u>**EXCLUSIONS**</u>.

a. Bell Partners reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

b. A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice. Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

c. Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

d. Bell Partners or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

10. <u>**PAYMENT OF EXPENSES**</u>. Subject to Court approval, disbursements for payment of Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to Bell Partners, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, in the event this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses have actually been expended or incurred. Any refund that becomes owed to Bell Partners if this Settlement does not become final

25

or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court. Other than as set forth in this Paragraph, Bell Partners shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs. To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action and to apportion the costs of notice and administration in an equitable manner across the applicable settlements.

11.  THE SETTLEMENT FUND.

a.  The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b.  After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation. Bell Partners will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

c.  The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives. Instead, any and all such costs, fees, and expenses approved by the Court, or

26

authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

## 12. FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS.

a. Bell Partners understands that Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval of the Agreement, submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action; and/or (iii) and Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"). Bell Partners understands that Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable service awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

b. Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon final approval of the Settlement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or

27

reversed, or return of the Settlement Amount is required, then within fifteen (15) business days after receiving notice from Bell Partners of such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction. Each law firm that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Attorneys' Fees and Expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this paragraph.

c. The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement.

d. Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph. No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs,

28

expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of Bell Partners or the Releasees, under this Agreement.

13. **DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION**.

a. *Cooperation*. Cooperation by Bell Partners is a material term of this Agreement and shall include the following categories of cooperation, with all disputes concerning the same to be resolved by Judge Crenshaw and the U.S. District Court for the Middle District of Tennessee:

i. Within thirty (30) calendar days of the Execution Date, Bell Partners shall answer reasonable questions concerning its structured data;

ii. While Bell Partners has substantially completed its production of documents, Bell Partners agrees to continue reasonable discovery negotiations of any items that remain outstanding, including answering Plaintiffs' reasonable questions concerning its structured data production(s), and any deficiencies or technical errors identified in its production, including in the case that Plaintiffs are unable to access any negotiated discovery materials;

iii. Bell Partners shall produce to Plaintiffs any documents produced to any other plaintiffs, or any federal, state, or other domestic regulator, concerning the subject matter of the Action or any allegations within the same factual predicate of the Action within five (5) business days of the execution of this Agreement, with any documents produced to such entities after execution of this Agreement to be produced five (5) business days after their production to such other plaintiffs or regulators;

iv. Bell Partners shall make available one 30(b)(6) witness, for a deposition not to exceed seven (7) record hours;

v.	Bell Partners shall make available one witness for trial, should trial occur, accepting service of a trial subpoena and agreeing to waive any objections under Rule 45(c) relating to place of compliance;

vi.	Bell Partners shall use reasonable efforts to assist Plaintiffs in authenticating documents and/or things produced in the Action, where the facts indicate that the documents and/or things at issue are authentic, whether by declarations or affidavits, or, if declarations or affidavits are not reasonably sufficient, depositions, hearings, and/or at trial(s) as may be necessary for the Action; and

vii.	Bell Partners will consider reasonable requests for additional relevant information about Plaintiffs' claims in the Action from Plaintiffs' Counsel, taking into account the information it has or will produce in discovery, and whether providing the requested information will be burdensome.

b.	*Arbitration Non-Enforcement*. For a period of five (5) years after the Court enters final judgment in this Action, Bell Partners agrees it will not arbitrate or attempt to enforce any arbitration provision relating to any claims arising from the factual predicate of this litigation from any member of the Settlement Class. However, Bell Partners is entitled to use arbitration clauses to the extent permitted by law in leases executed after the Execution Date and in current leases and other contracts for claims and issues unrelated to the factual predicate of this litigation (*e.g.*, a slip and fall injury).

c.	*RealPage Data Sharing*. For a period of five (5) years after the Court enters final judgment in this Action, Bell Partners shall (i) not provide to RealPage, Inc., any non-public data concerning multifamily residential leases, or permit RealPage, Inc., or any other company providing revenue management services that Bell Partners knows or should have known uses as

30

an input non-public data provided to RealPage, Inc. by Bell Partners' competitors to share Bell Partners' non-public data concerning multifamily residential leases for use in revenue management services; and (ii) not contract with RealPage, Inc. or any other company providing revenue management services, to use a revenue management service or program that Bell Partners knows or should have known uses as an input non-public data provided to RealPage, Inc. by Bell Partners' competitors; provided that Settlement Class Counsel may consent, or Bell Partners may petition the Court, to delete or modify this provision based upon changed circumstances. Bell Partners may continue to use RealPage's revenue management software, including LRO, YieldStar, and/or AIRM, that relies solely on inputs from Bell Partners' own data and non-public data aggregation sources such as ApartmentIQ or similar services, provided that any non-public data parameters have been disabled. Nothing in this Paragraph shall prevent Bell Partners from providing RealPage, Inc. with all data for properties managed by Bell Partners, so long as in conformance with other requirements set forth in this Paragraph.

14. **TERMINATION AND RESCISSION**.

a. *Rejection or Alteration of Settlement Terms.* If (i) the Court refuses to grant preliminary or final approval of this Agreement or certify the Settlement Class or such grant or certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to Bell Partners or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs exceed ten percent of Settlement Class Members and Bell Partners elects to revisit the terms of this Settlement, then the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement automatically terminates, unless an extension is otherwise agreed upon by the Parties. Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement

Agreement, Bell Partners and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination is appropriate, unless an extension is otherwise agreed upon by the Parties. A refusal to approve or modification or reversal on appeal based solely on or relating solely to the Settlement Class Counsel's fees and expenses award and/or Plan of Allocation shall not be deemed a refusal to approve or modification of the terms of this Settlement Agreement.

b. *Termination of Settlement*. In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Class Notice and costs of administration of the Settlement Fund, if any, shall be refunded by the escrow agent to Bell Partners pursuant to written instructions from Bell Partners' Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of July 31, 2025, and without waiver of any positions asserted in the Action prior to that date. Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c. Plaintiffs, the Settlement Class, Settlement Class Counsel, and Bell Partners agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by Bell Partners or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly or indirectly

32

except in a proceeding to enforce or interpret this Settlement Agreement. Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms.

15. **COVENANT NOT TO SUE**. The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims. Plaintiffs and Bell Partners agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

16. **BELL PARTNERS RELEASE**. Pending the Effective Date, Bell Partners agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the pending Action. Upon the Effective Date, Bell Partners shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Bell Partners, except for claims relating to the enforcement of the Settlement.

17. **NO ADMISSION OF LIABILITY**. The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by Bell Partners, or any Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, and shall not be used against Bell Partners or the other Releasees,

33

and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against Bell Partners or the Releasees.

18. **JOINT AND SEVERAL LIABILITY PRESERVED**. This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than Bell Partners and the Releasees. All claims against such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class. Bell Partners' and the other Releasees' pricing of multifamily housing rental properties for the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than Bell Partners and the other Releasees. Bell Partners and the Releasees shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount and the amounts specifically agreed to in Paragraphs 5 and 10.

19. **CONFIDENTIALITY**. The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain confidential until publicly filed with the Court for approval. Nothing in Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel. Similarly, nothing in this Paragraph 19 shall prohibit Bell Partners or any Releasee from making general disclosures as necessary to comply with the securities laws and other obligations, as well as in its public filings. Following the Execution Date, Bell Partners and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement.

20. __CAFA__. Bell Partners shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

21. __CONTINUING JURISDICTION__. The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Bell Partners, including challenges to the reasonableness of any party's actions. Bell Partners will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction. The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22. __ENTIRE AGREEMENT__. This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and Bell Partners pertaining to this Settlement of the Action against Bell Partners, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and Bell Partners in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and Bell Partners and approved by the Court.

23. __BINDING EFFECT__. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and Bell Partners. Without limiting the generality of the foregoing, upon the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and

35

Releasors. The Releasees (other than Bell Partners, which is a party to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

24. **EXECUTION IN COUNTERPARTS**. This Agreement may be executed in counterparts by Plaintiffs and Bell Partners, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25. **NOTICE**. Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

26. **PRIVILEGE**. Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

27. **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**. Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own

36

choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement. Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28. **NO PARTY IS THE DRAFTER**. This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for Bell Partners. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29. **HEADINGS**. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30. **OPPORTUNITY TO CURE**. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

31. **GOVERNING LAW**. All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles.

32. **REASONABLE EXTENSIONS**. Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

**33.** <u>**COUNSEL'S EXPRESS AUTHORITY**</u>.  Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

Dated: September 30, 2025

For the Plaintiffs:


_____
Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com


_____
Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com


_____
Swathi Bojedla
Hausfeld LLP
1200 17th St., NW, Suite 600
Washington, DC 20036
sbojedla@hausfeld.com

Dated: September 30, 2025

For Bell Partners Inc.:

_____

Lili Dunn
CEO and President of Bell Partners Inc.

_____

Marguerite Willis
Counsel for Bell Partners Inc.

40

Dated:

For Bell Partners Inc.:

_____

Lili Dunn
CEO and President of Bell Partners Inc.


_Marguerite Willis_

Marguerite Willis
Counsel for Bell Partners Inc.

# EXHIBIT A-5

**BH Management**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | **Case No. 3:23-MD-3071**<br>**MDL No. 3071**<br><br>**This Document Relates to:**<br>**ALL CASES**<br><br>**Judge Waverly D. Crenshaw, Jr.** |

**SETTLEMENT AGREEMENT**

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of September 18, 2025 ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and BH Management Services, LLC ("BH Management" and collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs are prosecuting claims against BH Management and other Defendants for allegedly conspiring to fix and inflate the price of multifamily rental housing across the country on their own behalf and on behalf of the Settlement Class in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[1] (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of BH Management's alleged participation in an unlawful conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for

---

[1] The actions currently centralized in MDL No. 3071 include Cases No. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

residential units nationwide and to exchange competitively sensitive information about rental pricing in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Second Amended Consolidated Class Action Complaint, ECF No. 530;

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from BH Management's alleged conduct;

WHEREAS, BH Management denies Plaintiffs' allegations, denies any and all purported wrongdoing and therefore alleged injury and damages in connection with the facts and claims that have been or could have been alleged against it in the Action, and asserts that it has a number of valid defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against BH Management, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the Settlement Amount (defined below) and the value of the cooperation that BH Management has agreed to provide pursuant to this Agreement;

WHEREAS, BH Management, despite its belief that it is not liable for the claims asserted by Plaintiffs and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement;

2

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date does not occur;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to BH Management, subject to Court approval, on the following terms and conditions:

1. **GENERAL DEFINITIONS**. The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a. "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

b. "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

c. "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

3

d.     "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

e.     "Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (Dkt. 530, re-filed across the consolidated cases at Dkt. 728).

f.     "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

g.     "Defendants" means those Defendants named in Plaintiffs' Complaint (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Property Trust, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive

4

Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

      h.    "Effective Date" shall have the meaning set forth in Paragraph 2 of this Settlement Agreement.

      i.    "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

      j.    "Execution Date" means the latest date of the execution of this Agreement by all Parties.

      k.    "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

      l.    "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses, (b) Notice and Administration Expenses; (b) any Fee and Expense Award; (c) any Service Awards to Plaintiffs; and (d) other fees and expenses, if any, authorized by the Court.

      m.    "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow

5

Agent (if any). All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

n.     "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

o.     "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

p.     "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

q.     "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

r.     "BH Management's Counsel" means O'Melveny & Myers LLP.

s.     "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes, individually and on behalf of Settlement Class Members.

t.     "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey

6

Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

u.     "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

v.     "Preliminary Approval Order" and "Preliminary Approval" mean the order preliminarily approving the Settlement.

w.     "Properties" means all properties managed and/or owned by BH Management that at any point during the Settlement Class Period were subject to a license for RealPage's Revenue Management Solutions pricing recommendations for multifamily rental units. The Properties account for all those for which BH Management is deemed to have participated in RealPage's RMS as described in Paragraph 3 of the Agreement defining the "Settlement Class."

x.     "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

y.     "Releasees" means BH Management as well as its former or current, direct or indirect, parents, subsidiaries, and affiliates, including but not limited to the predecessors, successors, and assigns of each of them; and each of their respective former or current, direct or indirect, trustees, owners, principals, partners, directors, officers, shareholders, managers, members, attorneys, equity holders, agents, insurers, supervisors, representatives, and employees.

z.     "Releasors" means Plaintiffs, the Settlement Class, and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, or through the Releasors, with such claiming parties to include any and all

7

of Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

aa. "Revenue Management Solutions" or "RMS" means Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM").

bb. "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

cc. "Settlement Administrator" means the professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of this Settlement to the Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

dd. "Settlement Amount" shall be USD $15,000,000.00 (fifteen million U.S. dollars) as specified in Paragraph 5.

ee. "Settlement Class" means the class defined in Paragraph 3 below.

ff. "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

gg. "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

hh. "Settlement Class Period" means from October 18, 2018 to the date of Preliminary Approval.

ii. "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

jj. "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

kk. "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon BH Management with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

2. **APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST BH MANAGEMENT**.

a. BH Management shall use its reasonable best efforts in connection with Plaintiffs' Counsel's motions for approval of this Settlement and any related documents necessary to effectuate and implement the terms and conditions of this Settlement Agreement. Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement.

9

b.     On or before October 1, 2025, Plaintiffs shall submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

c.     Within thirty (30) calendar days after the Execution Date, or as soon thereafter as is practicable, BH Management shall supply Plaintiffs with the contact information of Settlement Class Members who rented multifamily housing units in Properties managed and/or owned by BH Management during the Settlement Class Period. To the extent necessary to effectuate notice to Settlement Class Members, BH Management shall reasonably supplement the contact information to account for additional Settlement Class Members who may have been added through to the entry of an order preliminarily approving the Settlement Agreement.  The contact information shall be provided in a mutually agreeable electronic format. Plaintiffs shall use their reasonable best efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering this Settlement. The Settlement Administrator and Plaintiffs may request from BH Management additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this Agreement, and BH Management will not unreasonably deny any such additional requests or fail to timely produce such data, if available.

d.     Plaintiffs shall submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion").  The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

10

e.　　Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and BH Management shall agree upon, and such agreement will not be unreasonably withheld. The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

i.　　certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii.　　approving finally this Settlement and its terms as being a fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

iii.　　directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4)

iv.　　directing that BH Management shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against BH Management (as provided for in Paragraph 16);

v.　　directing that the Action (including the Complaint) be dismissed as to BH Management with prejudice, and except as provided for in this Agreement, without costs;

vi.　　reserving to the Court the exclusive jurisdiction over this Settlement and this Agreement, including the interpretation, administration, and consummation of this

11

Settlement, as well as over BH Management for its provision of cooperation pursuant to this Agreement;

vii.　　determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to BH Management shall be final;

viii.　　providing that Plaintiffs and BH Management have each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure; and

ix.　　providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any (a) non-settling Defendant to contest certification of any other class proposed in the Action, or of (b) BH Management's right to contest certification of any proposed class in the Action should this Agreement not become final as described in subsection (f) to this Paragraph; (2) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify any class in the Action or on the Court's rulings concerning any Defendant's motion; and (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

f.　　This Agreement shall become final and be deemed to have received final approval when (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 3, approved this Agreement under Federal Rule of Civil Procedure 23(e), and entered a final judgment dismissing the Action with prejudice as to BH Management without costs other than those provided for in this Agreement; and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the

12

final judgment as to BH Management described in (i) hereof has expired in the Action or, if appealed, approval of this Agreement and the order and final judgment in the Action as to BH Management have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review (the "Effective Date"). It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and BH Management shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

      **3.**     **CERTIFICATION OF A SETTLEMENT CLASS.** Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any Owner, Managing Defendants, and/or Owner-Operator participating in RealPage's Revenue Management Solutions,[2] including its pricing software and/or lease renewal staggering software programs, or from a division, subsidiary, predecessor, agent, or affiliate of any such Owner, Managing Defendant, and/or Owner-Operator, at any time during the period of October 18, 2018 until entry of an order preliminarily approving the Settlement Agreement (the "Class Period"). Specifically excluded from this Class are Opt-Outs; Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; any affiliate, legal representative, heir or assign of any Defendant; any federal, state, or local governmental entities; instrumentalities of the federal government; states and their subdivisions, agencies, and instrumentalities; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action.

BH Management agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. If the Effective Date does not occur, BH Management shall have the full ability to oppose any

---

[2] "Owner," "Managing Defendants," and "Owner Operator" are defined in the Complaint and include the Defendants other than RealPage, Thoma Bravo Fund XIII, L.P., Thoma Bravo Fund XIV, L.P., and Thoma Bravo. "RealPage's Revenue Management Solutions" are defined in the Complaint.

motion for certification of a litigation class, and, as set forth in Paragraph 14(c) below, Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against BH Management.

    **4.**    **S**ETTLEMENT **C**LASS'S **R**ELEASE.

        a.   Upon the occurrence of the Effective Date and in consideration of the payment by BH Management of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph 13 of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees from any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had or now have directly, representatively, beneficially, derivatively or in any other capacity against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, arising from the conduct that was alleged or could have been alleged in this Action and relating to properties managed and/or owned by BH Management, based on any or all of the same factual predicate of the Action, including but not limited to BH Management's alleged participation in a conspiracy to fix or inflate the price of multifamily residential lease prices through the use of RealPage, Inc.'s Revenue Management Solutions including Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM"), and any joint and several liability claim(s) against BH Management related to or arising from the same

factual predicate of this Action (the "Released Claims"). Released Claims shall not include: (i) claims asserted against any Defendant or co-conspirator other than BH Management and Releasees, or any owner of any property managed by BH Management, other than BH Management and Releasees; (ii) any claims wholly unrelated to the allegations in the Complaint or that may exist as a result of a landlord-tenant relationship between the Parties, including claims based on breach of contract, state landlord-tenant regulation, negligence, and personal injury; (iii) claims relating to the enforcement of the Settlement or its terms; (iv) claims of any person or entity that submits a request for exclusion and whose request is accepted by the Court; or (v) claims that may be asserted against persons or entities that are not affiliates of BH Management's but with whom BH Management or one or more of its affiliates has a partnership, joint venture, or co-investor relationship.

        b.    In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein. Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

        c.    The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

d.      The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by BH Management that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

**5.      SETTLEMENT AMOUNT.**

a.      BH Management agrees that an amount equal to USD $15,000,000.00 (fifteen million U.S. dollars), all in cash, will be paid on behalf of BH Management as the Settlement Amount in settlement of the Action, inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action.  The payment described above shall constitute the total amount to be paid by BH Management in settlement of these claims.  The Settlement Amount shall be paid into an interest-bearing escrow account (the "Escrow Account") maintained by an escrow agent on behalf of the Settlement Class, within thirty (30) business days of Plaintiffs providing all necessary information for their escrow agent after the Execution Date.  The Parties agree and acknowledge that none of the Settlement Amount paid by BH Management under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

b.      If BH Management (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified above, then Settlement Class Counsel,

in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

c.      The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement, and there will be no reversion of settlement funds to BH Management, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, if the Settlement becomes final. Upon the occurrence of the Effective Date, neither BH Management, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of BH Management's insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

6.      **ESCROW ACCOUNT**.  An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel.  The Escrow Account shall be administered under the Court's continuing supervision and control.

a.      Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than

17

amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b. The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

c. Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

d. The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any,

18

authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

e. In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to BH Management via wire transfer all funds remaining in the Escrow Account at that time, less any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante. BH Management shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective. Settlement Class Counsel shall ensure that the Settlement Administrator also provides BH Management full and complete information related to the Escrow Account to enable BH Management to determine whether any taxes may be owed on the funds returned to BH Management.

7. **TAX TREATMENT**.

a. The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and BH Management, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-

19

1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation §1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

b. For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treas. Reg. §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

c. All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, BH Management and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to

20

Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses. Plaintiffs and BH Management agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

d. BH Management, Releasees, and BH Management's Counsel shall have no liability for or obligations relating to Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each BH Management, Releasees, and BH Management's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

e. Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

8. **CLASS ADMINISTRATION AND NOTICE.** As soon as practicable, Settlement Class Counsel will retain one or more Settlement Administrator that, jointly or separately, are responsible for all aspects of settlement administration. Such Settlement Administrator shall be approved by the Court and, if approved, overseen by Settlement Class Counsel. BH Management will not have any involvement in the selection of the Settlement Administrator(s), the claims administration process, or the plan of allocation of the settlement proceeds. The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement. In no event

21

shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

a. At no time and under no circumstances shall Plaintiffs, BH Management, Settlement Class Counsel, Plaintiffs' Counsel, BH Management's Counsel, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

b. Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs. The Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs. The procedures for submitting claims shall conform to the procedures outlined below.

c. Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form. Each Claim Form must be signed under the penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

d. All Claim Forms must be received by the Settlement Administrator within the time prescribed in the plan for Notice approved by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted. No Person

22

shall have any claim against Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e.      Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

f.      Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

g.      Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h.      All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved

23

during the claims process. All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein. The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

       i.     No Person shall have any claim against BH Management, BH Management's Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

    **9.**    __EXCLUSIONS__.

       a.     BH Management reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

       b.     A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice. Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

       c.     Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided

that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

        d.     BH Management or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

        **10.**    **PAYMENT OF EXPENSES**. Subject to Court approval, disbursements for payment of Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to BH Management, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, in the event this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses have actually been expended or incurred. Any refund that becomes owed to BH Management if this Settlement does not become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court. Other than as set forth in this Paragraph, BH Management shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs. To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action and to apportion the costs of notice and administration in an equitable manner across the applicable settlements.

25

11. **THE SETTLEMENT FUND**.

a. The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b. After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation. BH Management will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

c. The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives. Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

12. **FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS**.

a. BH Management understands that Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval of the Agreement, submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action; and/or (iii) and Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the

26

"Fee and Expense Award"). BH Management understands that Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable service awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

       b.     Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon final approval of the Settlement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Amount is required, then within fifteen (15) business days after receiving notice from BH Management of such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction. Each law firm that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Attorneys' Fees and Expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this paragraph.

c.　　The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement.

d.　　Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph.　No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of BH Management or the Releasees, under this Agreement.

**13.**　　**DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION.**

a.　　*Cooperation.* Cooperation by BH Management is a material term of this Agreement and shall include the following categories of cooperation, with all disputes concerning the same to be resolved by Judge Crenshaw and the US. District Court for the Middle District of Tennessee:

i.　　BH Management has produced to Plaintiffs structured data consistent with the Parties' negotiated agreement regarding structured data in response to Plaintiffs'

28

First Set of Requests to Owners, Owner-Operators, and Managing Defendants for the Production of Documents and Electronically Stored Information. Nevertheless, BH Management shall answer reasonable questions concerning its structured data, including questions concerning any identified deficiencies in its productions;

ii.     BH Management has substantially completed its document production by the Court ordered deadline. Nevertheless, BH Management shall answer reasonable questions concerning any identified deficiencies in its document productions and will not unreasonably deny Plaintiffs a re-production of documents identified as having technical errors or which Plaintiffs are otherwise unable to access.

iii.     BH Management shall produce to Plaintiffs any documents produced to any other plaintiffs, or any federal, state, or other domestic regulator, concerning the subject matter of the Action or any allegations within the same factual predicate of the Action within five (5) business days of the execution of this Agreement, with any documents produced to such entities after execution of this Agreement to be produced five (5) business days after their production to such other plaintiffs or regulators;

iv.     BH Management shall make available one 30(b)(6) witness, for a deposition not to exceed ten (10) record hours. This deposition will not be subject to any pre-trial order entered in the Action with respect to any notice and/or timing requirements for the depositions, and BH Management agrees that its 30(b)(6) witness may be deposed outside the time period prescribed for fact discovery in the Action, subject to, and pending Court approval on timing;

29

v.  BH Management shall make available one witness for trial, should trial occur, accepting service of a trial subpoena and agreeing to waive any objections under Rule 45(c) relating to place of compliance;

vi.  BH Management shall make available two 30(b)(1) witnesses, for depositions not to exceed seven (7) record hours each. This deposition will not be subject to any pre-trial order entered in the Action with respect to any notice and/or timing requirements for the depositions, and BH Management agrees that its 30(b)(1) witness may be deposed outside the time period prescribed for fact discovery in the Action, subject to and pending Court approval on timing;

vii.  BH Management shall respond to up to five interrogatories propounded by Plaintiffs;

viii.  BH Management shall conduct an attorney proffer;

ix.  BH Management shall use reasonable efforts to assist Plaintiffs in authenticating documents and/or things produced in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations or affidavits, or, if declarations or affidavits are not reasonably sufficient, depositions, hearings, and/or at trial(s) as may be necessary for the Action.

x.  BH Management will consider reasonable requests for additional relevant information about Plaintiffs' claims in the Action from Plaintiffs' Counsel, taking into account the information it has or will produce in discovery, and whether providing the requested information will be burdensome.

b.  *Arbitration Non-Enforcement*. For a period of five (5) years after the Court enters final judgment with respect to BH Management, and following any period for appeals, BH

agrees to refrain from enforcing arbitration, class action waiver and/or jury trial waiver provisions against members of the Settlement Class as set forth herein. BH Management can enforce any and all arbitration class action waivers, and/or jury trial waiver provisions against (i) individuals who opt out of this Agreement, and (ii) individuals who assert claims unrelated to the factual predicate of this Action.

      c.    *RealPage Data Sharing*. For a period of five (5) years after the Court enters final judgment with respect to BH Management and following any period for appeals, BH Management shall not (i) contract with RealPage, Inc. to authorize RealPage to supply any of BH Management's non-public data to any competitor of BH Management, whether in an aggregated and/or anonymized form or otherwise, for the purpose of pricing of multifamily rental units; and (ii) shall not contract with RealPage, Inc. to use any Revenue Management Solution, service, or program that BH Management knows uses as an input non-public data provided to RealPage, Inc. by BH Management's competitors; provided that Settlement Class Counsel may consent, or BH Management may petition the Court, to delete or modify this provision based upon changed circumstances.

    **14.**    <u>**TERMINATION AND RESCISSION**</u>.

      a.    *Rejection or Alteration of Settlement Terms.* If (i) the Court refuses to grant preliminary or final approval of this Agreement or certify the Settlement Class or such grant or certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to BH Management or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs exceed ten percent of Settlement Class Members and BH Management elects to revisit the terms of this Settlement, then the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement

automatically terminates, unless an extension is otherwise agreed upon by the Parties. Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement Agreement, BH Management and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination is appropriate, unless an extension is otherwise agreed upon by the Parties. A refusal to approve or modification or reversal on appeal based solely on or relating solely to the Settlement Class Counsel's fees and expenses award and/or Plan of Allocation shall not be deemed a refusal to approve or modification of the terms of this Settlement Agreement.

b. *Termination of Settlement.* In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Class Notice and costs of administration of the Settlement Fund, if any, shall be refunded by the escrow agent to BH Management pursuant to written instructions from BH Management's Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of July 30, 2025, and without waiver of any positions asserted in the Action prior to that date. Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c. Plaintiffs, the Settlement Class, Settlement Class Counsel, and BH Management agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by BH Management or any Releasee, or the truth of any of the claims or

allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly or indirectly except in a proceeding to enforce or interpret this Settlement Agreement. Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms.

15. **COVENANT NOT TO SUE**. The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims. Plaintiffs and BH Management agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

16. **BH MANAGEMENT RELEASE**. Pending the Effective Date, BH Management agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the pending Action. Upon the Effective Date, BH Management shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against BH Management, except for claims relating to the enforcement of the Settlement.

17. **NO ADMISSION OF LIABILITY**. The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation

of any statute or law or of any liability or wrongdoing whatsoever by BH Management, or any Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, and shall not be used against BH Management or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against BH Management or the Releasees.

18. <u>**JOINT AND SEVERAL LIABILITY PRESERVED**</u>. This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than BH Management and the Releasees. All claims against such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class. BH Management's and the other Releasees' pricing of multifamily housing rental properties for the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than BH Management and the other Releasees. BH Management and the Releasees shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount and the amounts specifically agreed to in Paragraphs 5 and 10.

19. <u>**CONFIDENTIALITY**</u>. The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain confidential until publicly filed with the Court for approval. Nothing in this Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel. Similarly, nothing in this Paragraph 19 shall prohibit BH Management or any Releasee from making general disclosures as necessary to comply with the securities laws and other obligations,

34

as well as in its public filings. Following the Execution Date, BH Management and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement.

20. **CAFA**. BH Management shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

21. **CONTINUING JURISDICTION**. The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and BH Management, including challenges to the reasonableness of any party's actions. BH Management will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction. The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22. **ENTIRE AGREEMENT**. This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and BH Management pertaining to this Settlement of the Action against BH Management, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and BH Management in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and BH Management and approved by the Court.

23. **BINDING EFFECT**. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and BH Management. Without limiting the generality

of the foregoing, upon the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than BH Management, which is a party to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

24. **EXECUTION IN COUNTERPARTS**. This Agreement may be executed in counterparts by Plaintiffs and BH Management, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25. **NOTICE**. Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

26. **PRIVILEGE**. Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

36

27. **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**. Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement. Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28. **NO PARTY IS THE DRAFTER**. This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for BH Management. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29. **HEADINGS**. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30. **OPPORTUNITY TO CURE**. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

31. **GOVERNING LAW**. All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles.

37

32.     **REASONABLE EXTENSIONS**.  Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

33.     **COUNSEL'S EXPRESS AUTHORITY**.  Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

Dated: September 17, 2025

For the Plaintiffs:

_[signature]_

Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com

_[signature]_

Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com

_[signature]_

Swathi Bojedla
Hausfeld LLP
1200 17th St., NW, Suite 600
Washington, DC 20036
sbojedla@hausfeld.com

Dated: September 18, 2025.

For BH Management Services, LLC:

_____

Ian Simmons
O'Melveny & Myers LLP
1625 Eye Street NW
Washington D.C. 20006
(202) 383-5106
isimmons@omm.com

# EXHIBIT A-6

**Bozzuto**

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | **Case No. 3:23-MD-3071**<br>**MDL No. 3071**<br><br>**This Document Relates to:**<br>**ALL CASES**<br><br>**Hon. Judge Waverly D. Crenshaw, Jr.** |

## SETTLEMENT AGREEMENT BETWEEN
## MULTI-FAMILY PLAINTIFFS AND BOZZUTO MANAGEMENY COMPANY

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of May 2, 2025 ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and Bozzuto Management Company ("BMC" and collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs, on their own behalf and on behalf of the Settlement Class, are prosecuting claims against BMC and other Defendants for allegedly conspiring to fix and inflate the price of multifamily rental housing across the country in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[1] (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of BMC's alleged participation in an unlawful

---

[1] The actions currently centralized in MDL No. 3071 include Cases No. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00410; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

1

conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for residential units nationwide and to exchange competitively sensitive information about rental pricing in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Second Amended Consolidated Class Action Complaint, ECF No. 530;

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from BMC's alleged conduct;

WHEREAS, BMC denies Plaintiffs' allegations, denies any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against it in the Action, denies any liability to Plaintiffs or the Settlement Class in connection with the Action, maintains that it has acted lawfully and pro-competitively at all times, and asserts that it has a number of valid defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against BMC, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the Settlement Amount (defined below) and the value of the discovery that BMC has agreed to provide pursuant to this Agreement;

WHEREAS, BMC, despite its belief that it is not liable for the claims asserted by Plaintiffs in the Action and its belief that it has meritorious defenses to those claims, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of

2

burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement;

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date does not occur;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to BMC, subject to Court approval, on the following terms and conditions:

1. **GENERAL DEFINITIONS**. The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a. "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

b. "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

c. "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

d.     "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

e.     "Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (ECF No. 530; *see also* ECF 728).

f.     "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

g.     "Defendants" means those Defendants named in the Complaint (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Company; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Group, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive Communities Management, LLC; UDR,

4

Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

h.    "Effective Date" shall have the meaning set forth in Paragraph 2(f) of this Settlement Agreement.

i.    "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

j.    "Execution Date" means the latest date of the execution of this Agreement by all Parties.

k.    "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

l.    "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses, (b) Notice and Administration Expenses; (c) any Fee and Expense Award; (d) any Service Awards to Plaintiffs; and (e) other fees and expenses, if any, authorized by the Court.

m.    "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow

Agent (if any). All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

n. "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

o. "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

p. "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

q. "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

r. "BMC's Counsel" means Gallagher Evelius & Jones LLP and Hughes Hubbard & Reed LLP.

s. "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, Selena Vincin, and Maya Haynes.

t. "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey

Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

u.　"Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

v.　"Preliminary Approval Order" and "Preliminary Approval" mean the order preliminarily approving the Settlement and directing notice thereof to the Settlement Class.

w.　"Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

x.　"Releasees" means BMC and Bozzuto & Associates Inc. (the "BMC Releasees") and each of the BMC Releasee's directors, shareholders, members, employees, agents, accountants, personnel, and attorneys. However, the release will not cover other Defendants or owners of multifamily properties for which BMC provides management services, even if such owners are BMC's past, present, or future direct and indirect parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind solely to the extent a claim arises from such person's ownership of a multifamily property.

y.　"Releasors" means Plaintiffs, the Settlement Class, and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any

party claiming by, for, or through the Releasors, with such claiming parties to include any and all of the Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom any of the foregoing have been or now will be affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

z.      "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

aa.      "Settlement Administrator" means the professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of this Settlement to the Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

bb.      "Settlement Amount" shall be USD $4,000,000.00 (four million U.S. dollars) as specified in Paragraph 5.

cc.      "Settlement Class" means the class defined in Paragraph 3 below.

dd.      "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

ee.      "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

ff.     "Settlement Class Period" means October 18, 2018 through the date of Preliminary Approval.

gg.     "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

hh.     "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

ii.     "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon BMC with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

2.     **APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST BMC.**

a.     BMC shall use its reasonable best efforts in connection with Plaintiffs' Counsel's motions for approval of this Settlement and any related documents necessary to effectuate and implement the terms and conditions of this Settlement Agreement. Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement.

b.     Plaintiffs shall, no later than October 1, 2025 (unless otherwise agreed to by the Parties or by order of the Court), submit to the Court a motion seeking preliminary approval

9

of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

c.     BMC has supplied Plaintiffs, in a mutually agreeable electronic format, with reasonably available contact information (*i.e.,* names, last known address, email, and phone number) of Settlement Class Members who rented multifamily housing units in buildings managed by BMC during the Settlement Class Period.  Plaintiffs shall use their reasonable best efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering this Settlement.  The Settlement Administrator and Plaintiffs may request from BMC additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this Agreement, and BMC will not unreasonably deny any such additional requests or fail to timely produce such data, if reasonably available.

d.     Plaintiffs shall, no later than October 1, 2025 (unless otherwise ordered or directed by the Court), submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion").  The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

e.     Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and BMC shall agree upon, with such agreement not to be unreasonably withheld. The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

i.     certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure and solely for purposes of this Settlement, as a Settlement Class for the Action;

ii.      finally approving this Settlement and its terms as fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing consummation of the Settlement according to its terms;

iii.      directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4);

iv.      directing that BMC shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against BMC in the Action (as provided for in Paragraph 16);

v.      directing that the Action (including the Complaint) be dismissed as to BMC with prejudice and, except as provided for in this Agreement, without costs;

vi.      reserving to the Court exclusive jurisdiction over this Settlement and this Agreement, including the interpretation, administration, and consummation of this Settlement;

vii.      determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to BMC shall be final;

viii.      providing that Plaintiffs and BMC have each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure; and

ix.      providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any Defendant, including BMC, to contest certification of any other class proposed in the Action, (2) the Court's findings in this order

and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify any class in the Action or on the Court's rulings concerning any Defendant's motion opposing class certification in the Action; and (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any class or any Defendant's motion.

      f.    This Agreement shall be deemed to have received final approval from the Court (the "Effective Date") when (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 3 and approving this Agreement under Federal Rule of Civil Procedure 23(e) and has entered a final judgment dismissing the Action with prejudice as to BMC and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to BMC described in sub-section (i) of this Paragraph 2(f) has expired in the Action or, if appealed, approval of this Agreement and the order and final judgment in the Action as to BMC have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. The Parties agree that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and BMC shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

      3.    **CERTIFICATION OF A SETTLEMENT CLASS**. Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any Owner, Managing Defendants, and/or Owner-Operator participating in

RealPage's Revenue Management Solutions,[2] including its pricing software and/or lease renewal staggering software programs, or from a division, subsidiary, predecessor, agent, or affiliate of any such Owner, Managing Defendant, and/or Owner-Operator, at any time during the period of October 18, 2018 until entry of an order preliminarily approving the Settlement Agreement (the "Class Period"). Excluded from the Settlement Class are Opt-Outs; the judge presiding over this matter and any members of his judicial staff; federal governmental entities and instrumentalities of the federal government; and states and their subdivisions, agencies, and instrumentalities. Also excluded from the Settlement Class are Defendants, their parent companies, subsidiaries or affiliates, or alleged co-conspirators.

BMC agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. If the Effective Date does not occur, BMC shall have the full ability to oppose any motion for certification of a litigation class in the Action, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials, including anything in the Parties' Settlement Term Sheet, against BMC.

4. **SETTLEMENT CLASS'S RELEASE**.

a. Upon the occurrence of the Effective Date and in consideration of the payment by BMC of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph 13 of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees from any and all claims (including but not limited to any Sherman Act, Clayton Act, and/or state antitrust claims), counterclaims, demands, actions, potential actions, suits, causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for

---

[2]  The terms "Owner," "Managing Defendants," and "Owner Operator" are defined in the Complaint and include Defendants other than RealPage, Inc., Thoma Bravo Fund XIII, L.P., Thoma Bravo Fund XIV, L.P., and Thoma Bravo. "RealPage's Revenue Management Solutions" are defined in the Complaint.

damages, costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had, now have, or may ever have in the future directly, representatively, derivatively or in any other capacity against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, arising from any act or omission through Preliminary Approval of the Settlement Agreement that was alleged or could have been alleged in this Action based on any or all of the same factual predicate of the Action, including but not limited to BMC's alleged participation in a conspiracy to fix or inflate the price of multifamily residential lease prices through the use of RealPage, Inc.'s Revenue Management Solutions including Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM") (the "Released Claims"). The Released Claims shall not include: (i) any claims that may exist as a result of a landlord-tenant relationship between the Parties that are unrelated to the allegations in the Complaint or same factual predicate of the Action; (ii) any claims relating to the enforcement of the Settlement Agreement; and (iii) any claims of any person or entity that submits a request for exclusion from the Settlement and/or Settlement Agreement and whose request is accepted by the Court.

    b.  In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil

Code, with respect to the claims released herein. Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

c.      The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

d.      The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by BMC that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims, and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

5.      **SETTLEMENT AMOUNT**.

a.      BMC agrees that an amount equal to USD $4,000,000.00 (four million U.S. dollars), all in cash, will be paid on behalf of BMC as the Settlement Amount in settlement of the Action, inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action. The payment described above shall constitute the total amount to be paid by BMC in settlement of these claims and BMC's total monetary obligation to Plaintiffs and the Settlement Class in the Action. The

15

Settlement Amount shall be paid into an interest-bearing escrow account (the "Escrow Account") maintained by an escrow agent on behalf of the Settlement Class, within thirty (30) calendar days of the Preliminary Approval Order or Settlement Class Counsel having provided wire instructions to BMC, whichever date occurs later. The Parties agree and acknowledge that none of the Settlement Amount paid by BMC under this Agreement shall be deemed to be, in any way, a penalty, admission of liability, or a fine of any kind.

b.      If BMC (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified above, then Settlement Class Counsel, in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

c.      The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement, and there will be no reversion of settlement funds to BMC, its insurance carriers, or any other person or entity who or which funded the Settlement Amount. Upon the occurrence of the Effective Date, neither BMC, the Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of BMC's insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

6.      **ESCROW ACCOUNT**. An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel. The Escrow Account shall be administered under the Court's continuing supervision and control.

a. Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b. The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

c.      Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

d.      Subject to Court approval, the Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

e.      In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to BMC via wire transfer all funds contributed by BMC that remain in the Escrow Account at that time, less any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante. In the event that the time for appeals has ended and a final order disapproving, terminating, or otherwise rendering the Settlement ineffective is issued by the Court, any reimbursement owed to BMC under this Paragraph may be paid out of the Escrow Account without approval of the Court. Any Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax Expenses actually expended or

incurred shall not be refundable to BMC, its insurance carriers, or any other person or entity who or which funded the Settlement Amount. BMC shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective. Settlement Class Counsel shall ensure that the Settlement Administrator also provides BMC full and complete information related to the Escrow Account to enable BMC to determine whether any taxes may be owed on the funds returned to BMC.

7. **TAX TREATMENT**.

a. The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and BMC, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation §1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

b. For purposes of section 468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to

the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treasury Regulation §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

c.      All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, BMC and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses. Plaintiffs and BMC agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

d.      BMC, the Releasees, and BMC's Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of BMC, the Releasees, and BMC's Counsel

harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

e. Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

8. **CLASS ADMINISTRATION AND NOTICE**. As soon as practicable, Settlement Class Counsel will retain one or more Settlement Administrator(s) that, jointly or separately, are responsible for all aspects of settlement administration. Such Settlement Administrator(s) shall be approved by the Court and, if approved, overseen by Settlement Class Counsel. BMC will not have any involvement in the selection of the Settlement Administrator(s), the claims administration process, or the plan of allocation of the settlement proceeds. The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement. In no event shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

a. At no time and under no circumstances shall Plaintiffs, BMC, Settlement Class Counsel, Plaintiff's Counsel, BMC's Counsel, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrator(s) or their agents.

b.      Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan submitted by Plaintiffs and approved by the Court.  Written notice to Settlement Class Members of this Agreement shall conform to the form of notice(s) submitted by Plaintiffs and approved by the Court.  The Claim Form shall conform to the form submitted by Plaintiffs and approved by the Court.  The procedures for submitting claims shall conform to the procedures outlined below.

c.      Each Settlement Class Member wishing to participate in the Settlement shall be required to submit a Claim Form to the Settlement Administrator.  Each Claim Form must be signed under penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

d.      All Claim Forms must be received by the Settlement Administrator within the time prescribed in the Preliminary Approval Order unless otherwise ordered by the Court.  Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund.  Notwithstanding the foregoing, Settlement Class Counsel may, in their discretion (i) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted.  No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e.      Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel and in

accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

f.    Without regard to whether a Claim Form is submitted or allowed, each Claimant who does not request to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

g.    Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h.    All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process. All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein. The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and

binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

        i.      No Person shall have any claim against BMC, BMC's Counsel, the Releasees, Plaintiffs, the Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made substantially in accordance with this Agreement, the Settlement, the Plan of Allocation, or any orders of the Court.

      9.     **EXCLUSIONS**.

        a.      BMC reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

        b.      A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice. Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

        c.      Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided that such request is received no later than two (2) days before the Court hearing on the fairness, reasonableness, and adequacy of the Settlement (the "Fairness Hearing"), in which event that person will be included in the Settlement Class.

        d.      BMC or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

10.    **PAYMENT OF EXPENSES**.  Other than as set forth in Paragraph 6 above, BMC shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs.  To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action.  To the extent Plaintiffs and other settling Defendants seek preliminary approval of their settlements at the same time the Parties seek Preliminary Approval of the Settlement Agreement with BMC, Notice and Administration Expenses will be apportioned proportionally among BMC and the other settling Defendants.

11.    **THE SETTLEMENT FUND**.

a.    The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b.    After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation.  BMC will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraphs 6 and 10.

c.    The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or

representatives. Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 6, shall be paid out of the Settlement Fund in accordance with this Agreement.

12.     **FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS.**

a.     BMC understands that Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval of the Agreement, submit an application or applications to the Court (the "Fee and Expense Application(s)") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund; (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action; and/or (iii) Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"). BMC understands that Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable Service Awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund and in no event shall the Settlement Amount paid by BMC exceed the amount set forth in Paragraph 5.

b.     Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon entry of the Fee and Expense Award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution,

and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Amount is required, then within fifteen (15) business days of such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction. Each law firm that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Attorneys' Fees and Expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this paragraph.

c. The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement.

d. Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what any court may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses, or any other aspect of this Paragraph. No order of a court or

modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of BMC or the Releasees under this Agreement.

13. **DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION**.

a.      BMC has produced to Plaintiffs structured data on their multifamily lease transactions in accordance with the sample it provided to Plaintiffs in this Action, and in a reasonable manner as agreed by the Parties, for the period January 1, 2010 through the present, and shall answer reasonable questions concerning such structured data.

b.      On or before May 17, 2025, BMC shall complete its production of custodial documents for Nancy Goldsmith, JoLynn Scotch, and Julie Thompson for the time period January 1, 2015 through December 31, 2017, with productions made on a rolling basis from March 19, 2025 through May 17, 2025. BMC's document review population will be limited to 55,704 documents that hit on the Parties' previously agreed search terms and that concern the subject matter of the Action or any allegations within the same factual predicate of the Action. BMC will not provide a privilege log in connection with the production of documents described in this Paragraph, unless the population of withheld documents exceeds ten percent of the review population, in which case BMC will notify Plaintiffs of the total number of documents that are being withheld and make available reasonable additional information upon Plaintiffs' request, including information concerning the types of documents withheld, the basis for withholding, the time periods covered in the withheld documents, and the identification of any repeat custodians and/or participants in withheld documents.

c.      BMC shall produce to Plaintiffs any documents produced to any other plaintiffs, or any federal, state, or other domestic regulator, concerning the subject matter of the

Action or any allegations within the same factual predicate of the Action within five (5) business days of the execution this Agreement, with any documents produced to such entities after execution of this Agreement to be produced five (5) business days after their production to such other plaintiff or regulator. The documents in this Paragraph include any transcripts of governmental or regulatory proceedings or testimony involving any current or former BMC personnel (so long as former personnel were questioned within the scope of their employment with BMC), whether at trial, at a hearing, at a deposition, in a declaration, in an affidavit, or at a sworn interview, and any and all privilege logs associated with documents produced to any other plaintiffs, or any federal, state, or other domestic regulator concerning the subject matter of this Action or any allegations within the same factual predicate of the Action.

d.     BMC shall make available one 30(b)(6) witness, for a deposition not to exceed seven (7) record hours.

e.     BMC shall make available one 30(b)(1) witness, for a deposition not to exceed seven (7) record hours.

f.     BMC shall respond to up to three (3) interrogatories propounded by Plaintiffs.

g.     BMC shall use reasonable efforts to assist Plaintiffs in authenticating documents and/or things BMC produced in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations or affidavits, or, if declarations or affidavits are not reasonably sufficient, depositions, hearings, and/or at trial(s) as may be necessary for authentication of documents in the Action.

h.     BMC will consider reasonable requests for additional relevant information about Plaintiffs' claims in the Action from Interim Co-Lead Counsel, taking into account the

information BMC has or will produce in discovery, and whether providing the requested information will be burdensome.

i.  *Arbitration Non-Enforcement.* For a period of five (5) years after final approval of the Settlement Agreement, BMC agrees not to (a) require that any Settlement Class Member arbitrate any claims against BMC or against any alleged co-conspirator or co-defendant, (b) add a provision to any agreements with any Settlement Class Member requiring that any claims against BMC be arbitrated, (c) argue that any Settlement Class Member is required to arbitrate claims against BMC or against any alleged co-conspirator or co-defendant based on principles of estoppel, and (d) enforce any provisions in any agreements with one or more Settlement Class Members purporting to ban collective or class actions against BMC. This Paragraph applies only to claims or actions arising from or related to the factual predicate of the Action. By way of example only, BMC may enforce arbitration agreements in leases in connection with claims arising out of a tenant's alleged violation of lease terms, provided that such arbitration agreements are enforceable under applicable laws.

j.  *RealPage Data Sharing.* For a period of five (5) years after final approval of the Settlement Agreement, BMC shall (a) direct RealPage, Inc. and any other company providing revenue management services for BMC-managed properties ("RMS Providers") that those companies are prohibited from using any non-public data concerning multifamily residential leases provided by or obtained from BMC in connection with generating lease price recommendations for any BMC competitors; and (b) not contract with RealPage, Inc. or any other RMS Providers to use a revenue management service or program that discloses or purports to use as an input non-public data provided to RealPage, Inc. or any other RMS Providers by BMC's competitors to generate lease price recommendations for BMC; provided that Settlement Class

Counsel may consent, or BMC may petition the Court, to delete or modify this provision based upon changed circumstances. If, during the period that this Paragraph applies to BMC, any Court order or judgment in this Action permits or approves use of revenue management software that is more permissive than the foregoing use restrictions, the parties agree that such an order or judgment shall apply to BMC as if incorporated herein. All disputes concerning this provision shall be resolved by Clay Cogman.

      14.     **TERMINATION AND RESCISSION**.

      a.     *Rejection or Alteration of Settlement Terms.* If (i) the Court refuses to grant preliminary or final approval of this Agreement, or does not certify the Settlement Class for settlement purposes or such certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to BMC pursuant to this Agreement or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs exceed ten percent of Settlement Class Members and BMC elects to revisit the terms of this Settlement, then the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement will automatically terminate, unless a reformulation of the Settlement Agreement or an extension of the 60-day deadline is agreed upon by the Parties. Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement Agreement, BMC and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination is appropriate, unless an extension of the 60-day deadline is otherwise agreed upon by the Parties. A refusal to approve, Court modification of, or reversal on appeal that relates solely to the Settlement Class Counsel's fees and expenses award and/or Plan of Allocation shall not be deemed a refusal to approve, nor modification of the terms of this Settlement Agreement.

b. *Termination of Settlement*. In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Class Notice and costs of administration of the Settlement Fund, if any, shall be refunded by the escrow agent to BMC pursuant to written instructions from BMC's Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of March 18, 2025, without waiver of any positions asserted in the Action prior to that date. Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c. Plaintiffs, the Settlement Class, Settlement Class Counsel, and BMC agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by BMC or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action. Any evidence of such negotiations, discussions, and proffers are not discoverable, and the Plaintiffs and the Settlement Class cannot use such evidence directly or indirectly, except as necessary and permissible under applicable law in a proceeding to enforce or interpret this Settlement Agreement. Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms.

15.    **COVENANT NOT TO SUE**.  The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims.  Plaintiffs and BMC agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

16.    **BMC RELEASE**.  Pending the Effective Date, BMC agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the pending Action.  Upon the Effective Date, BMC shall be deemed to release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against BMC concerning the factual predicate of this Action, except for claims relating to the enforcement of the Settlement.

17.    **NO ADMISSION OF LIABILITY**.  The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by BMC, or any Releasees; or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action.  This Agreement, and any and all negotiations, documents, and discussions associated with it shall not be used against BMC or the Releasees, and evidence thereof shall not be discoverable or used in any way against BMC or the Releasees, whether in the Action or in any other action or proceeding, except as necessary and permissible under applicable law in a proceeding to enforce or interpret this Settlement Agreement.

33

18.    **JOINT AND SEVERAL LIABILITY PRESERVED**.  This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than BMC and the Releasees.  All claims against such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class.  BMC's and the Releasees' alleged conduct with respect to pricing of multifamily housing rental properties for the Settlement Class shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims against Defendants other than BMC or alleged co-conspirators and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than BMC and the Releasees.  BMC and the Releasees shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount and the amounts specifically agreed to in Paragraph 5(a).

19.    **CONFIDENTIALITY**.  The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain confidential until publicly filed with the Court for approval.  Nothing in Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel.  Similarly, nothing in this Paragraph 19 shall prohibit BMC or any Releasee from making general disclosures as necessary to comply with the securities laws and other obligations, as well as in its public filings. Following the Execution Date, BMC and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement.  Additionally, this Paragraph does not prohibit BMC, upon the Execution Date, from informing other plaintiffs who have brought separate actions against BMC arising out of the same factual predicate as this Action that BMC has executed a settlement agreement with Plaintiffs.

20.     **CAFA**.  BMC shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), and notify the Court that CAFA compliance has been accomplished.

21.     **CONTINUING JURISDICTION**.   The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and BMC, including challenges to the reasonableness of any party's actions.  BMC will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction.  The Parties also agree that, in the event of a dispute under this Agreement, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22.     **ENTIRE AGREEMENT**.   This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and BMC pertaining to this Settlement of the Action against BMC, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and BMC in connection herewith.  This Agreement may not be modified or amended except in writing executed by Plaintiffs and BMC and approved by the Court.

23.     **BINDING EFFECT**.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and BMC.  Without limiting the generality of the foregoing, upon the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors.  The Releasees (other than BMC, which is a party to this Agreement) are third-party

beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, the Releasors, and the Releasees any right or remedy under or by reason of this Agreement.

24. **EXECUTION IN COUNTERPARTS**. This Agreement may be executed in counterparts by Plaintiffs and BMC, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25. **NOTICE**. Where this Agreement requires either Party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the Party to whom notice is being provided.

26. **PRIVILEGE**. Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

27. **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**. Each Party agrees and acknowledges that it has (a) thoroughly read and fully understands this Agreement and (b) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and

obligations created by this Agreement. Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28. **NO PARTY IS THE DRAFTER**. This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and BMC's Counsel. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29. **HEADINGS.** The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30. **OPPORTUNITY TO CURE.** If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach (no fewer than 15 business days) before taking any action to enforce any rights under this Agreement.

31. **GOVERNING LAW.** All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles.

32. **REASONABLE EXTENSIONS.** Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

33.  **COUNSEL'S EXPRESS AUTHORITY**.  Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s).

Dated: May 2, 2025

For the Plaintiffs:

_____
Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
pcoughlin@scott-scott.com

_____
Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com

_____
Swathi Bojedla
Hausfeld LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
sbojedla@hausfeld.com

Dated: May 2nd, 2025

BOZZUTO MANAGEMENT COMPANY,
a Maryland corporation

By: _____
Michael A. Schlegel,
Chief Operating Officer

# EXHIBIT A-7

## Brookfield

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | **Case No. 3:23-MD-3071**<br>**MDL No. 3071**<br><br>**This Document Relates to:**<br>**ALL CASES**<br><br>**Chief Judge Waverly D. Crenshaw, Jr.** |

**SETTLEMENT AGREEMENT**

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of September 30, 2025 ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and Brookfield Properties Multifamily LLC (referred to as "Brookfield" and collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs are prosecuting claims against Brookfield and other Defendants for allegedly conspiring to fix and inflate the price of multifamily rental housing across the country on their own behalf and on behalf of the Settlement Class in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[1] (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of Brookfield's alleged participation in an unlawful conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for residential units nationwide and to exchange competitively sensitive information about rental pricing in violation of Section 1 of the

---

[1] The actions currently centralized in MDL No. 3071 include Cases No. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00410; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Second Amended Consolidated Class Action Complaint, ECF No. 530;

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from Brookfield's alleged conduct;

WHEREAS, Brookfield denies Plaintiffs' allegations, denies any and all purported wrongdoing or violation of law in connection with the facts and claims that have been or could have been alleged against it in the Action, and asserts that it has a number of valid defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against Brookfield, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the Settlement Amount (defined below) and the value of the cooperation that Brookfield has agreed to provide pursuant to this Agreement;

WHEREAS, Brookfield, without admitting liability for itself, and despite its belief that it is not liable for the claims asserted by Plaintiffs and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement; and to put to rest with finality all claims that have been or could have been asserted against Brookfield with respect to its use of the RealPage revenue management services, including without limitation, claims based in whole or in part on the facts, occurrences, transactions, or other matters alleged in the Action, or otherwise the subject of the Action, or that could have been alleged in the Action or otherwise have been the subject of the Action, as more particularly set out below;

WHEREAS, the Settlement Fund is intended to qualify as, and remain, a "qualified settlement fund" within the meaning of §468B of the Internal Revenue Code of 1986, as amended (the "Code") and Treasury Regulation §1.468B-1 et seq. (the "QSF Regulations");

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date does not occur;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to Brookfield, subject to Court approval, on the following terms and conditions:

1.   **GENERAL DEFINITIONS**.  The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a.   "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

b.   "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

c.   "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

d.   "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

e.     "Complaint" means the Second Amended Consolidated Class Action Complaint filed on February 5, 2024 (ECF No. 728).

f.     "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

g.     "Defendants" means those Defendants named in Plaintiffs' Complaint (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Group, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

h.     "Effective Date" shall have the meaning set forth in Paragraph 2 of this Settlement Agreement.

i.     "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

j.      "Execution Date" means the latest date of the execution of this Agreement by all Parties.

k.      "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

l.      "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses, (b) Notice and Administration Expenses; (b) any Fee and Expense Award; (c) any Service Awards to Plaintiffs; and (d) other fees and expenses, if any, authorized by the Court.

m.      "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow Agent (if any).  All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

n.      "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

o.      "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

p.      "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

q.     "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

r.     "Brookfield's Counsel" means the undersigned counsel for Brookfield.

s.     "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, Selena Vincin, and Maya Haynes.

t.     "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

u.     "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

v.     "Preliminary Approval Order" and "Preliminary Approval" mean the order preliminarily approving the Settlement and directing notice thereof to the Settlement Class.

w.     "Properties" means all properties managed, owned and/or operated by the Brookfield Releasees in the United States.

x.     "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

y.     "Releasees" means Brookfield and any and all of its past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint ventures, including all of their respective predecessors, successors and assigns, and each and all of

their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind (other than any other currently named Defendant in the Action).

z.      "Releasors" means Plaintiffs, the Settlement Class, and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, or through the Releasors, with such claiming parties to include any and all of Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

aa.      "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

bb.      "Settlement Administrator" means the professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of this Settlement to the Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

cc.      "Settlement Amount" shall be USD $5,250,000 (five million and two hundred fifty thousand U.S. dollars) as specified in Paragraph 5.

dd.      "Settlement Class" means the class defined in Paragraph 3 below.

ee.  "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

ff.  "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

gg.  "Settlement Class Period" means from October 18, 2018 to the date of Preliminary Approval.

hh.  "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

ii.  "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

jj.  "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Brookfield with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for U.S federal (or applicable state or local) income tax purposes.

2.  **APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST BROOKFIELD.**

a.  The Parties shall use their reasonable best efforts in connection with Plaintiffs' Counsel's motions for approval of this Settlement and any related documents necessary to effectuate and implement the terms and conditions of this Settlement Agreement.  Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement.

b.     Plaintiffs shall submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

c.     Plaintiffs shall submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion"). The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

d.     Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and Brookfield shall agree upon, and such agreement will not be unreasonably withheld. The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

i.     certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii.     approving finally this Settlement and its terms as being a fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

iii.     directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4)

iv.     directing that Brookfield shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Brookfield (as provided for in Paragraph 16);

v.     directing that the Action (including the Complaint) be dismissed as to Brookfield with prejudice and, except as provided for in this Agreement, without costs;

vi.     reserving to the Court the exclusive jurisdiction over this Settlement and

this Agreement, including the interpretation, administration, and consummation of this Settlement,

as well as over Brookfield for its provision of cooperation pursuant to this Agreement;

vii.     determining under Federal Rule of Civil Procedure 54(b) that there is no

just reason for delay and directing that the judgment of dismissal in the Action as to Brookfield

shall be final;

viii.     certifying the Settlement Class;

ix.     providing that Plaintiffs and Brookfield have each complied fully with the

strictures of Rule 11 of the Federal Rules of Civil Procedure; and

x.     providing that (1) the Court's certification of the Settlement Class is without

prejudice to, or waiver of, the rights of any (a) non-settling Defendant, to contest certification of

any other class proposed in the Action, or of (b) Brookfield's right to contest certification of any

other proposed class in the Action should this Agreement not become final; (2) the Court's findings

in this order and final judgment in the Action shall have no effect on the Court's ruling on any

motion to certify any class in the Action or on the Court's rulings concerning any Defendant's

motion; and (3) no Party may cite or refer to the Court's approval of the Settlement Class as

persuasive or binding authority with respect to any motion to certify any such class or any

Defendant's motion.

e.     This Agreement shall become final and be deemed to have received final approval

when (i) the Court has entered in the Action a final order certifying the Settlement Class described in

Paragraph 3 and approved this Agreement under Federal Rule of Civil Procedure 23(e) and has entered a

final judgment dismissing the Action with prejudice as to Brookfield and without costs other than those

provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the

Court's approval of this Agreement and entry of the order and the final judgment as to Brookfield

described in (i) hereof has expired in the Action or, if appealed, approval of this Agreement and the order

and final judgment in the Action as to Brookfield have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review (the "Effective Date"). It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and Brookfield shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

3. **CERTIFICATION OF A SETTLEMENT CLASS**. Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any Owner, Managing Defendants, and/or Owner-Operator participating in RealPage's Revenue Management Solutions,[2] including its pricing software and/or lease renewal staggering software programs, or from a division, subsidiary, predecessor, agent, or affiliate of any such Owner, Managing Defendant, and/or Owner-Operator, at any time during the period of October 18, 2018 until entry of an order preliminarily approving the Settlement Agreement (the "Class Period"). Specifically excluded from this Class are Opt-Outs; Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; any affiliate, legal representative, heir or assign of any Defendant; any federal, state, or local governmental entities; instrumentalities of the federal government; states and their subdivisions, agencies, and instrumentalities; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action.

Brookfield agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. If the Effective Date does not occur, Brookfield shall have the full ability to oppose any motion for certification of a litigation class, and Plaintiffs may not use anything in the Settlement Agreement, Term Sheet, preliminary approval papers, or other settlement materials against Brookfield.

4. **SETTLEMENT CLASS'S RELEASE**.

---

[2] "Owner," "Managing Defendants," and "Owner Operator" are defined in the Complaint and include the Defendants other than RealPage, Thoma Bravo Fund XIII, L.P., Thoma Bravo Fund XIV, L.P., and Thoma Bravo. "RealPage's Revenue Management Solutions" are defined in the Complaint.

a. Upon the occurrence of the Effective Date and in consideration of the payment by Brookfield of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph 13 of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees from any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had or now have directly, representatively, derivatively or in any other capacity against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, arising from the conduct that was alleged or could have been alleged in this Action and relating to the Properties based on any or all of the same factual predicate of the Action, including but not limited to Brookfield's alleged participation in a conspiracy to fix or inflate the price of multifamily residential lease prices (the "Released Claims"). Released Claims shall not include: (i) claims asserted against any Defendant other than a Brookfield Releasee or any owner of any of the Properties other than a Brookfield Releasee; (ii) any claims wholly unrelated to the allegations in the Complaint, including claims based on breach of contract, state landlord-tenant regulation, negligence, and personal injury; (iii) claims relating to the enforcement of the Settlement or its terms; (iv) claims asserted against persons or entities (that are not affiliates of Brookfield) with whom Brookfield or one or more of its affiliates has a partnership, joint venture, or co-investor relationship, to the extent such claims do not relate to the subject of Brookfield's or its affiliates' partnership, joint venture, or co-investor relationship with such person or entity, including, by way of example, claims arising from such other person's or entity's ownership or management of a property that is not a Brookfield Property (see Exhibit A), and (v) any claims of any person or entity that submits a request for exclusion and whose request is accepted by the Court.

b. In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein. Section 1542 of the California Civil Code provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

c. The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

d. The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by Brookfield that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

5. **SETTLEMENT AMOUNT**.

a. Brookfield agrees that an amount equal to USD $5,250,000 all in cash, will be paid on behalf of Brookfield as the Settlement Amount in settlement of the Action, inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, class member incentive awards, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action. The payment described above shall constitute the total amount to be paid by Brookfield in settlement of these claims. The Settlement Amount

shall be paid into an interest-bearing escrow account (the "Escrow Account") maintained by an escrow agent on behalf of the Settlement Class, within thirty (30) business days of either the Court's grant of Preliminary Approval or Plaintiffs having provided wire instructions to Brookfield, whichever occurs later. The Parties agree and acknowledge that none of the Settlement Amount paid by Brookfield under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

b. If Brookfield (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified above, then Settlement Class Counsel, in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

c. The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement, and there will be no reversion of settlement funds to Brookfield, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, if the Settlement becomes final. Upon the occurrence of the Effective Date, neither Brookfield, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of Brookfield's insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

6. **ESCROW ACCOUNT**. An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel. The Escrow Account shall be administered under the Court's continuing supervision and control.

a. Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent

in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b.      The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

c.      Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

d.      The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement

Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

        e.      In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to Brookfield via wire transfer all funds remaining in the Escrow Account at that time, including any interest accrued thereto, less any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante, including Brookfield's pre-Settlement Agreement positions regarding any motion for certification of a litigation class.  Brookfield shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective.  Settlement Class Counsel shall ensure that the Settlement Administrator also provides Brookfield full and complete information related to the Escrow Account to enable Brookfield to determine whether any taxes may be owed on the funds returned to Brookfield.

       7.      **TAX TREATMENT**.

        a.      The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Code, for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and Brookfield, shall jointly and timely make such elections and take all other reasonable actions as are necessary or advisable to carry out the provisions of this paragraph, including making the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation §1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Any such elections to be made pursuant to the terms of this Agreement

shall be made in compliance with the procedures and requirements contained in the QSF Regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

b.      For purposes of §468B of the Code and the QSF Regulations, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax and information returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treasury Regulation§1.468B-2(k). Such tax and information returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 (and the QSF Regulations) and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. The Settlement Administrator shall take no action that could cause the Settlement Fund to fail to qualify as a qualified settlement fund within the meaning of the QSF Regulations.

c.      All Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) shall be paid out of the Settlement Fund. In all events, Brookfield and Releasees shall have no liability for Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties). Further, Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses (including any estimated Taxes and

Tax Expenses, interest, or penalties). Plaintiffs and Brookfield agree to cooperate with the Escrow Agent, the Settlement Administrator, each other, and their respective tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

d. Brookfield, Releasees, and Brookfield's Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties), including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of Brookfield, Releasees, and Brookfield's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of or attributable to any amounts payable under this Paragraph 7).

e. Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of or attributable to any amounts payable under this Paragraph 7 ).

8. **CLASS ADMINISTRATION AND NOTICE**. As soon as practicable, Settlement Class Counsel will retain one or more Settlement Administrator that, jointly or separately, are responsible for all aspects of settlement administration. Such Settlement Administrator shall be approved by the Court and, if approved, overseen by Settlement Class Counsel. Brookfield will not have any involvement in the selection of the Settlement Administrator(s), the claims administration process, or the plan of allocation of the settlement proceeds. Brookfield shall not be responsible for paying any amount related to settlement administration or the Settlement Administrator. The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement. In no event shall Plaintiffs or Settlement Class Counsel be responsible for paying any

amount for the Notice and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

  a. At no time and under no circumstances shall Plaintiffs, Brookfield, Settlement Class Counsel, Plaintiff's Counsel, Brookfield's Counsel, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

  b. Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs. Written notice to Settlement Class Members of this Agreement shall conform to the form of notice(s) approved by the Court, after proposed notice(s) are submitted to the Court by Plaintiffs. The Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs. The procedures for submitting claims shall conform to the procedures outlined below.

  c. Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form. Each Claim Form must be signed under penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

  d. All Claim Forms must be received by the Settlement Administrator within the time prescribed in the Preliminary Approval Order unless otherwise ordered by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted. No Person shall have any claim

against Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e. Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

f. Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

g. Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h. All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process. All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein. The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including the United States Court of Appeals for the

Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

        i.      No Person shall have any claim against Brookfield, Brookfield's Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

9.     **EXCLUSIONS**.

        a.      Brookfield reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

        b.      A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice. Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

        c.      Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

        d.      Brookfield or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

10.    **PAYMENT OF EXPENSES**. Subject to Court approval, disbursements for payment of Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to Brookfield, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, in the event this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent

such expenses have actually been expended or incurred. Any refund that becomes owed to Brookfield if this Settlement does not become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court. Other than as set forth in this Paragraph, Brookfield shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs. To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action and to apportion the costs of notice and administration in an equitable manner across the applicable settlements.

11. **THE SETTLEMENT FUND**.

a. The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b. After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation. Brookfield will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

c. The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives. Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

12. **FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS.**

a.      Brookfield understands that Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval of the Agreement, submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action; and/or (iii) and Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award").  Brookfield understands that Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable service awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

b.      Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon final approval of the Settlement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Amount is required, then within fifteen (15) business days after receiving notice from Brookfield of such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction.  Each law firm

that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Attorneys' Fees and Expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this paragraph.

c. The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement.

d. Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph. No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of Brookfield or the Releasees, under this Agreement.

13. **DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION**.

a. As part of the consideration given to Plaintiffs for the settlement, Brookfield agrees to take the following actions:

i. By November 21, 2025, Brookfield shall use reasonable efforts to make Annie Laurie McCulloh available for one 30(b)(6) deposition not to exceed seven (7) record hours, and one 30(b)(1) deposition not to exceed seven (7) record hours, provided that both depositions must occur on consecutive days if they cannot be completed in a single day.

ii. Brookfield shall use reasonable best efforts to assist Plaintiffs in authenticating documents produced in the Action, by declarations or affidavits under Federal Rule of Evidence 803(6) and/or 902(11).

14. **TERMINATION AND RESCISSION**.

a. *Rejection or Alteration of Settlement Terms.* If (i) the Court refuses to grant preliminary or final approval of this Agreement or certify the Settlement Class or such grant or certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to Brookfield or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs exceed ten percent of Settlement Class Members and Brookfield elects to revisit the terms of this Settlement, then the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement automatically terminates, unless an extension is otherwise agreed upon by the Parties. Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement Agreement, Brookfield and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination is appropriate, unless an extension is otherwise agreed upon by the Parties. A refusal to approve or modification or reversal on appeal based solely on or relating solely to the Settlement Class Counsel's fees and expenses award and/or Plan of Allocation shall not be deemed a refusal to approve or modification of the terms of this Settlement Agreement.

b. *Termination of Settlement.* In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Class Notice and costs of administration of the Settlement Fund, if any, shall be refunded by the escrow agent to Brookfield pursuant to written instructions from Brookfield's Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of January 29, 2025, and without waiver of any positions asserted

in the Action prior to that date. Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c.  Plaintiffs, the Settlement Class, Settlement Class Counsel, and Brookfield agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by Brookfield or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly or indirectly except in a proceeding to enforce or interpret this Settlement Agreement. Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms.

15.  **COVENANT NOT TO SUE**.  The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims. Plaintiffs and Brookfield agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

16.  **BROOKFIELD RELEASE**.  Pending the Effective Date, Brookfield agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the pending Action. Upon the Effective Date, Brookfield shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution,

prosecution, or settlement of the claims against Brookfield, except for claims relating to the enforcement of the Settlement.

17. **NO ADMISSION OF LIABILITY**. The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by Brookfield, or any Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, and shall not be used against Brookfield or the other Releasees, and evidence thereof shall not be discoverable or used in any way, for any purpose in any legal proceeding, whether in the Action or in any other action, claim, regulatory proceeding, or government investigation, against Brookfield or the Releasees.

18. **JOINT AND SEVERAL LIABILITY PRESERVED**. This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than Brookfield and the Releasees. All claims against such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class. Brookfield's and the other Releasees' pricing of multifamily housing rental properties for the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than Brookfield and the other Releasees. Brookfield and the Releasees shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount and the amounts specifically agreed to in Paragraphs 5 and 10.

19. **CONFIDENTIALITY**. The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain confidential until publicly filed with the Court for approval. Nothing in Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel. Similarly, nothing in this

Paragraph 19 shall prohibit Brookfield or any Releasee from making general disclosures as necessary to comply with the securities laws and other obligations, as well as in its public filings. Following the Execution Date, Brookfield and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement. Quoting materials in the public record would not constitute a violation of this Paragraph. Any dispute arising under this Paragraph shall be resolved by an alternative dispute resolution procedure to be agreed upon separately by the Parties.

20. **CAFA**. Jointly with the other settling Defendants, Brookfield shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

21. **CONTINUING JURISDICTION**. The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Brookfield, including challenges to the reasonableness of any party's actions. Brookfield will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction. The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22. **ENTIRE AGREEMENT**. This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and Brookfield pertaining to this Settlement of the Action against Brookfield, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and Brookfield in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and Brookfield and approved by the Court.

23. **BINDING EFFECT**. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and Brookfield. Without limiting the generality of the foregoing, upon

the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than Brookfield, which is a party to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

24. **EXECUTION IN COUNTERPARTS**. This Agreement may be executed in counterparts by Plaintiffs and Brookfield, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25. **NOTICE**. Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

26. **PRIVILEGE**. Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

27. **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**. Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement. Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. Each Party enters into this

Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28. **NO PARTY IS THE DRAFTER**. This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for Brookfield. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29. **HEADINGS**. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30. **OPPORTUNITY TO CURE:** If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

31. **GOVERNING LAW:** All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles.

32. **REASONABLE EXTENSIONS:** Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

33. **COUNSEL'S EXPRESS AUTHORITY**. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

34. **USE OF REALPAGE REVENUE MANAGEMENT SERVICES**. The parties acknowledge that, as of November 1, 2024, Brookfield has ceased utilizing RealPage revenue management services.

Dated: September 30, 2025

For the Plaintiffs:


_____
Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com


_____
Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com


_____
Swathi Bojedla
Hausfeld LLP
1200 17th Street, N.W., Suite 600
Washington, DC 20036
sbojedla@hausfeld.com

Dated: September 29, 2025

For Brookfield:

_____

Yehudah L. Buchweitz
Weil, Gotshal & Manges LLP

# EXHIBIT A

## Brookfield Properties for purposes of Paragraph 4(a)(iv)

| Property Name | Location |
|---|---|
| 100 Landsdowne | Cambridge, MA |
| 100 Monitor | Jersey City, NJ |
| 111 Worth Street | New York, NY |
| 1110 Key Federal Hill | Baltimore, MD |
| 1111 Stratford | Stratford, CT |
| 125 Milton | Atlanta, GA |
| 1251 South Michigan | Chicago, IL |
| 15 Cliff | New York, NY |
| 1810 Main | Houston, TX |
| 2626 South Side Flats | Pittsburgh, PA |
| 3333 Broadway | New York City, NY |
| 3700M | Dallas, TX |
| 735 St Clair | Portland, OR |
| 7575 Town Center | Denver, CO |
| 8421 Broad | Mclean, VA |
| 8500 Sunset | Los Angeles, CA |
| 8th and Grand | Los Angeles, CA |
| 91 Sidney | Cambridge, MA |
| Alder | Northridge, CA |
| Altitude Apartments Phase I | South San Francisco, CA |
| American Cigar | Richmond, VA |
| Andorra Apartments | Camarillo, CA |
| Anzio | Lawrenceville, GA |
| Arbors of Las Colinas | Irving, TX |
| Ashford Place | Charlotte, NC |
| Aster Conservatory Green East | Denver, CO |
| Aster Conservatory Green West | Denver, CO |
| Atelier | Los Angeles, CA |
| Aura | Orange, CA |
| Ballston Quarter Residential | Arlington, VA |
| Bayside | Pinole, CA |
| Bayside Village | San Francisco, CA |
| Bear Creek | Redmond, WA |
| Big Creek | Parma Heights, OH |
| Botanica Town Center | Denver, CO |
| Briggs + Union | Mt. Laurel Township, NJ |

| Property Name | Location |
|---|---|
| Brookwood Club | Jacksonville, FL |
| Cameron Court | Alexandria, VA |
| Cameron Kinney | Richmond, VA |
| Canyon Chase | Westminster, CO |
| Central Park TOD | Denver, CO |
| Cherry Tree | Strongsville, OH |
| Cherry Tree Village | Strongsville, OH |
| Chestnut Lake | Strongsville, OH |
| Church Park | Boston, MA |
| Cielo | Seattle, WA |
| Cobblestone Court Apartments | Painesville, OH |
| Consolidated Carolina | Richmond, VA |
| Copper Tree Apartments | Mayfield Heights, OH |
| Courtney Ridge | Charlotte, NC |
| Lynn Lake | Raleigh, NC |
| Crescent Flats | Denver, CO |
| Crosstown at Chapel Hill | Chapel Hill, NC |
| Cutter's Ridge | Richmond, VA |
| Dallas | Dallas, TX |
| DKLB BKLN | Brooklyn, NY |
| Domain | Kissimmee, FL |
| DUO Apartments | San Jose, CA |
| Eagle + West | Brooklyn, NY |
| Eagle Ridge | Loveland, CO |
| Easthaven at the Village | Beachwood, OH |
| Eighth & Grand | Los Angeles, CA |
| Embree Hill I & II | Garland, TX |
| England Run II | Fredericksburg, VA |
| England Run North | Fredericksburg, VA |
| Estate | Washington, DC |
| Fairfax Gateway | Fairfax, VA |
| Fairfield South Lamar | Austin, TX |
| Flats on Front | Wilmington, NC |
| Foundry Lofts | Washington, DC |
| Grand Ave | Portland, OR |
| Hamel Mill Lofts | Haverhill, MA |
| Harlow | Washington, DC |
| Harrison 4 | Harrison, NJ |
| Harrison 5 | Harrison, NJ |

| Property Name | Location |
|---|---|
| Harrison 6 | Harrison, NJ |
| Henley Riverside | Austin, TX |
| Heritage Woods | Austin, TX |
| Hudson Exchange Phase II | Jersey City, NJ |
| Hummingbird Pointe | Parma, OH |
| Hunter's Hollow | Strongsville, OH |
| Independence Place I | Parma Heights, OH |
| Independence Place II | Parma Heights, OH |
| Indigo Apartments | Austin, TX |
| James Pointe | Murray, UT |
| KBL | Cambridge, MA |
| L Seven | San Francisco, CA |
| Lake Village West | Garland, TX |
| Liberty Hills Apartments | Solon, OH |
| Lilia | Waikiki, HI |
| Lincoln at Bankside | Bronx, NY |
| Loft23 | Cambridge, MA |
| Lucky Strike | Richmond, VA |
| Marlon | Denver, CO |
| Meadow Glen | Glendale, AZ |
| Mercantile Place on Main | Dallas, TX |
| Metro 417 | Los Angeles, CA |
| Midtown Towers | Parma, OH |
| MILA | Chicago, IL |
| Millbrook | Raleigh, NC |
| Miramar Lakes | Miramar, FL |
| Monaco Park | Las Vegas, NV |
| Mosso | San Francisco, CA |
| North Church Towers | Cleveland, OH |
| Oak Ramble | Tampa, FL |
| One Blue Slip | Brooklyn, NY |
| One Franklin Town | Philadelphia, PA |
| Origin | Arlington, VA |
| Osprey Links at Hunter's Creek | Orlando, FL |
| Park 9 | Woodstock, GA |
| Pine Ridge Apartments | Willoughby, OH |
| Preserve at Rolling Oaks | Austin, TX |
| Queenswood Apartments | Corona, NY |
| Radian | Boston, MA |

| Property Name | Location |
|---|---|
| Sabal Pointe | Coral Springs, FL |
| San Valiente | Phoenix, AZ |
| Sandy 28 Apartments | Portland, OR |
| Settler's Landing Apartments | Streetsboro, OH |
| SKY55 | Chicago, IL |
| Solano at Miramar | Miramar, FL |
| South Pointe | Tampa, FL |
| St. James Crossing | Tampa, FL |
| Stamford | Stamford, CT |
| Stillwater | Murray, UT |
| Stone Ridge | Boston, MA |
| Stratford Crossings | Wadsworth, OH |
| Surfside Towers | Eastlake, OH |
| Talia | Marlborough, MA |
| Terra Vida | Mesa, AZ |
| Thayer and Spring | Silver Spring, MD |
| The Arbors at Wells Branch | Austin, TX |
| The Aster Town Center | Denver, CO |
| The Aster Town Center North | Denver, CO |
| The Beaudry | Los Angeles, CA |
| The Bellslip | Brooklyn, NY |
| The Bixby | Washington, DC |
| The Burnham | Nashville, TN |
| The Burnham Nashville | Nashville, TN |
| The Continental | Dallas, TX |
| The Dawson | Tampa, FL |
| The Drake | Philadelphia, PA |
| The Edmund | Reston, VA |
| The Element | Dallas, TX |
| The Eugene | New York, NY |
| The Gables of McKinney | McKinney, TX |
| The Gardens | Parma, OH |
| The Gardens | Columbus, OH |
| The George (5M) | San Francisco, CA |
| The Grand | North Bethesda, MD |
| The Guild | Washington, DC |
| The Heritage | San Diego, CA |
| The James | San Jose, CA |
| The Knolls | Orange, CA |

| Property Name | Location |
|---|---|
| The Lofts At 1835 Arch | Philadelphia, PA |
| The Logan | Oakland, CA |
| The Merc | Dallas, TX |
| The Merian | San Diego, CA |
| The Met | Los Angeles, CA |
| The Met | Las Vegas, NV |
| The Montgomery | Bethesda, MD |
| The Olivia | New York, NY |
| The Parker | Alexandria, VA |
| The Parker at Huntington Metro | Alexandria, VA |
| The Pavilion | Chicago, IL |
| The Perch PDX | Portland, OR |
| The Place | Nashville, TN |
| The Presidio Landmark | San Francisco, CA |
| The Reserve at Ashley Lake | Boynton Beach, FL |
| The River Lofts at Ashton Mill | Cumberland, RI |
| The Village at Legacy Ridge | Westminster, CO |
| The Village Residences | Mountain View, CA |
| The Villas at Shadow Creek | Pearland, TX |
| The Wilson Building | Dallas, TX |
| Third at Bankside | Bronx, NY |
| Turtle Cove | West Palm Beach, FL |
| Twelve12 | Washington, DC |
| Two Blue Slip | Brooklyn, NY |
| Vantage Pointe | San Diego, CA |
| Vela (f/k/a Rowan) | Washington, DC |
| Vela (The Yards - Parcel I) | Washington, D.C. |
| Verso | Beaverton, OR |
| Village on Memorial | Houston, TX |
| Villages at San Antonio | Mountainview, CA |
| Vintage | Pleasanton, CA |
| Vintage Pointe | Las Vegas, NV |
| Vita | Orange, CA |
| VYV North | Jersey City, NJ |
| VYV South | Jersey City, NJ |
| Warm Springs (LIHTC) | Fremont, CA |
| Waterside Plaza | New York, NY |
| Webster Eleven | Oakland, CA |
| Wellmont Development | Montclair, NJ |

| Property Name | Location |
|---|---|
| Westchester at the Pavilions | Waldorf, MD |
| Westcreek | Houston, TX |
| Winchester Lofts | New Haven, CT |
| Xander 3900 | Las Vegas, NV |

38

# EXHIBIT A-8

**CH Real Estate**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | **Case No. 3:23-MD-3071**<br>**MDL No. 3071**<br><br>**This Document Relates to:**<br>**ALL CASES**<br><br>**Hon. Judge Waverly D. Crenshaw, Jr.** |

**SETTLEMENT AGREEMENT**

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of July 22, 2025 ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and CH Real Estate Services, LLC ("CH") and collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs are prosecuting claims against CH and other Defendants for allegedly conspiring to fix and inflate the price of multifamily rental housing across the country on their own behalf and on behalf of the Settlement Class in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[1] (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of CH's alleged participation in an unlawful conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for residential units

---

[1]     The actions currently centralized in MDL No. 3071 include Cases No. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

nationwide and to exchange competitively sensitive information about rental pricing in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Second Amended Consolidated Class Action Complaint, ECF No. 530;

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from CH's alleged conduct;

WHEREAS, CH denies Plaintiffs' allegations, denies any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against it in the Action, and asserts that it has a number of valid defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against CH, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the Settlement Amount (defined below) and the value of the cooperation that CH has agreed to provide pursuant to this Agreement;

WHEREAS, CH, despite its belief that it is not liable for the claims asserted by Plaintiffs and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement;

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date does not occur;

2

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to CH, subject to Court approval, on the following terms and conditions:

1. **GENERAL DEFINITIONS**. The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a. "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

b. "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

c. "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

d. "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

e. "Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (ECF Nos. 530, 728 (as re-filed across cases).

3

f.     "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

g.     "Defendants" means those Defendants named in Plaintiffs' Complaint (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Group, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

h.     "Effective Date" shall have the meaning set forth in Paragraph 2 of this Settlement Agreement.

4

i.     "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

j.     "Execution Date" means the latest date of the execution of this Agreement by all Parties.

k.     "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

l.     "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses, (b) Notice and Administration Expenses; (b) any Fee and Expense Award; (c) any Service Awards to Plaintiffs; and (d) other fees and expenses, if any, authorized by the Court.

m.     "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow Agent (if any). All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

n.     "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

o.     "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

p.     "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

q.     "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

r.     "CH's Counsel" means Attorneys at Venable LLP.

s.     "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes.[2]

t.     "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

---

[2]     While Selena Vincin was named as a Plaintiff in the Complaint, her claims have since been dismissed in their entirety (*see* Dkt. Nos. 689, 1164).

6

u.      "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

v.      "Preliminary Approval Order" and "Preliminary Approval" mean the order preliminarily approving the Settlement and directing notice thereof to the Settlement Class.

w.      "Properties" means any and all multifamily residential properties managed by CH during the Settlement Class Period, that used RMS at any point during the Settlement Class Period.

x.      "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

y.      "Releasees" means CH and any and all of its past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind. However, the release will not cover other Defendants or owners of multifamily properties for which CH provides management services, even if such owners are CH's past, present, or future direct and indirect parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators,

7

beneficiaries, and representatives of any kind solely to the extent a claim arises from such person's ownership of a multifamily property.

z. "Releasors" means Plaintiffs, the Settlement Class, and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, or through the Releasors, with such claiming parties to include any and all of Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

aa. "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

bb. "Settlement Administrator" means the professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of this Settlement to the Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

cc. "Settlement Amount" shall be USD $2,250,000.00 (two million two-hundred fifty thousand dollars) as specified in Paragraph 5.

dd.     "Settlement Class" means the class defined in Paragraph 3 below.

ee.     "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

ff.     "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

gg.     "Settlement Class Period" means from October 18, 2018 to the date of Preliminary Approval.

hh.     "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

ii.     "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

jj.     "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon CH with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

2.     **APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST CH.**

a.     CH shall use its reasonable best efforts in connection with Plaintiffs' Counsel's motions for approval of this Settlement and any related documents necessary to effectuate and implement the terms and conditions of this Settlement Agreement.  Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps

and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement.

b.     Plaintiffs shall, not longer than six (6) months from the Execution Date absent a written agreement between the Parties or by order of Court, submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

c.     Within thirty (30) calendar days after the Execution Date, or as soon thereafter as is practicable, CH shall supply to Plaintiffs or use reasonable best efforts to request and confirm that RealPage will supply, the contact information of Settlement Class Members who rented multifamily housing units in the Properties managed by CH during the Settlement Class Period, and, to the extent necessary to effectuate notice to Settlement Class Members, to supplement the data to account for additional Settlement Class Members through the order preliminarily approving the Settlement Agreement.  The contact information shall be provided in a mutually agreeable electronic format. Plaintiffs shall use their reasonable best efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering this Settlement.  The Settlement Administrator and Plaintiffs may request from CH additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this Agreement, and CH will not unreasonably deny any such additional requests or fail to timely produce such data, if available.

d.     Plaintiffs shall submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion").  The Notice Motion

shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

e. Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and CH shall agree upon, and such agreement will not be unreasonably withheld. The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

i. certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii. approving finally this Settlement and its terms as being a fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

iii. directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4)

iv. directing that CH shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against CH (as provided for in Paragraph 16);

v. directing that the Action (including the Complaint) be dismissed as to CH with prejudice and, except as provided for in this Agreement, without costs;

vi. reserving to the Court the exclusive jurisdiction over this Settlement and this Agreement, including the interpretation, administration, and consummation of this

11

Settlement, and reserving for the mediator, resolution of any disputes regarding the provision of Cooperation pursuant to this Agreement;

vii.     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to CH shall be final;

viii.     providing that Plaintiffs and CH have each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure; and

ix.     providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of (a) any non-settling Defendant to contest certification of any other class proposed in the Action, or of (b) CH's right to contest certification of any other class proposed in the Action should this Agreement not become final as indicated in Paragraph 2(f) below; (2) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify any class in the Action or on the Court's rulings concerning any Defendant's motion; and (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

f.     This Agreement shall become final and be deemed to have received final approval when (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 3 and approving this Agreement under Federal Rule of Civil Procedure 23(e) and has entered a final judgment dismissing the Action with prejudice as to CH and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the

12

final judgment as to CH described in (i) hereof has expired in the Action or, if appealed, approval of this Agreement and the order and final judgment in the Action as to CH have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review (the "Effective Date"). It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and CH shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

3. **CERTIFICATION OF A SETTLEMENT CLASS**. Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any Owner, Managing Defendants, and/or Owner-Operator participating in RealPage's Revenue Management Solutions,[3] including its pricing software and/or lease renewal staggering software programs, or from a division, subsidiary, predecessor, agent, or affiliate of any such Owner, Managing Defendant, and/or Owner-Operator, at any time during the period of October 18, 2018 until entry of an order preliminarily approving the Settlement Agreement (the "Class Period"). Specifically excluded from this Class are Opt-Outs; Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; any affiliate, legal representative, heir or assign of any Defendant; any federal, state, or local governmental entities; instrumentalities of the federal government; states and their subdivisions, agencies, and instrumentalities; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action.

CH agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. If the Effective

---

[3] "Owner," "Managing Defendants," and "Owner Operator" are defined in the Complaint and include the Defendants other than RealPage, Thoma Bravo Fund XIII, L.P., Thoma Bravo Fund XIV, L.P., and Thoma Bravo. "RealPage's Revenue Management Solutions" are defined in the Complaint.

Date does not occur, CH shall have the full ability to oppose any motion for certification of a litigation class, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against CH.

4. **SETTLEMENT CLASS'S RELEASE**.

a. Upon the occurrence of the Effective Date and in consideration of the payment by CH of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph 13 of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees from any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had or now have directly, representatively, derivatively or in any other capacity against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, arising from the conduct that was alleged or could have been alleged in this Action and relating to the Properties based on any or all of the same factual predicate of the Action, including but not limited to CH's alleged participation in a conspiracy to fix or inflate the price of multifamily residential lease prices through the use of RealPage, Inc.'s Revenue Management Solutions including Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM") (the "Released Claims"). Released Claims shall not include: (i) claims asserted against any Defendant or co-conspirator other than CH, or any owner of any of the Properties other than CH; (ii) any claims

wholly unrelated to the allegations in the Complaint or that may exist as a result of a landlord-tenant relationship between the Parties, including claims based on breach of contract, state landlord-tenant regulation, negligence, and personal injury; (iii) claims relating to the enforcement of the Settlement or its terms; or (iv) any claims of any person or entity that submits a request for exclusion and whose request is accepted by the Court.

        b.      In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein. Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

        c.      The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

        d.      The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by CH that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the

Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

5. **SETTLEMENT AMOUNT**.

a. CH agrees that an amount equal to USD $ 2,250,000.00 (two million, two-hundred fifty thousand dollars), all in cash, will be paid on behalf of CH as the Settlement Amount in settlement of the Action, inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action. The payment described above shall constitute the total amount to be paid by CH for the settlement of these claims. The Settlement Amount shall be paid into an interest-bearing escrow account (the "Escrow Account") maintained by an escrow agent on behalf of the Settlement Class, within thirty (30) calendar days of Plaintiffs providing all necessary wire instructions to CH for the purpose of CH paying or causing to be paid the Settlement Amount, after the Execution Date. The Parties agree and acknowledge that none of the Settlement Amount paid by CH under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

b. If CH (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified above, then Settlement Class Counsel, in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

16

c.     The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement, and there will be no reversion of settlement funds to CH, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, if the Settlement becomes final. Upon the occurrence of the Effective Date, neither CH, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of CH's insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

6.     **ESCROW ACCOUNT**.  An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel.  The Escrow Account shall be administered under the Court's continuing supervision and control.

a.     Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b.      The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

c.      Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

d.      The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

e.      In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs

and/or Settlement Class Counsel shall reimburse to CH via wire transfer all funds remaining in the Escrow Account at that time, less any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante. CH shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective. Settlement Class Counsel shall ensure that the Settlement Administrator also provides CH full and complete information related to the Escrow Account to enable CH to determine whether any taxes may be owed on the funds returned to CH.

7. **TAX TREATMENT**.

a. The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and CH, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation §1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

b.      For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treas. Reg. §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

c.      All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, CH and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses. Plaintiffs and CH agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

d.      CH, Releasees, and CH's Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the

20

Settlement Fund, shall indemnify and hold each CH, Releasees, and CH's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

        e.     Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

        8.     **CLASS ADMINISTRATION AND NOTICE**.  As soon as practicable, Settlement Class Counsel will retain one or more Settlement Administrator that, jointly or separately, are responsible for all aspects of settlement administration.  Such Settlement Administrator shall be overseen by Settlement Class Counsel and the Court.  CH will not have any involvement in the selection of the Settlement Administrator(s), the claims administration process, or the plan of allocation of the settlement proceeds. The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement.  In no event shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

        a.     At no time and under no circumstances shall Plaintiffs, CH, Settlement Class Counsel, Plaintiffs' Counsel, CH's Counsel, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

b.     Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs. Written notice to Settlement Class Members of this Agreement shall conform to the form of notice(s) approved by the Court, after proposed notice(s) are submitted to the Court by Plaintiffs. The Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs. The procedures for submitting claims shall conform to the procedures outlined below.

c.     Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form. Each Claim Form must be signed under penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

d.     All Claim Forms must be received by the Settlement Administrator within the time prescribed in the Preliminary Approval Order unless otherwise ordered by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted. No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e.     Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in

22

accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

f. Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

g. Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h. All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process. All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein. The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be

no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

i.    No Person shall have any claim against CH, CH's Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

9.    **EXCLUSIONS**.

a.    CH reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

b.    A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice.   Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

c.    Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

d.    CH or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

10.    **PAYMENT OF EXPENSES**. Subject to Court approval, disbursements for payment of Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax

Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to CH, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, in the event this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses have actually been expended or incurred. Any refund that becomes owed to CH if this Settlement does not become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court. Other than as set forth in this Paragraph, CH shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs. To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action and to apportion the costs of notice and administration in an equitable manner across the applicable settlements.

11. **THE SETTLEMENT FUND**.

a. The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b. After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation. CH will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability

25

whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

c. The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives. Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

12. **FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS**.

a. CH understands that Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval of the Agreement, submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action; and/or (iii) and Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"). CH understands that Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable service awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

b. Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon final approval of the Settlement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel

26

shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs'
Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their
assessment of the overall respective contributions of such counsel to the initiation, prosecution,
and resolution of the Action. However, if and when, as a result of any appeal and further
proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or
reversed, or return of the Settlement Amount is required, then within fifteen (15) business days
after receiving notice from CH of such an order from a court of appropriate jurisdiction, each
Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the
Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned
on the Settlement Fund, in an amount consistent with such reversal or reduction. Each law firm
that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Attorneys' Fees and
Expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the
law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court
for purposes of enforcing the provisions of this paragraph.

    c.  The procedure for and the allowance or disallowance by the Court of the
application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards
for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to
be considered by the Court separately from the Court's consideration of the fairness,
reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request
for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such
order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the
judgment approving this Settlement.

d.      Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph.  No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of CH or the Releasees, under this Agreement.

13.      **DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION**.

a.      Cooperation by CH is a material term of the Settlement and shall include the following categories of cooperation, with all disputes concerning the same to be resolved by the mediator, Clay Cogman.

i.      On or before [July 15, 2025], CH shall produce the profit and loss documents agreed to by the Parties for the time period January 1, 2012 through October 18, 2023,  and consistent with the Parties' negotiated agreement regarding CH's response to Request No. 9 of  Plaintiffs' First Set of Requests to Owners, Owner-Operators, and Managing Defendants for the Production of Documents and Electronically Stored Information, in a structured and accessible format, such as Excel or .csv file(s).  CH will also answer Plaintiffs' reasonable questions concerning these documents if clarification is needed;

ii.      By the Court-ordered deadline for the completion of document productions, CH produced to Plaintiffs emails one (1) agreed upon CH Revenue Management executive sent to and/or received from any RealPage personnel regarding RealPage's RMS, in accordance with the Parties' agreement;

iii.     CH shall make available one 30(b)(6) or one 30(b)(1) witness, for a deposition not to exceed four (4) record hours;

iv.     CH shall use reasonable efforts to assist Plaintiffs in authenticating documents and/or things CH produced in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations or affidavits. Authentication shall be attempted first through declarations or affidavits. If declarations or affidavits are not reasonably sufficient, the Parties shall meet and confer in good faith to determine an alternative method of authentication, which may include depositions, hearings, or trial testimony, as reasonably required by the mediator, the Court, or as otherwise mutually agreed by the Parties;

v.     CH will consider reasonable requests for additional relevant information about Plaintiffs' claims in the Action from Interim Co-Lead Counsel, taking into account the information it has or will produce in discovery, and whether providing the requested information will be burdensome.

b.     *Arbitration Non-Enforcement.* CH agrees not to (i) challenge or object to any Class Members' claims on the basis that the Class Member is bound by an arbitration agreement, class action waiver, or jury trial waiver, and (ii) join in any challenge, objection, or motion to enforce arbitration, jury trial or class action waivers in connection with Class Members' claims in this Action.

c.     *RealPage Data Sharing.* For a period of five (5) years after the Court enters Final Judgment in this Action, CH shall (a) not authorize RealPage, under CH's contract with RealPage, to use any non-public data sourced from CH's multifamily residential leases as an input in calculating rent recommendations made to other RMS users and shall not authorize RealPage

29

to use any non-public data sourced from other RMS users' multifamily residential leases as an input in calculating rent recommendations made to CH; and (b) not contract with RealPage, Inc. or any other company providing revenue management services to use a revenue management service which, by its terms, uses as an input in calculating rent recommendations to one company non-public data sourced from other companies concerning other companies' multifamily residential leases; provided that Settlement Class Counsel may consent, or CH may petition the Court, to delete or modify this provision based upon changed circumstances. Nothing in this provision shall otherwise prohibit CH's use of any RealPage product in accordance with the terms set for in this Paragraph 13(c) of the Agreement, including but not limited to OneSite and RMS.

14. **TERMINATION AND RESCISSION**.

    a. *Rejection or Alteration of Settlement Terms.* If (i) the Court refuses to grant preliminary or final approval of this Agreement or certify the Settlement Class or such grant or certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to CH or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs exceed ten percent of Settlement Class Members and CH elects to revisit the terms of this Settlement, then the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement automatically terminates, unless an extension is otherwise agreed upon by the Parties. Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement Agreement, CH and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination is appropriate, unless an extension is otherwise agreed upon by the Parties. A refusal to approve or modification or reversal on appeal based solely on or relating solely to the Settlement Class Counsel's fees and expenses

award and/or Plan of Allocation shall not be deemed a refusal to approve or modify the terms of this Settlement Agreement.

b.      *Termination of Settlement.*   In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Class Notice and costs of administration of the Settlement Fund, if any, shall be refunded by the escrow agent to CH pursuant to written instructions from CH's Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of May 9, 2025, and without waiver of any positions asserted in the Action prior to that date.   Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c.      Plaintiffs, the Settlement Class, Settlement Class Counsel, and CH agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by CH or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly or indirectly except in a proceeding to enforce or interpret this Settlement Agreement.   Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms.

31

15.    **COVENANT NOT TO SUE**.  The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims. Plaintiffs and CH agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

16.    **CH RELEASE**.  Pending the Effective Date, CH agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the pending Action. Upon the Effective Date, CH shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against CH, except for claims relating to the enforcement of the Settlement.

17.    **NO ADMISSION OF LIABILITY**.  The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by CH, or any Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, and shall not be used against CH or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against CH or the Releasees.

18.    **JOINT AND SEVERAL LIABILITY PRESERVED**.  This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than CH and the Releasees.  All claims against such

other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class. CH's and the other Releasees' pricing of multifamily housing rental properties for the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than CH and the other Releasees. CH and the Releasees shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount and the amounts specifically agreed to in Paragraphs 5 and 10.

19. **CONFIDENTIALITY**. The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain confidential until publicly filed with the Court for approval. Nothing in Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel. Similarly, nothing in this Paragraph 19 shall prohibit CH or any Releasee from making general disclosures as necessary to comply with the securities laws and other obligations, as well as in its public filings. Following the Execution Date, CH and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement.

20. **CAFA**. CH shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

21. **CONTINUING JURISDICTION**. The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and

agreement by Plaintiffs and CH, including challenges to the reasonableness of any party's actions. CH will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction. The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22. **ENTIRE AGREEMENT**. This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and CH pertaining to this Settlement of the Action against CH, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and CH in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and CH and approved by the Court.

23. **BINDING EFFECT**. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and CH. Without limiting the generality of the foregoing, upon the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than CH, which is a party to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

24. **EXECUTION IN COUNTERPARTS**. This Agreement may be executed in counterparts by Plaintiffs and CH, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25.    **NOTICE**.  Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

26.    **PRIVILEGE**.  Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

27.    **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**.  Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement.  Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel.  Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28.    **NO PARTY IS THE DRAFTER**.  This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for CH.  None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any

statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29. **HEADINGS**. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30. **OPPORTUNITY TO CURE**. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

31. **GOVERNING LAW**. All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles.

32. **REASONABLE EXTENSIONS**. Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

33. **COUNSEL'S EXPRESS AUTHORITY**. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

36

Dated: July 21, 2025

For the Plaintiffs:

_____
Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com


_____
Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com


_____
Swathi Bojedla
Hausfeld LLP
888 16th Street, N.W., Suite 300
Washington, DC 20006
sbojedla@hausfeld.com

Dated: *July 22, 2025*

For Defendant CH Real Estate Services, LLC:

*Danielle R. Foley*
Danielle R. Foley
Venable LLP
600 Massachusetts Avenue, N.W.,
Washington, DC 20001
drfoley@venable.com