# EXHIBIT A-9

## CONAM

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | **Case No. 3:23-MD-3071**<br>**MDL No. 3071**<br><br>**This Document Relates to:**<br>**ALL CASES**<br><br>**Chief Judge Waverly D. Crenshaw, Jr.** |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of August 6, 2025 ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and CONAM Management Corporation ("CONAM" and collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs are prosecuting claims against CONAM and other Defendants for allegedly conspiring to fix and inflate the price of multifamily rental housing across the United States and its territories on their own behalf and on behalf of the Settlement Class in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[1] (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of CONAM's alleged participation in an unlawful conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for

---

[1] The actions currently centralized in MDL No. 3071 include Cases No. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

residential units nationwide and to exchange competitively sensitive information about rental pricing in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Second Amended Consolidated Class Action Complaint, ECF No. 728;

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from CONAM's alleged conduct;

WHEREAS, CONAM denies Plaintiffs' allegations, denies any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against it in the Action, and asserts that it has a number of valid defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against CONAM, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the Settlement Amount (defined below) and the value of the cooperation that CONAM has agreed to provide pursuant to this Agreement;

WHEREAS, CONAM, despite its belief that it is not liable for the claims asserted by Plaintiffs and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement;

2

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date does not occur;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to CONAM, subject to Court approval, on the following terms and conditions:

1. **GENERAL DEFINITIONS**. The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a. "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

b. "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

c. "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

3

d. "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

e. "Complaint" means the Second Amended Consolidated Class Action Complaint filed on February 5, 2024 (ECF No. 728).

f. "CONAM's Counsel" means Sidley Austin LLP.

g. "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

h. "Defendants" means those Defendants named in Plaintiffs' Complaint (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Property Trust, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo

4

Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

   i.  "Effective Date" shall have the meaning set forth in Paragraph 2 of this Settlement Agreement.

   j.  "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

   k.  "Execution Date" means the latest date of the execution of this Agreement by all Parties.

   l.  "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

   m.  "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses, (b) Notice and Administration Expenses; (c) any Fee and Expense Award; (d) any Service Awards to Plaintiffs; and (e) other fees and expenses, if any, authorized by the Court.

   n.  "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized

Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow Agent (if any). All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

o. "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

p. "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

q. "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

r. "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

s. "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes.

t. "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey

Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

u.     "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

v.     "Preliminary Approval Order" and "Preliminary Approval" mean the order preliminarily approving the Settlement and directing notice thereof to the Settlement Class.

w.     "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

x.     "Releasees" means CONAM and the following entities: 1531 NACO Manager LLC; 9100 Holding LLC; Arizona 520 Exchange Owner LLC; Arizona 520 Investors LLC; Bravo Owner LLC; CA Amara Member LLC; CA Audubon Owner LLC; CA Buccaneer Trace Owner LLC; CA Calle Real Investors LLC; CA Calle Real Owner LLC; CA Craig Ranch Owner LLC; CA Edmond at Hacienda Owner LLC; CA Eviva Owner LLC; CA Florida Club Owner LLC; CA Glisan 16 Owner LLC; CA Highline 1675 Owner LLC; CA Investment Partners LLC; CA Maxwell Owner LLC; CA Orenco MM LLC; CA Orlando Sands Owner LLC; CA Phoenix Pointe Investors LLC; CA Prescott Lakes Owner LLC; CA River Walk Member LLC; CA River Walk SM LLC; CA Rockledge Flats Owner LLC; CA Skylar Grand Owner LLC; CA Solis Member LLC; CA Spyglass Owner LLC; CA Summer Lido Owner LLC; CA The Minn Investors LLC; CA The Minn Member LLC; CA The Minn MM LLC; CA The Minn SM LLC; CA Viera West Owner LLC; CA Vista Sureno Owner LLC; CA Vista Verde Owner LLC; CAMC Holdings, Inc.; CAP Investment Manager LLC; CAPL Building LLC; CC Lake City LLC; CC West Seattle LLC; ConAm 1675 MM LLC; ConAm 2017 MOF MM LLC; ConAm 2017

7

Multifamily Opportunity Fund LLC; ConAm 2019 MFP III MM LLC; ConAm 2019 SM 520 LLC; ConAm 9100 LLC; ConAm Altitude 1675 Investors LLC (f/k/a Highline Village Associates); ConAm Arizona 520 Investors LLC; ConAm Bridges LLC; CONAM Capital Management LLC (f/k/a ConAm Investment Services LLC); ConAm Cordova, Inc.; ConAm Cordova, Ltd.; CONAM Fund IV GP LLC; CONAM Fund IV SLP LLC; ConAm Glisan 16 Investors LLC; ConAm Glisan 16 MM LLC; ConAm Highland Park LLC; ConAm Holdings LLC; ConAm Holman13 Investors LLC; ConAm Holman13 MM LLC; ConAm Holman13 Owner LLC; ConAm Investment Manager LLC; ConAm Management Services LLC; ConAm Manzanita L.P.; ConAm MFP III SM 2019 LLC; ConAm MOF SM 2017 LLC; ConAm Multifamily Partners Fund III LLC; ConAm Orenco Investors LLC; ConAm Partners 85D; ConAm Partners 87B; ConAm Partners 90; ConAm Partners 90 GP LLC; ConAm Phoenix Pointe MM LLC; ConAm Properties LLC; ConAm RE Investments LLC; ConAm SM 2015 H13 LLC; ConAm SM 2016 1675 LLC; ConAm SM 2016 OS LLC; ConAm SM 2016 VW LLC; ConAm SM 2018 Solis LLC; ConAm SM 2019 Amara LLC; ConAm SM 2019 G16 LLC; ConAm SM 2019 SVR LLC; ConAM SM 2021 PSM LLC; CONAM Special Member 2023 LLC; CONAM Strategic Investments Fund IV LP; ConAm Tradition Owner LLC; ConAm Vancouver Williams Investors LLC; ConAm Vancouver Williams MM LLC; ConAm Vancouver Williams Owner LLC; ConAm West Seattle Investors LLC; Continental American Properties, Ltd.; DJE Financial Corp.; DOR Colorado LLC; EFCA Holdings LLC; EPS Colorado LLC; FER Colorado LLC; Forest Glen Apartments; KFE, Inc.; KFED Boulders Owner LLC; KFED DOR 85B LLC; KFED DOR MM LLC; KFED LLC; KOR Colorado LLC; Lake City Investors LLC; Mission Hills Commons Owners Association; Mission Hills Investors LLC; Orenco Owner LLC; Penryn Development LLC; River Walk II Owner LLC; River Walk Investor LLC; River Walk MM LLC; River Walk Owner LLC; Rosemont Boulders

Owner LLC; Rosemont Park LLC (converted from CAPL Rosemont LP); RPS Cap Member LLC; Shadowbrook Associates; South Valley Ranch Owner LLC; Summerhouse Investors; The Minn Investor Member LLC; The Minn Owner LLC; and West Seattle Apartment Investors LLC. The release will not cover other Defendants or owners of multifamily properties for which CONAM provides management services that are not Releasees.

y. "Releasors" means Plaintiffs, the Settlement Class, and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, or through the Releasors, with such claiming parties to include any and all of Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

z. "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

aa. "Settlement Administrator" means the professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice

of this Settlement to the Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

bb.     "Settlement Amount" shall be USD $4,500,000 (four million, five-hundred thousand U.S. dollars) as specified in Paragraph 5.

cc.     "Settlement Class" means the class defined in Paragraph 3 below.

dd.     "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

ee.     "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

ff.     "Settlement Class Period" means from October 18, 2018 to the date of Preliminary Approval.

gg.     "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

hh.     "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

ii.     "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon CONAM with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

2.     **APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST CONAM**.

a.   CONAM shall use its reasonable best efforts in connection with Plaintiffs' Counsel's motions for approval of this Settlement and any related documents necessary to effectuate and implement the terms and conditions of this Settlement Agreement. Subject to the approval of the Court, the Parties will cooperate in good faith and undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement. Plaintiffs reserve all rights to renew their motion for approval of the Settlement if it is not initially approved and will act promptly and without unreasonable delay to renew any such motion.

b.   Plaintiffs shall, no later than October 1, 2025 (unless otherwise agreed to by the Parties or by order of the Court), submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

c.   Within thirty (30) days after the Execution Date, CONAM shall use reasonable efforts to supply Plaintiffs with the contact information of Settlement Class Members who rented multifamily housing units in buildings managed/owned by CONAM during the Settlement Class Period.  The contact information shall be provided in a mutually agreeable electronic format. Plaintiffs shall use their reasonable best efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering this Settlement.  The Settlement Administrator and Plaintiffs may request from CONAM additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this Agreement, and CONAM will not unreasonably deny any such additional requests or fail to timely produce such data, if reasonably available.

d.       Plaintiffs shall submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion"). The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

e.       Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and CONAM shall agree upon, and such agreement will not be unreasonably withheld. The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

i.       certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii.       approving finally this Settlement and its terms as being a fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

iii.       directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4)

iv.       directing that CONAM shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against CONAM (as provided for in Paragraph 16);

v.       directing that the Action (including the Complaint) be dismissed as to CONAM with prejudice and, except as provided for in this Agreement, without costs;

vi.    reserving to the Court the exclusive jurisdiction over this Settlement and this Agreement, including the interpretation, administration, and consummation of this Settlement, as well as over CONAM for its provision of cooperation pursuant to this Agreement;

vii.    determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to CONAM shall be final;

viii.    certifying the Settlement Class;

ix.    providing that Plaintiffs and CONAM have each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure; and

x.    providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any Defendant, including CONAM, to contest certification of any other class proposed in the Action, (2) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify any class in the Action or on the Court's rulings concerning any Defendant's motion; and (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

f.    This Agreement shall become final and be deemed to have received final approval when (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 3 and approving this Agreement under Federal Rule of Civil Procedure 23(e) and has entered a final judgment dismissing the Action with prejudice as to CONAM and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to

13

seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to CONAM described in (i) hereof has expired in the Action or, if appealed, approval of this Agreement and the order and final judgment in the Action as to CONAM have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review (the "Effective Date"). It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and CONAM shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

3.  **CERTIFICATION OF A SETTLEMENT CLASS**. Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease from any Owner, Managing Defendant and/or Owner-Operator participating in RealPage's Revenue Management Solutions,[2] including its pricing software and/or lease renewal staggering software programs, or from a division, subsidiary, predecessor, agent, or affiliate of any such Owner, Managing Defendant, and/or Owner-Operator, at any time during the period of October 18, 2018, until entry of an order preliminarily approving the Settlement Agreement (the "Class Period"). Excluded from the Settlement Class are Opt-Outs; Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant; any federal, state, or local governmental entities; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; any juror assigned to this Action; and any alleged co-conspirator identified in this Action.

---

[2] "Owner," "Managing Defendant," and "Owner Operator" are defined in the Complaint and include the Defendants other than RealPage, Thoma Bravo Fund XIII, L.P., Thoma Bravo Fund XIV, L.P., and Thoma Bravo. "RealPage's Revenue Management Solutions" are defined in the Complaint.

CONAM agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. If the Effective Date does not occur, CONAM shall have the full ability to oppose any motion for certification of a litigation class, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against CONAM.

4. **SETTLEMENT CLASS'S RELEASE.**

a. Upon the occurrence of the Effective Date and in consideration of the payment by CONAM of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph 13 of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees and CONAM's Counsel from any and all claims (including but not limited to any Sherman Act, Clayton Act, and/or state antitrust claims), including all claims any member of the Settlement Class ever had, now has, or hereinafter, can, shall, or may ever have, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected and unsuspected, actual or contingent, liquidated or unliquidated claims, causes of action, injuries, losses, or damages arising from or in connection with any act or omission until Preliminary Approval of this Settlement Agreement arising from the factual predicate of the Action, including but not limited to Defendants' alleged conspiracy to fix the prices of multifamily residential leases through the use of RealPage, Inc.'s Revenue Management Software (including Lease Rent Options, Yieldstar, and AI Revenue Management) (the "Released Claims"). Released Claims shall not include: (i) claims asserted against any Defendant or alleged co-conspirator other than CONAM, or any owner of any CONAM-managed property other than CONAM and the other Releasees; (ii) any claims relating to the enforcement of the Settlement or its terms; or (iii) any claims wholly unrelated to the allegations in the

15

Complaint, including claims based on breach of contract, state landlord-tenant regulation, negligence, and personal injury.

   b.  In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein. Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

   c.  The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

   d.  The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by CONAM that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

   5.  **SETTLEMENT AMOUNT**.

a. In consideration for the release described in Paragraph 4(a) and the dismissal of the Action, within thirty (30) calendar days of either the Court's grant of Preliminary Approval or Plaintiffs having provided wire instructions to CONAM, whichever occurs later, CONAM shall pay or cause to be paid an amount equal to USD $4,500,000 (four million, five-hundred thousand U.S. dollars) on behalf of CONAM as the Settlement Amount in settlement of the Action, inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action. The Settlement Amount reflects CONAM's total obligation under the Agreement, including but not limited to (i) all claims by Settlement Class members, (ii) all fees and costs of Settlement Class Counsel as ordered by the Court, (iii) all Notice and Administration Expenses and taxes, and (iv) any Service Award payment to a named Plaintiff as ordered by the Court. Under no circumstances shall CONAM be required to pay more than the Settlement Amount. The Settlement Amount shall be paid into an interest-bearing escrow account (the "Escrow Account") maintained by an escrow agent on behalf of the Settlement Class, within fourteen (14) business days of Plaintiffs providing all necessary information for their escrow agent after the Execution Date. The Parties agree and acknowledge that none of the Settlement Amount paid by CONAM under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind. Within 30 days of the execution of this Agreement CONAM shall provide information needed to give notice to the Settlement Class to the extent such information is reasonably available.

b. If CONAM (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified above, then Settlement Class Counsel, in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement

by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

c. The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement, and there will be no reversion of settlement funds to CONAM, its insurance carriers, or any other person or entity who or which funded the Settlement Amount. Upon the occurrence of the Effective Date, neither CONAM, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of CONAM's insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

6. **ESCROW ACCOUNT**. An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel. The Escrow Account shall be administered under the Court's continuing supervision and control.

a. Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any

18

Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b. The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

c. Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

d. The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments

shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

e.     In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to CONAM via wire transfer all funds remaining in the Escrow Account at that time, including interest accrued thereto, less any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante. CONAM shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective. Settlement Class Counsel shall ensure that the Settlement Administrator also provides CONAM full and complete information related to the Escrow Account to enable CONAM to determine whether any taxes may be owed on the funds returned to CONAM.

7.     **TAX TREATMENT**.

a.     The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and CONAM, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation

§1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

b.      For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treas. Reg. §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

c.      All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, CONAM and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes

21

and Tax Expenses. Plaintiffs and CONAM agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

d.      CONAM, Releasees, and CONAM's Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each CONAM, Releasees, and CONAM's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

e.      Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

8.      **CLASS ADMINISTRATION AND NOTICE**. As soon as practicable, Settlement Class Counsel will retain one or more Settlement Administrator that, jointly or separately, are responsible for all aspects of settlement administration. Such Settlement Administrator shall be approved by the Court and, if approved, overseen by Settlement Class Counsel. CONAM will not have any involvement in the selection of the Settlement Administrator(s), the claims administration process, or the plan of allocation of the settlement proceeds. The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement. In no event shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice and Administration

22

Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

a.	At no time and under no circumstances shall Plaintiffs, CONAM, Settlement Class Counsel, Plaintiff's Counsel, CONAM's Counsel, the Releasors, or the other Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

b.	Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs. Written notice to Settlement Class Members of this Agreement shall conform to the form of notice(s) approved by the Court, after proposed notice(s) are submitted to the Court by Plaintiffs. The Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs. The procedures for submitting claims shall conform to the procedures outlined below.

c.	Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form. Each Claim Form must be signed under penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

d.	All Claim Forms must be received by the Settlement Administrator within the time prescribed in the Preliminary Approval Order unless otherwise ordered by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (ii)

23

waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted. No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, CONAM, CONAM's counsel, or the Settlement Administrator for any reasonable exercise of discretion with respect to such late submitted or technically deficient claims.

e.     Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

f.     Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

g.     Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h.     All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims,

shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process. All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein. The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

i.     No Person shall have any claim against CONAM, CONAM's Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

9.     **EXCLUSIONS**.

a.     CONAM reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

b.     A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice. Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

c.     Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided

that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

        d.      CONAM or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

        10.     **PAYMENT OF EXPENSES**. Subject to Court approval, disbursements for payment of Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to CONAM, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, in the event this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses have actually been expended or incurred. Any refund that becomes owed to CONAM if this Settlement does not become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court. Other than as set forth in this Paragraph, CONAM shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs. To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action and to apportion the costs of notice and administration in an equitable manner across the applicable settlements. CONAM will be responsible for sending notices required by the Class Action Fairness Act and for all costs and expenses related thereto.

        11.     **THE SETTLEMENT FUND**.

a.     The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b.     After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation.  CONAM will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

c.     The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives.  Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

12.    **FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS.**

a.     CONAM understands that Settlement Class Counsel may, at a time to be determined in its sole discretion after Preliminary Approval of the Agreement, submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action; and/or (iii) and Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award").  CONAM understands that Settlement Class Counsel reserve the right

to make additional applications for Court approval of fees and expenses incurred and reasonable service awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

b.      Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon final approval of the Agreement, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Amount is required, then within fifteen (15) business days after receiving notice from CONAM of such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction. Each law firm that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Attorneys' Fees and Expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this Paragraph.

c.      The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards

for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement.

       d.      Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph. No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of CONAM or the other Releasees, under this Agreement.

     13.    **DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION**.

       a.      Reasonable cooperation co-extensive with the scope of the Released Claims as detailed herein by CONAM is a material term of the Settlement and shall include the following categories of cooperation, with all disputes concerning its cooperation under Paragraph 13(a)(i)-(vi) to be resolved by the mediator, Clay Cogman:

          i.   CONAM shall produce, or if agreeable to Plaintiffs, cause RealPage to produce to Plaintiffs, within thirty (30) days of signing the Settlement term sheet, structured data on their multifamily lease transactions consistent with the Parties' negotiated agreement regarding structured data in response to

Plaintiffs' First Set of Requests to Owners, Owner-Operators, and Managing Defendants for the Production of Documents and Electronically Stored Information, and shall answer reasonable questions concerning such structured data;

ii. CONAM shall produce to Plaintiffs any documents produced to any other plaintiffs, or any federal, state, or other domestic regulator, concerning the subject matter of the Action or any allegations within the same factual predicate of the Action within five (5) business days of the execution this Agreement, with any documents produced to such entities after execution of this Agreement to be produced ten (10) business days after their production to such other plaintiffs or regulators;

iii. CONAM shall make available one 30(b)(6) witness for a deposition not to exceed seven (7) record hours;

iv. CONAM shall make available two 30(b)(1) witnesses, for depositions not to exceed ten (10) total record hours;

v. CONAM shall use reasonable efforts to assist Plaintiffs in authenticating documents and/or things produced in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations or affidavits or, if declarations or affidavits are not reasonably sufficient, depositions, hearings, and/or at trial(s) as may be necessary for the Action; and

vi. CONAM will consider reasonable requests for additional relevant information about Plaintiffs' claims in the Action from Interim Co-Lead

Counsel, taking into account the information it has or will produce in discovery, and whether providing the requested information will be burdensome.

vii. **Arbitration Non-Enforcement**. For a period of five (5) years after the Court enters Final Judgment in this Action, CONAM agrees not to (a) require that any member of the Settlement Class arbitrate any claims against CONAM or against any alleged co-conspirator or co-Defendant, (b) add a provision to any agreement with any Settlement Class Member requiring that any claims against CONAM be arbitrated, (c) argue that any Settlement Class Member or Members are required to arbitrate claims against CONAM or against any alleged co-conspirator or co-Defendant based on principles of estoppel, or (d) enforce any provisions in any agreements with one or more Settlement Class Members purporting to ban collective or class actions against CONAM; this paragraph 13(a)(vii) applies only to the extent that the claims at issue concern the subject matter of the Action.

viii. **RealPage Data Sharing**. For a period of five (5) years after the Court enters Final Judgment in this Action, CONAM shall (a) not permit RealPage, Inc. to share CONAM's nonpublic data concerning multifamily residential leases with RealPage, Inc. customers other than CONAM; (b) not permit RealPage, Inc. to use CONAM's nonpublic data concerning multifamily residential leases to provide pricing or occupancy recommendations to RealPage, Inc. customers other than CONAM; and (c) not permit RealPage, Inc. to use non-public data concerning multifamily residential leases

31

provided to RealPage, Inc. by CONAM's competitors in providing pricing or occupancy recommendations to CONAM; provided that Settlement Class Counsel may consent, or CONAM may petition the Court, to delete or modify this provision based upon changed circumstances. In no event shall the restrictions set forth in this paragraph be more restrictive than what (i) the Court may order in this Action; (ii) a further class settlement provides; or (iii) is permissible following a jury verdict or otherwise applicable court order or legislation. Any and all disputes arising out of or in any way related to this paragraph shall be resolved by Judge Crenshaw and the U.S. District Court for the Middle District of Tennessee.

14. **TERMINATION AND RESCISSION**.

a. *Rejection or Alteration of Settlement Terms.* If (i) the Court refuses to grant preliminary or final approval of this Agreement or certify the Settlement Class or such grant or certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to CONAM or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs exceed ten percent of Settlement Class Members and CONAM elects to revisit the terms of this Settlement, then the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement automatically terminates, unless an extension is otherwise agreed upon by the Parties. Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement Agreement, CONAM and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination is appropriate, unless an extension is otherwise agreed upon by the Parties. A refusal to approve or

modification or reversal on appeal based solely on or relating solely to the Settlement Class Counsel's fees and expenses award and/or Plan of Allocation shall not be deemed a refusal to approve or modification of the terms of this Settlement Agreement.

b.    *Termination of Settlement.*    In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Class Notice and costs of administration of the Settlement Fund as approved by the Court, if any, shall be refunded by the escrow agent to CONAM pursuant to written instructions from CONAM's Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of May 1, 2025, and without waiver of any positions asserted in the Action prior to that date.  Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c.    Plaintiffs, the Settlement Class, Settlement Class Counsel, and CONAM agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by CONAM or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly or indirectly except in a proceeding to enforce or interpret this Settlement Agreement.  Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree

that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms.

15.     **COVENANT NOT TO SUE**. The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims. Plaintiffs and CONAM agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure, and that the proposed final judgment will contain a statement to reflect this compliance.

16.     **CONAM RELEASE**. Pending the Effective Date, CONAM agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the pending Action. Upon the Effective Date, CONAM shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against CONAM, except for claims relating to the enforcement of the Settlement.

17.     **NO ADMISSION OF LIABILITY**. The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by CONAM, or any Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, and shall not be used against CONAM or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any

other action or proceeding, including any regulatory proceeding or government investigation, against CONAM or the other Releasees.

18. **JOINT AND SEVERAL LIABILITY PRESERVED**. This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than CONAM and the other Releasees. All claims against such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class. CONAM's and the other Releasees' pricing of multifamily housing rental properties for the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than CONAM and the other Releasees. CONAM and the other Releasees shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount.

19. **CONFIDENTIALITY**. The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain confidential until publicly filed with the Court for approval. Nothing in Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel. Similarly, nothing in this Paragraph 19 shall prohibit CONAM or any Releasee from making general disclosures as necessary to comply with the securities laws and other obligations, as well as in its public filings. Following the Execution Date, CONAM and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement.

20.   **CAFA**.  CONAM shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

21.   **CONTINUING JURISDICTION**.  The Court shall retain continuing jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and CONAM, including challenges to the reasonableness of any party's actions, during the life of the Action.  CONAM will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction.  The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22.   **ENTIRE AGREEMENT**.  This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and CONAM pertaining to this Settlement of the Action against CONAM, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and CONAM in connection herewith.  This Agreement may not be modified or amended except in writing executed by Plaintiffs and CONAM and approved by the Court.

23.   **BINDING EFFECT**.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and CONAM.  Without limiting the generality of the foregoing, upon the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than CONAM, which is a party to this Agreement) are third-party

beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

24. **EXECUTION IN COUNTERPARTS**. This Agreement may be executed in counterparts by Plaintiffs and CONAM, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25. **NOTICE**. Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

26. **PRIVILEGE**. Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

27. **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**. Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and

37

obligations created by this Agreement. Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28. **NO PARTY IS THE DRAFTER**. This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for CONAM. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29. **HEADINGS**. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30. **OPPORTUNITY TO CURE**. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

31. **GOVERNING LAW**. All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles.

32. **REASONABLE EXTENSIONS**. Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

38

33. **COUNSEL'S EXPRESS AUTHORITY**. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

Dated: August 5, 2025

For the Plaintiffs:


_____

Carmen A. Medici
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
cmedici@scott-scott.com


_____

Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com


_____

Swathi Bojedla
Hausfeld LLP
1200 17th Street, N.W., Suite 600
Washington, DC 20006
sbojedla@hausfeld.com

Dated: **8/6**, 2025

For CONAM:

Michael C. Cato
Chief Administrative Officer and
General Counsel

41

# EXHIBIT A-10

CWS

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II)** | **Case No. 3:23-MD-3071**<br>**MDL No. 3071**<br><br>**This Document Relates to:**<br>**ALL CASES**<br><br>**Judge Waverly D. Crenshaw, Jr.** |

**SETTLEMENT AGREEMENT**

THIS SETTLEMENT AGREEMENT ("Agreement" or "Settlement Agreement"), is made and entered into as of October 1, 2025 ("Execution Date"), by and between Plaintiffs, on behalf of themselves and on behalf of each putative Settlement Class Member, and CWS Apartment Homes LLC ("CWS") (collectively, the "Parties").

WHEREAS, Plaintiffs are prosecuting claims against CWS and other Defendants for allegedly conspiring to fix and inflate the price of multifamily rental housing across the country in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[1] (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of CWS's alleged participation in an unlawful conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for residential units nationwide and to exchange competitively sensitive information about rental pricing in violation

---

[1] The actions currently centralized in MDL No. 3071 include Cases No. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

of Section 1 of the Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Second Amended Consolidated Class Action Complaint, ECF No. 530;

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from CWS's alleged conduct;

WHEREAS, CWS denies Plaintiffs' allegations, denies any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against it in the Action, denies that a litigation class could properly be certified in the Action, and asserts that it has a number of valid defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Agreement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against CWS, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the Settlement Amount and the value of the cooperation that CWS has agreed to provide pursuant to this Agreement;

WHEREAS, CWS, despite its belief that it is not liable for the claims asserted by Plaintiffs and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement;

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date does not occur;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to CWS, subject to Court approval, on the following terms and conditions:

1. **GENERAL DEFINITIONS**.  The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a. "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

b. "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

c. "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

d. "Class Notice" means the form of notice of the Agreement approved by the Court and sent to the Settlement Class Members.

e. "Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (Dkt. 530, re-filed across the consolidated cases at Dkt. 728).

f.     "Court" means the United States District Court for the Middle District of Tennessee.

g.     "Defendants" means those Defendants named in Plaintiffs' Complaint (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Group, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

h.     "Effective Date" shall have the meaning set forth in Paragraph 2(f) of this Settlement Agreement.

i. "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

j. "Execution Date" means the latest date of the execution of this Agreement by all Parties.

k. "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to Plaintiffs' Counsel or counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including but not limited to fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

l. "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses, (b) Notice and Administration Expenses; (c) any Fee and Expense Award; (d) any Service Awards to Plaintiffs; and (e) other fees and expenses, if any, authorized by the Court.

m. "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with class notice and settlement administration, including but not limited to locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow Agent (if any). All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

n. "Notice Plan" means the plan and methodology used to notify Settlement Class Members of this Agreement that is approved by the Court.

o. "Objection Deadline" means the date set forth in the Class Notice by which a Settlement Class Member may object to the Settlement Agreement or move to intervene in the Action.

p. "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement Agreement in accordance with the procedures set forth in the Class Notice, and as determined by the Court in the Final Approval Order and Judgment, as defined below.

q. "Opt-Out Deadline" means the date set forth in the Class Notice by which any Settlement Class Member seeking exclusion must submit a written request for exclusion.

r. "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

s. "CWS's Counsel" means ArentFox Schiff LLP.

t. "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes, individually and on behalf of Settlement Class Members.

u. "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann

6

& Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

      v.    "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

      w.    "Preliminary Approval Order" means the order preliminarily approving the Settlement Agreement.

      x.    "Properties" means all multifamily rental properties owned, operated and/or managed by CWS that at any point during the Settlement Class Period were subject to a license for RealPage's Revenue Management Solutions pricing recommendations for multifamily rental units. The Properties account for all those for which CWS is deemed to have participated in RealPage's RMS as described in Paragraph 3 of the Agreement defining the "Settlement Class." A complete list of the Properties is included as Appendix A.

      y.    "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

      z.    "Releasees" means CWS and any and all of its past, present, and future, direct and indirect parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind. Releasees does not include other Defendants or owners of Properties for which CWS provides management services,

even if such owners are CWS's past, present, or future direct and indirect parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind solely to the extent a claim arises from such person's ownership of a multifamily property.

aa.     "Releasors" means Plaintiffs, all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Final Approval Order and Judgment, and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, or through the Releasors, with such claiming parties to include any and all of Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

bb.     "Revenue Management Solutions" or "RMS" means Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM").

cc.    "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

dd.    "Settlement Administrator" means the professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of this Settlement Agreement to the Settlement Class Members and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

ee.    "Settlement Amount" shall be $4,000,000.00 (four million U.S. dollars) as specified in Paragraph 5.

ff.    "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

gg.    "Settlement Class Member" means each member of the putative Settlement Class as defined in Paragraph 3 below.

hh.    "Settlement Class Period" means from October 18, 2018, through the date of entry of the Preliminary Approval Order.

ii.    "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

jj.    "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

kk.    "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon CWS with respect to any income earned by the Settlement Fund for any

9

period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

2.     **APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST CWS.**

a.     CWS shall use its reasonable best efforts in connection with Plaintiffs' Counsel's motions for approval of this Settlement Agreement and any related documents necessary to effectuate and implement the terms and conditions of this Settlement Agreement. Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement Agreement and to carry out the terms of this Settlement Agreement.

b.     Plaintiffs shall, by October 1, 2025, submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of the Preliminary Approval Order, which order shall include the substance of the provisions listed below in Section 2(e)(i)-(x). In advance of submission to the Court, the papers in support of the Preliminary Approval Motion shall be provided by Settlement Class Counsel to CWS's Counsel for review. To the extent CWS objects to any aspect of the Preliminary Approval Motion, it shall communicate such objection to Settlement Class Counsel and Settlement Class Counsel shall reasonably consider any such objections. CWS reserves the right to submit any unresolved objections to the Court.

c.     Within thirty (30) calendar days after the Execution Date, or as soon thereafter as is practicable, and to the extent that such information is not already in the possession of Plaintiffs, CWS shall supply Plaintiffs with the contact information of Settlement Class Members who rented multifamily housing units in Properties managed and/or owned by CWS

during the Settlement Class Period. To the extent necessary to effectuate notice to Settlement Class Members, CWS shall reasonably supplement the contact information to account for additional Settlement Class Members who may have been added through to the entry of an order preliminarily approving the Settlement Agreement. The contact information shall be provided in a mutually agreeable electronic format. Plaintiffs shall use their reasonable best efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering the Settlement Agreement. The Settlement Administrator and Plaintiffs may request from CWS additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this Agreement, and CWS will not unreasonably deny any such additional requests or fail to timely produce such data, if available.

   d. Plaintiffs shall submit to the Court a motion for authorization to disseminate Class Notice of the Settlement Agreement to the Settlement Class (the "Notice Motion"). The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice. In advance of submission to the Court, the papers in support of the Notice Motion shall be provided by Settlement Class Counsel to CWS's Counsel for review. To the extent CWS objects to any aspect of the Notice Motion, it shall communicate such objection to Settlement Class Counsel and Settlement Class Counsel shall reasonably consider any such objection. CWS reserves the right to submit any unresolved objections to the Court.

   e. Plaintiffs shall seek the entry of an order and final judgment (the "Final Approval Order and Judgment"), the text of which Plaintiffs and CWS shall agree upon, and such agreement will not be unreasonably withheld. The terms of that Final Approval Order and Judgment will include, at a minimum, the substance of the following provisions:

i.          confirming the certification of the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement Agreement as a Settlement Class for the Action;

ii.         approving finally this Settlement Agreement and its terms as being a fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

iii.        directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4)

iv.         directing that CWS shall release Plaintiffs, Releasors, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against CWS (as provided for in Paragraph 16);

v.          directing that the Action (including the Complaint) be dismissed as to CWS with prejudice, and except as provided for in this Agreement, without further fees and costs from CWS;

vi.         finding that CWS has complied with the notice provisions of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715;

vii.        reserving to the Court the exclusive jurisdiction over this Settlement Agreement, including the interpretation, administration, and consummation of this Settlement Agreement, as well as over CWS for its provision of cooperation pursuant to this Agreement;

viii.    determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to CWS shall be final;

ix.    providing that Plaintiffs and CWS have each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure; and

x.    providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any (a) non-settling Defendant to contest certification of any other class proposed in the Action, or of (b) CWS's right to contest certification of any other proposed class in the Action should this Agreement not become Final as described in subsection (f) to this Paragraph; (2) the Court's findings in this Final Approval Order and Judgment in the Action shall have no effect on the Court's ruling on any other motion to certify any class in the Action or on the Court's rulings concerning any Defendant's motion; and (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

f.    This Settlement Agreement shall become Final and be deemed to have received final approval when (a) the Final Approval Order and Judgment has been entered; and (b) either (i) no appeal has been taken from the judgment as of the date on which all times to appeal therefrom have expired, or (ii) an appeal or other review proceeding of the judgment having been commenced, such appeal or other review is finally concluded and no longer is subject to review by any court, whether by appeal, petitions for rehearing or re-argument, petitions for rehearing *en banc*, petitions for writ of certiorari, or otherwise, and such appeal or other review has been finally resolved in such manner that affirms the Final Approval Order and Judgment in all material

13

respects. The effective date of the Settlement Agreement ("Effective Date") is the date when each and all of the following conditions have occurred: (1) the Settlement Agreement has been fully executed by the Parties and their counsel; (2) the Court has entered the Preliminary Approval Order that, among other things, grants preliminary approval to the Settlement Agreement; (3) the Court has entered a Final Approval Order and Judgment finally approving the Settlement Agreement and entering a final judgment; and (4) the Final Approval Order and Judgment has become Final. It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and CWS shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

3. **CERTIFICATION OF A SETTLEMENT CLASS**. Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any Owner, Managing Defendants, and/or Owner-Operator participating in RealPage's Revenue Management Solutions,[2] including its pricing software and/or lease renewal staggering software programs, or to a division, subsidiary, predecessor, principal, agent, or affiliate of any such Owner, Managing Defendant, and/or Owner-Operator, at any time during the period of October 18, 2018 until entry of an order preliminarily approving the Settlement Agreement (the "Class Period"). Specifically excluded from this Class are Opt-Outs; Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; any affiliate, legal representative, heir or assign of any Defendant; any federal, state, or local governmental entities; instrumentalities of the federal government; states and their subdivisions, agencies, and instrumentalities; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action.

---

[2] "Owner," "Managing Defendants," and "Owner Operator" are defined in the Complaint and include the Defendants other than RealPage, Thoma Bravo Fund XIII, L.P., Thoma Bravo Fund XIV, L.P., and Thoma Bravo. "RealPage's Revenue Management Solutions" are defined in the Complaint.

CWS agrees that, for purposes of obtaining approval of this Settlement Agreement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. If the Effective Date does not occur, CWS shall have the full ability to oppose any motion for certification of a litigation class, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against CWS or any other Defendants.

4. <u>SETTLEMENT CLASS'S RELEASE</u>.

a. Upon the occurrence of the Effective Date and in consideration of the payment by CWS of the Settlement Amount and the obligations to be fulfilled pursuant to this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees from any and all claims, counterclaims, demands, liabilities, actions, potential actions, suits, causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had, now have, or hereinafter can, shall, or may ever have in the future, directly, representatively, derivatively or in any other capacity, against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, in law or equity, arising from or in connection with any act or omission through the end of the Class Period relating to the Properties and arising from the factual predicate of the Action, including but not limited to Defendants' alleged conspiracy to fix or inflate the prices of multifamily residential leases through the use of RealPage, Inc.'s Revenue Management Solutions including Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM"), and any joint and several liability claim(s) against CWS related to or arising from the

same factual predicate of this Action (the "Released Claims"). Released Claims shall not include: (i) claims asserted against any Defendant or co-conspirator other than Releasees; (ii) any claims wholly unrelated to the allegations in the Complaint or that may exist as a result of a landlord-tenant relationship between the Parties, including claims based on breach of contract, state landlord-tenant regulation, negligence, and personal injury; (iii) claims relating to the enforcement of the Settlement Agreement or its terms; or (iv) claims of any person or entity that submits a request for exclusion and whose request is accepted by the Court.

b.        In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein. Section 1542 of the California Civil Code provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

c.        The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

d.        The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement,

and absent any fraud by CWS that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

5.   **SETTLEMENT AMOUNT**.

a.   CWS agrees that an amount equal to USD $4 million (4,000,000.00 U.S. dollars) all in cash, will be paid on behalf of CWS as the Settlement Amount in complete settlement of the Action, inclusive of Settlement Class recovery amounts, fees and expenses (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action, with the exception of costs associated with the CAFA Notice, which shall be paid separately by CWS.  The payment described above shall constitute the total amount to be paid by CWS in settlement of these claims.  CWS shall have no other obligations to Plaintiffs, Releasors, counsel who have represented Plaintiffs, or Plaintiffs' Counsel to pay any other amounts, including no obligation to pay further attorneys' fees or costs to counsel who have represented Plaintiffs or Plaintiffs' Counsel. The Settlement Amount shall be paid into an interest-bearing escrow account (the "Escrow Account") maintained by an escrow agent on behalf of the Settlement Class, within thirty (30) calendar days of the Court's entry of the Preliminary Approval Order, provided a final escrow agreement is in place.  The Parties agree and acknowledge that none of the Settlement Amount paid by CWS under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

b.   If CWS (or its successor) does not pay or cause to be paid the Settlement Amount in full as required above, then Settlement Class Counsel, in its sole discretion, may, at

any time prior to the Court entering the judgment: (i) terminate the Agreement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class Members may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

      c.     The Settlement Agreement is non-recapture, *i.e.*, there will be no reversion of settlement funds to CWS, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, if the Settlement Agreement becomes Final. Upon the occurrence of the Effective Date, neither CWS, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of CWS's insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

      **6.**     **ESCROW ACCOUNT**.  An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel.  The Escrow Account shall be administered under the Court's continuing supervision and control.

      a.     Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any

Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b.      The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

c.      Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.  For the avoidance of doubt, nothing in this paragraph changes or modifies in any way the obligations of Plaintiffs and Settlement Class Counsel set forth in Paragraph 6(e) or 14(b) below.

d.      The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and

Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

e.     In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become Final for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to CWS via wire transfer all funds remaining in the Escrow Account at that time (including interest), less any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement Agreement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante. CWS shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective. Settlement Class Counsel shall ensure that the Settlement Administrator also provides CWS full and complete information related to the Escrow Account to enable CWS to determine whether any taxes may be owed on the funds returned to CWS.

7.     **TAX TREATMENT**.

a.     The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. The Parties agree to, and the Settlement Administrator and the Escrow Agent shall, (1) take all reasonable steps to facilitate the treatment of the Settlement Fund as described in the

preceding sentence and (2) refrain from taking any steps that would disqualify the Settlement Fund from such treatment. In addition, the Escrow Agent and, as required, Plaintiffs and CWS, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation §1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

b. For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treas. Reg. §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

c. All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, CWS and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Agreement (but not a Notice and Administration Expense) and shall be timely paid by

21

the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses. Plaintiffs and CWS agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

d. CWS, Releasees, and CWS's Counsel shall have no liability for or obligations relating to Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each CWS, Releasees, and CWS's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

e. Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

8. **CLASS ADMINISTRATION AND NOTICE.** As soon as practicable, Settlement Class Counsel will retain one or more Settlement Administrators that, jointly or separately, are responsible for all aspects of settlement administration. Such Settlement Administrator shall be approved by the Court and, if approved, overseen by Settlement Class Counsel. CWS will not have any involvement in the selection of the Settlement Administrator(s), the claims administration

process, or the plan of allocation of the settlement proceeds. The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement. In no event shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

a.     At no time and under no circumstances shall Plaintiffs, CWS, Settlement Class Counsel, Plaintiffs' Counsel, CWS's Counsel, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

b.     Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs. The Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs. The procedures for submitting claims shall conform to the procedures outlined below.

c.     Each Settlement Class Member wishing to participate in the Settlement Agreement shall be required to submit to the Settlement Administrator a Claim Form. Each Claim Form must be signed under the penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

d.     All Claim Forms must be received by the Settlement Administrator within the time prescribed in the plan for Notice as approved by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by

the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted. No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e.      Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

f.      Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement Agreement in connection with processing of Claim Forms.

g. Payment pursuant to this Settlement Agreement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved shall be barred from participating in distributions from the Net Settlement Fund.

h. All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process. All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein. The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

i. No Person shall have any claim against CWS, CWS's Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made substantially in accordance with this Settlement Agreement, the Plan of Allocation, or any orders of the Court.

9. **EXCLUSIONS**.

a. CWS reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

b.      A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice.   Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be considered a Releasor and bound by this Settlement Agreement. All Settlement Class Members who have been deemed by the Court to have submitted timely and valid requests for exclusion shall be listed in the Final Approval Order and Judgment.

c.      Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided that it is received no later than fourteen (14) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

d.      CWS or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

10.   **PAYMENT OF EXPENSES**.  Subject to Court approval, disbursements for payment of Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to CWS, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, in the event this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses have actually been expended or incurred. Any refund that becomes owed to CWS if this Settlement Agreement does not become Final may be paid out of the Escrow Account without approval of the Court.  Other than as set forth in this Paragraph, CWS shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and

expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs. To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement Agreement together with notice of any other settlements in the Action and to apportion the costs of notice and administration in an equitable manner across the applicable settlements.

11.     THE SETTLEMENT FUND.

a.     The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b.     After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation. CWS will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

c.     The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives. Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

## 12.    FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS.

a.    Settlement Class Counsel shall, no later than 35 days before the Objection Deadline, submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action; and/or (iii) Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"). CWS understands that Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable service awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

b.    Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon final approval of the Settlement Agreement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement Agreement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Amount is required, then within fifteen (15) business days after receiving notice of such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm or other counsel who have represented Plaintiffs that that has

received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction. Each law firm that serves as Plaintiffs' Counsel or other counsel who have represented Plaintiffs, as a condition of receiving a portion of the Attorneys' Fees and Expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this paragraph.

c.      The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement Agreement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement Agreement.

d.      Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph. No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of CWS or the Releasees, under this Agreement.

13. <u>**DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION**</u>.

a. **Discovery**. CWS agrees to complete the following discovery and discovery-related obligations, with all disputes concerning the same to be resolved by the mediator, Clay Cogman:

- **Structured Data**. CWS produced certain structured data to Plaintiffs on January 15, 2025. CWS is also working to finalize production to Plaintiffs of (i) monthly profit and loss data and (ii) to the extent not included in its prior productions, information sufficient to show on a per unit basis, the number of beds, baths, and square footage; the time period of the data will be the same time period used for CWS's prior productions of structured data. After completion of items (i) and (ii) above, CWS shall have no obligation to produce further structured data. CWS shall answer reasonable questions about its structured data.

- **Custodial Productions.** By September 30, 2025, CWS shall produce to Plaintiffs custodial documents from the following custodians, using search terms and date ranges as previously agreed upon by the parties in their email correspondence dated September 9, 2024, and September 18, 2024: Carol Ann Cordell, Ena Donovan, Tyler Rife, and Carey McDonald.

- **Regulator Productions.** To the extent not previously produced to Plaintiffs, CWS shall produce to Plaintiffs any documents previously produced to any other plaintiffs, or any federal, state, or other domestic regulator, concerning the subject matter of the Action or any allegations within the same factual predicate of the Action by September 30, 2025, with any future productions to such entities to be produced within five business days of production to the relevant entity, provided

however that the obligations under this subparagraph expire five years after the date of this Term Sheet.

- **Depositions.** CWS shall make available one 30(b)(6) witness for deposition in this Action, with specific topics to be negotiated and all parties reserving their rights on such negotiations, for up to ten hours of record time.

- **Authentication.** In the event that Plaintiffs are unable to obtain agreement regarding the authenticity of any document produced by CWS for later use in the Action, CWS shall use reasonable efforts to assist Plaintiffs in authenticating documents that CWS produced in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations or affidavits.

b. **Arbitration Non-Enforcement**. For a period of five (5) years after the Court enters Final Judgment in this Action, CWS agrees not to (a) require that any Settlement Class Member arbitrate any claims against CWS or against any alleged co-conspirator or codefendant relating to this Action, (b) argue that any Settlement Class Member is required to arbitrate claims in this Action against CWS or against any alleged co-conspirator or codefendant based on principles of estoppel, and (c) enforce, in this or any related Action, any provisions in any agreements with one or more Settlement Class Members purporting to ban collective or class actions against CWS or any alleged co-conspirator or co-defendant.

c. **RealPage Data Sharing**. In the event that the Court grants final approval of the Settlement Agreement, then for a period of five (5) years after the Settlement Agreement becomes Final, CWS shall (a) not directly provide to RealPage, Inc. any nonpublic data concerning multifamily residential leases, (b) not provide to (i) RealPage, Inc. or (ii) any other company

providing revenue management services that CWS knows uses as an input non-public data provided to RealPage, Inc. by CWS's competitors, CWS's nonpublic data concerning multifamily residential leases for use in revenue management services; and (c) not contract with RealPage, Inc. or any other company providing revenue management services, to use a revenue management service or program that CWS knows uses as an input non-public data provided to RealPage, Inc. by CWS's competitors; provided that Settlement Class Counsel may consent, or CWS may petition the Court, to delete or modify this provision based upon changed circumstances.

14. **TERMINATION AND RESCISSION**.

a. *Rejection or Alteration of Settlement Terms.* If (i) the Settlement Agreement does not become Final; or (iii) if Opt-Outs exceed ten percent of Settlement Class Members and CWS elects to revisit the terms of this Settlement Agreement, then the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement automatically terminates, unless an extension is otherwise agreed upon by the Parties in writing. Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement Agreement, CWS and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination is appropriate, unless an extension is otherwise agreed upon by the Parties. No Party shall be obligated to agree to terms different from those in this Agreement, except that a refusal to approve or modification or reversal on appeal based solely on or relating solely to the Settlement Class Counsel's fees and expenses award and/or Plan of Allocation shall not be deemed a refusal to approve or modify the terms of this Settlement Agreement.

b.     *Termination of Settlement*.   In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Class Notice and costs of administration of the Settlement Fund, if any, shall be refunded by the escrow agent to CWS pursuant to written instructions from CWS's Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of August 30, 2025, and without waiver of any positions asserted in the Action prior to that date.  Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c.     Plaintiffs, Settlement Class Members, Plaintiffs' Counsel, other counsel who have represented Plaintiffs, and CWS agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by CWS or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, Settlement Class Members, or Plaintiffs' Counsel in the Action, or of the propriety of certifying a litigation class, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs, Settlement Class Members, and Releasors cannot use them directly or indirectly except in a proceeding to enforce or interpret this Settlement Agreement.  Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms, subject to the limitations on use noted in Paragraph 17.

15. **COVENANT NOT TO SUE**. The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims. Plaintiffs and CWS agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure, to the best of their respective knowledge, information, and belief.

16. **CWS RELEASE**. CWS agrees not to seek relief against Plaintiffs, Releasors, and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the pending Action. Upon the Effective Date, CWS shall release Plaintiffs, Releasors, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against CWS, except for claims relating to the enforcement of the Settlement Agreement. For the avoidance of doubt, the Parties agree that CWS will not be releasing any claims or causes of action it may have against any Plaintiffs or Settlement Class Members, or any other person or entity, related to any lease agreement involving a property owned, operated, and/or managed by CWS.

17. **NO ADMISSION OF LIABILITY**. The Parties expressly agree that this Agreement, whether or not it shall become Final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by CWS, or any Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, and shall not be used against CWS or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or

proceeding, against CWS or the Releasees. CWS and Releasees retain all rights to assert that the Action may not be certified as a class action except for settlement purposes.

18. **JOINT AND SEVERAL LIABILITY PRESERVED**. This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than CWS and the Releasees. All claims against such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class Members. CWS's and the other Releasees' pricing of multifamily housing rental properties for the Settlement Class Members and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than CWS and the other Releasees. CWS and the Releasees shall not be responsible for any payment to Plaintiffs, the Settlement Class Members, counsel who have represented Plaintiffs, or Plaintiffs' Counsel other than the Settlement Amount and the amounts specifically agreed to in Paragraphs 5 and 10.

19. **CONFIDENTIALITY**. The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain confidential until publicly filed with the Court for approval. Nothing in Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel. Similarly, nothing in this Paragraph 19 shall prohibit CWS or any Releasee from making general disclosures as necessary to comply with the securities laws and other obligations, as well as in its public filings. Following the Execution Date, CWS and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement. This provision does not prohibit CWS from

coordinating amongst Defendants a response to Plaintiffs' proposed approval filings or other related materials or notices.

20. **CAFA**. CWS shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

21. **CONTINUING JURISDICTION**. The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and CWS, including challenges to the reasonableness of any party's actions. CWS will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction. The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22. **ENTIRE AGREEMENT**. This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and CWS pertaining to this settlement of the Action against CWS, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and CWS in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and CWS and approved by the Court.

23. **BINDING EFFECT**. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and CWS. Without limiting the generality of the foregoing, upon the Effective Date, each and every covenant and agreement made herein by

Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than CWS, which is a party to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

24. **EXECUTION IN COUNTERPARTS**. This Agreement may be executed in counterparts by Plaintiffs and CWS, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25. **NOTICE**. Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

26. **PRIVILEGE**. Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

27. **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**. Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and

(2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement. Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28. **NO PARTY IS THE DRAFTER**. This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for CWS. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29. **HEADINGS**. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30. **OPPORTUNITY TO CURE**. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

31. **GOVERNING LAW**. All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles. The Parties agree that the exclusive forum shall be the U.S. District Court for the Middle District of Tennessee to resolve any lawsuit or dispute arising out of the Settlement Agreement.

**32.** **REASONABLE EXTENSIONS**.  Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

**33.** **COUNSEL'S EXPRESS AUTHORITY**.  Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

Dated: October 1, 2025

For the Plaintiffs:

_____

Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com


_____

Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com


_____

Swathi Bojedla
Hausfeld LLP
1200 17th Street, N.W., Suite 600
Washington, DC 20036
sbojedla@hausfeld.com

# CWS SIGNATURE PAGE

**CWS APARTMENT HOMES LLC**

By: _Gary Carmell_
_____

Printed Name: Gary Carmell

Title: Partner

Dated: October 1, 2025


**APPROVED AS TO FORM:**

By: _____

Printed Name:  Ann H. MacDonald

Title:   Partner, ArentFox Schiff LLP

Dated: October 1, 2025

41

# EXHIBIT A-11

**ECI**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | **Case No. 3:23-MD-3071**<br>**MDL No. 3071**<br><br>**This Document Relates to:**<br>**ALL CASES**<br><br>**Judge Waverly D. Crenshaw, Jr.** |

**SETTLEMENT AGREEMENT**

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of September 11, 2025 ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and ECI Management, LLC ("ECI" and collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs are prosecuting claims against ECI and other Defendants for allegedly conspiring to fix and inflate the price of multifamily rental housing across the country on their own behalf and on behalf of the Settlement Class in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[1] (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, allege they were injured as a result of ECI's alleged participation in an unlawful conspiracy to fix, raise, stabilize, or maintain at artificially high levels the rents for residential units

---

[1] The actions currently centralized in MDL No. 3071 include Cases No. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

nationwide and to exchange competitively sensitive information about rental pricing in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and in violation of the various state laws as set out in the Second Amended Consolidated Class Action Complaint, ECF No. 530;

WHEREAS, Plaintiffs contend that they and the Settlement Class are entitled to actual damages, treble damages, attorney fees, and injunctive relief for loss or damage, as a result of violations of the laws as alleged in the Action, arising from ECI's alleged conduct;

WHEREAS, ECI denies Plaintiffs' allegations, denies any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against it in the Action, and asserts that it has a number of valid defenses to Plaintiffs' claims;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against ECI, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the Settlement Amount (defined below) and the value of the cooperation that ECI has agreed to provide pursuant to this Agreement;

WHEREAS, ECI, despite its belief that it is not liable for the claims asserted by Plaintiffs and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the release, order, and judgment contemplated by this Agreement;

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Effective Date does not occur;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to ECI, subject to Court approval, on the following terms and conditions:

1. **GENERAL DEFINITIONS**. The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a. "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

b. "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

c. "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

d. "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

e. "Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (Dkt. 530, re-filed across the consolidated cases at Dkt. 728).

f. "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

g. "Defendants" means those Defendants named in Plaintiffs' Complaint (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Group, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co., LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

h. "Effective Date" shall have the meaning set forth in Paragraph 2 of this Settlement Agreement.

i. "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

j. "Execution Date" means the latest date of the execution of this Agreement by all Parties.

k. "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

l. "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses, (b) Notice and Administration Expenses; (c) any Fee and Expense Award; (d) any Service Awards to Plaintiffs; and (e) other fees and expenses, if any, authorized by the Court.

m. "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow Agent (if any). All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

n. "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

o.      "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

p.      "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

q.      "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

r.      "ECI's Counsel" means King & Spalding, LLP.

s.      "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes, individually and on behalf of Settlement Class Members.

t.      "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

u.      "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

6

v. "Preliminary Approval Order" and "Preliminary Approval" mean the order preliminarily approving the Settlement.

w. "Properties" means all multifamily rental properties listed in Appendix A. The Properties account for all those for which ECI is deemed to have participated in RealPage's RMS as described in Paragraph 3 of the Agreement defining the "Settlement Class."

x. "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

y. "Releasees" means ECI and any and all of its past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind, including the affiliated entities listed in Appendix A. However, the release will not cover other Defendants or owners of Properties for which ECI provides management services, unless specifically listed in Appendix A, even if such owners are ECI's past, present, or future direct and indirect parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind solely to the extent a claim arises from such person's ownership of a multifamily property.

z. "Releasors" means Plaintiffs, the Settlement Class, and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, or through the Releasors, with such claiming parties to include any and all of Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

aa. "Revenue Management Solutions" or "RMS" means Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM").

bb. "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

cc. "Settlement Administrator" means the professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of this Settlement to the Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

dd. "Settlement Amount" shall be USD three million and five hundred thousand dollars ($3,500,000.00 dollars) as specified in Paragraph 5.

ee.     "Settlement Class" means the class defined in Paragraph 3 below.

ff.     "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

gg.     "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

hh.     "Settlement Class Period" means from October 18, 2018 to the date of Preliminary Approval.

ii.     "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

jj.     "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

kk.     "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon ECI with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

2.     **APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST ECI**.

a.     ECI shall use its reasonable best efforts in connection with Plaintiffs' Counsel's motions for approval of this Settlement and any related documents necessary to effectuate and implement the terms and conditions of this Settlement Agreement. Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps

9

and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement.

b.      Plaintiffs will seek preliminary approval of the Settlement Agreement by October 1, 2025. The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

c.      Within thirty (30) days after the execution of the long-form Settlement Agreement, ECI shall supply to Plaintiffs any contact information they maintain of Settlement Class Members who rented multifamily housing units in buildings managed/owned by ECI during the Settlement Class Period, to the extent such information has not already been provided. The contact information shall be provided in a mutually agreeable electronic format. Plaintiffs shall use their reasonable best efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering this Settlement. The claims administrator and Plaintiffs may request from ECI additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this settlement, and ECI will not unreasonably deny any such additional requests or fail to timely produce such data, if available and able to be produced without undue burden to ECI.

d.      Plaintiffs shall submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion").  The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

e.      Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and ECI shall agree upon, and such agreement will not be unreasonably withheld.

The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

i.    certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii.    approving finally this Settlement and its terms as being fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

iii.    directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4)

iv.    directing that ECI shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against ECI (as provided for in Paragraph 16);

v.    directing that the Action (including the Complaint) be dismissed as to ECI with prejudice, and except as provided for in this Agreement, without costs;

vi.    reserving to the Court the exclusive jurisdiction over this Settlement and this Agreement, including the interpretation, administration, and consummation of this Settlement, as well as over ECI for its provision of cooperation pursuant to this Agreement;

vii.    determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to ECI shall be final;

11

viii.     providing that Plaintiffs and ECI have each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure; and

ix.     providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any (a) non-settling Defendant to contest certification of any other class proposed in the Action, or of (b) ECI's right to contest certification of any other proposed class in the Action should this Agreement not become final as described in subsection (f) to this Paragraph; (2) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify any class in the Action or on the Court's rulings concerning any Defendant's motion; and (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

f.     This Agreement shall become final and be deemed to have received final approval when (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 3, approved this Agreement under Federal Rule of Civil Procedure 23(e), and entered a final judgment dismissing the Action with prejudice as to ECI without costs other than those provided for in this Agreement; and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to ECI described in (i) hereof has expired in the Action or, if appealed, approval of this Agreement and the order and final judgment in the Action as to ECI have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review (the "Effective Date"). It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in

determining the above-stated times. On the Execution Date, Plaintiffs and ECI shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

3.   **CERTIFICATION OF A SETTLEMENT CLASS**.  Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any Owner, Managing Defendants, and/or Owner-Operator participating in RealPage's Revenue Management Solutions,[2] including its pricing software and/or lease renewal staggering software programs, or from a division, subsidiary, predecessor, agent, or affiliate of any such Owner, Managing Defendant, and/or Owner-Operator, at any time during the period of October 18, 2018 until entry of an order preliminarily approving the Settlement Agreement (the "Class Period"). Specifically excluded from this Class are Opt-Outs; Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; any affiliate, legal representative, heir or assign of any Defendant; any federal, state, or local governmental entities; instrumentalities of the federal government; states and their subdivisions, agencies, and instrumentalities; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action.

ECI agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only.  If the Effective Date does not occur, ECI shall have the full ability to oppose any motion for certification of a litigation class, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against ECI.

4.   **SETTLEMENT CLASS'S RELEASE**.

a.   Upon the occurrence of the Effective Date and in consideration of the payment by ECI of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph

---

[2] "Owner," "Managing Defendants," and "Owner Operator" are defined in the Complaint and include the Defendants other than RealPage, Thoma Bravo Fund XIII, L.P., Thoma Bravo Fund XIV, L.P., and Thoma Bravo. "RealPage's Revenue Management Solutions" are defined in the Complaint.

13

13 of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees from any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had or now have directly, representatively, derivatively or in any other capacity against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, arising from the conduct that was alleged or could have been alleged in this Action and relating to the Properties based on any or all of the same factual predicate of the Action, including but not limited to ECI's alleged participation in a conspiracy to fix or inflate the price of multifamily residential lease prices through the use of RealPage, Inc.'s Revenue Management Solutions including Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM"), and any joint and several liability claim(s) against ECI related to or arising from the same factual predicate of this Action (the "Released Claims"). Released Claims shall not include: (i) claims asserted against any Defendant or co-conspirator other than ECI and its affiliated entities listed in Appendix A, or any owner of any of the Properties listed in Appendix A other than ECI and its affiliated entities listed in Appendix A; (ii) any claims wholly unrelated to the allegations in the Complaint or that may exist as a result of a landlord-tenant relationship between the Parties, including claims based on breach of contract, state landlord-tenant regulation, negligence, and personal injury; (iii) claims

relating to the enforcement of the settlement or its terms; or (iv) any claims of any person or entity that submits a request for exclusion and whose request is accepted by the Court.

b.      In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein. Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

c.      The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

d.      The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by ECI that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

5.      **SETTLEMENT AMOUNT**.

a.      ECI agrees that an amount equal to USD $3,500,000.00, all in cash, will be paid on behalf of ECI as the Settlement Amount in settlement of the Action, inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action.  The payment described above shall constitute the total amount to be paid by ECI in settlement of these claims.  The Settlement Amount shall be paid into an interest-bearing escrow account (the "Escrow Account") maintained by an escrow agent on behalf of the Settlement Class, within ninety (90) calendar days after the Execution Date. The Parties agree and acknowledge that none of the Settlement Amount paid by ECI under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

b.      If ECI (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified above, then Settlement Class Counsel, in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

c.      The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement, and there will be no reversion of settlement funds to ECI, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, if the Settlement becomes final. Upon the occurrence of the Effective Date, neither ECI, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of ECI's

insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

**6.** **ESCROW ACCOUNT**. An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel. The Escrow Account shall be administered under the Court's continuing supervision and control.

a. Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b. The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class

Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

        c.     Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

        d.     The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

        e.     In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to ECI via wire transfer all funds remaining in the Escrow Account at that time, less any reasonable unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante. ECI shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has

otherwise failed to become effective. Settlement Class Counsel shall ensure that the Settlement Administrator also provides ECI full and complete information related to the Escrow Account to enable ECI to determine whether any taxes may be owed on the funds returned to ECI.

7. **TAX TREATMENT**.

a. The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and ECI, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation §1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

b. For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treas. Reg. §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect

that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

        c.      All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, ECI and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses. Plaintiffs and ECI agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

        d.      ECI, Releasees, and ECI's Counsel shall have no liability for or obligations relating to Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each ECI, Releasees, and ECI's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

        e.      Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

**8.** <u>CLASS ADMINISTRATION AND NOTICE</u>. As soon as practicable, Settlement Class Counsel will retain one or more Settlement Administrator that, jointly or separately, are responsible for all aspects of settlement administration. Such Settlement Administrator shall be approved by the Court and, if approved, overseen by Settlement Class Counsel. ECI will not have any involvement in, or responsibility for, the selection of the Settlement Administrator(s), the claims administration process, delivery of notice to class members, the plan of allocation of the settlement proceeds, or the actual allocation of the settlement proceeds, unless expressly stated herein. The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed and implemented solely by Plaintiffs' counsel, and their agents, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement. In no event shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

a. At no time and under no circumstances shall Plaintiffs, ECI, Settlement Class Counsel, Plaintiffs' Counsel, ECI's Counsel, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

b. Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs. The Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs. The procedures for submitting claims shall conform to the procedures outlined below.

c. Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form. Each Claim Form must be signed under the penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

d. All Claim Forms must be received by the Settlement Administrator within the time prescribed in the Preliminary Approval Order unless otherwise ordered by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted. No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e. Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

f. Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim

will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

g. Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h. All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process. All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein. The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

i. No Person shall have any claim against ECI, ECI's Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations

23

or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

9. <u>**EXCLUSIONS**</u>.

a. ECI reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

b. A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice. Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

c. Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

d. ECI or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

10. <u>**PAYMENT OF EXPENSES**</u>. Subject to Court approval, disbursements for payment of Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to ECI, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, in the event this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses have actually been expended or incurred. Any refund that becomes owed to ECI if this Settlement does not become final or is rescinded or

otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court. Other than as set forth in this Paragraph, ECI shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials, or the negotiation of other settlements, or for class administration and costs. To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action and to apportion the costs of notice and administration in an equitable manner across the applicable settlements.

11. **THE SETTLEMENT FUND**.

a. The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b. After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation. ECI will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

c. The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives. Instead, any and all such costs, fees, and expenses approved by the Court, or

authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

12. **FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS.**

a. ECI understands that Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval of the Agreement, submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action; and/or (iii) and Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"). ECI understands that Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable service awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

b. Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon final approval of the Settlement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or

reversed, or return of the Settlement Amount is required, then within fifteen (15) business days after receiving notice from ECI of such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction. Each law firm that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Attorneys' Fees and Expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this paragraph.

c.     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement.

d.     Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph. No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs,

expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of ECI or the Releasees, under this Agreement.

13. **DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION**.

a. <u>Cooperation</u>. Cooperation by ECI is a material term of the Settlement and shall include the following categories of cooperation, with all disputes concerning the same to be resolved by the mediator, Clay Cogman:

i. ECI shall answer reasonable questions concerning its structured data production;

ii. ECI shall produce to Plaintiffs any documents produced to any other plaintiffs, or any federal, state, or other domestic regulator, concerning the subject matter of the Action or any allegations within the same factual predicate of the Action within five business days of the execution of this Agreement, with any documents produced to such entities after execution of this Agreement to be produced five business days after their production to such other plaintiffs or regulators;

iii. ECI shall make available one 30(b)(1) witness, for a deposition not to exceed seven (7) record hours;

iv. To the extent any trial in this Action goes forward in M.D. Tenn. or any federal district court in Georgia, ECI shall make available one witness for trial, accepting service of a trial subpoena and agreeing to waive any objections under Rule 45(c) relating to place of compliance;

v. ECI shall use reasonable efforts to assist Plaintiffs in authenticating documents and/or things produced in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations or affidavits, or, if declarations or affidavits

are not reasonably sufficient, depositions, hearings, and/or at trial(s) as may be necessary for the Action.

        b.      <u>Arbitration Non-Enforcement</u>. For a period of five (5) years after the Court enters Final Judgment in this Action, and limited to matters arising out of the factual predicate of this Action, ECI agrees not to (a) require that any member of the Settlement Class ("Class Member") arbitrate any claims in this Action against ECI or against any alleged co-conspirator or co-defendant, (b) argue that any Class Member or Class Members are required to arbitrate claims against ECI or against any alleged co-conspirator or codefendant based on principles of estoppel, and (c) enforce any provisions in any agreements with one or more Class Members purporting to ban collective or class actions against ECI in this Action.

        c.      <u>RealPage Data Sharing</u>. For a period of five (5) years after the Court enters Final Judgment in this Action, ECI shall (a) not provide to RealPage, Inc. any nonpublic data concerning multifamily residential leases for use in relation to the provisioning of revenue management services to ECI's competitors, or permit RealPage, Inc. to share ECI's nonpublic data concerning multifamily residential leases for use in revenue management services provided to ECI's competitors; and (b) not contract with RealPage, Inc. to use a revenue management service or program that ECI knows or should have known uses as an input non-public data provided to RealPage, Inc. by ECI's competitors; provided that Settlement Class Counsel may consent, or ECI may petition the Court, to delete or modify this provision based upon changed circumstances.

      14.    <u>**TERMINATION AND RESCISSION**</u>.

        a.      *Rejection or Alteration of Settlement Terms.* If (i) the Court refuses to grant preliminary or final approval of this Agreement or certify the Settlement Class or such grant or

certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to ECI or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs exceed ten percent of Settlement Class Members and ECI elects to revisit the terms of this Settlement, then the Parties shall have sixty (60) days to meet and confer about possible reformulation of the Settlement Agreement, and after such time, the Settlement Agreement automatically terminates, unless an extension is otherwise agreed upon by the Parties. Alternatively, if the Court provides feedback such that its approval is conditioned on material modifications to this Settlement Agreement, ECI and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this Settlement Agreement are appropriate, including whether termination is appropriate, unless an extension is otherwise agreed upon by the Parties. A refusal to approve or modification or reversal on appeal based solely on or relating solely to the Settlement Class Counsel's fees and expenses award and/or Plan of Allocation shall not be deemed a refusal to approve or modification of the terms of this Settlement Agreement.

       b.    *Termination of Settlement*. In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Class Notice and costs of administration of the Settlement Fund, if any, shall be refunded by the escrow agent to ECI pursuant to written instructions from ECI's Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of July 23, 2025, and without waiver of any positions asserted in the Action prior to that date. Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c.       Plaintiffs, the Settlement Class, Settlement Class Counsel, and ECI agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by ECI or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly or indirectly except in a proceeding to enforce or interpret this Settlement Agreement.  Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms.

**15.     COVENANT NOT TO SUE**.  The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims. Plaintiffs and ECI agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

**16.     ECI RELEASE**.  Pending the Effective Date, ECI agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the pending Action. Upon the Effective Date, ECI shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate

in any way to the institution, prosecution, or settlement of the claims against ECI, except for claims relating to the enforcement of the Settlement.

17. <u>**No Admission of Liability**</u>. The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by ECI, or any Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, and shall not be used against ECI or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against ECI or the Releasees.

18. <u>**Joint and Several Liability Preserved**</u>. This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than ECI and the Releasees. All claims against such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class. ECI's and the other Releasees' pricing of multifamily housing rental properties for the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims against non-Releasees and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than ECI and the other Releasees. ECI and the Releasees shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount and the amounts specifically agreed to in Paragraphs 5 and 10.

19. <u>**Confidentiality**</u>. The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain

confidential until publicly filed with the Court for approval. Nothing in Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel. Similarly, nothing in this Paragraph 19 shall prohibit ECI or any Releasee from making general disclosures as necessary to comply with the securities laws and other obligations, as well as in its public filings. Following the Execution Date, ECI and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement.

20. **CAFA**. ECI shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

21. **CONTINUING JURISDICTION**. The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and ECI, including challenges to the reasonableness of any party's actions. ECI will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction. The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22. **ENTIRE AGREEMENT**. This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and ECI pertaining to this Settlement of the Action against ECI, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and ECI in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and ECI and approved by the Court.

23.    **BINDING EFFECT**.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and ECI.  Without limiting the generality of the foregoing, upon the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors.  The Releasees (other than ECI, which is a party to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.  Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

24.    **EXECUTION IN COUNTERPARTS**.  This Agreement may be executed in counterparts by Plaintiffs and ECI, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25.    **NOTICE**.  Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

26.    **PRIVILEGE**.  Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection,

or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

27. **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**. Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement. Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28. **NO PARTY IS THE DRAFTER**. This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for ECI. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29. **HEADINGS**. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30. **OPPORTUNITY TO CURE**. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

31. **GOVERNING LAW**. All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of

laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles.

32. **REASONABLE EXTENSIONS**.  Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

33. **COUNSEL'S EXPRESS AUTHORITY**.  Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

Dated: September 11, 2025

For the Plaintiffs:



Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com



Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com



Swathi Bojedla
Hausfeld LLP
1200 17th Street NW, Suite 600
Washington, DC 20036
sbojedla@hausfeld.com

Dated: 9/5/25

For ECI:

38

# EXHIBIT A-12

**FCM**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | **Case No. 3:23-MD-3071**<br>**MDL No. 3071**<br><br>**This Document Relates to:**<br>**ALL CASES**<br><br>**Judge Waverly D. Crenshaw, Jr.** |

**SETTLEMENT AGREEMENT**

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of September 30, 2025 ("Execution Date"), by and between the Plaintiffs, on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and First Communities Management, Inc. ("FCM" and collectively with Plaintiffs, the "Parties").

WHEREAS, Plaintiffs alleged claims against FCM and other Defendants concerning the price of multifamily rental housing on Plaintiffs' own behalf and on behalf of the Settlement Class in *In Re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, MDL No. 3071[1] (the "Action");

WHEREAS, FCM denies Plaintiffs' allegations and has asserted numerous defenses, but wishes to avoid the expense and business distraction of protracted litigation;

---

[1]    The actions currently centralized in MDL No. 3071 include Cases No. 3:22-cv-01082; 3:23-cv-00332; 3:23-cv-00357; 3:23-cv-00378; 3:23-cv-00413; 3:23-cv-00552; 3:23-cv-00742; and 3:23-cv-00979.

1

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Agreement, and this Agreement embodies all of the terms and conditions of this Settlement;

WHEREAS, Plaintiffs, through their counsel, investigated the facts and law regarding the Action, and have concluded that resolving the claims against FCM, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the Settlement Amount (defined below) and the value of the cooperation that FCM has agreed to provide pursuant to this Agreement;

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event that the Settlement is not approved;

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to FCM, subject to Court approval, on the following terms and conditions:

1. **GENERAL DEFINITIONS**. The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a. "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

2

b.      "Claim Form" means the form approved by the Court by which a Claimant makes a claim to share in the proceeds of the Net Settlement Fund.

c.      "Claimant" means a person or entity who or which submits a Claim Form to the Settlement Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

d.      "Class Notice" means the form of notice of the Settlement approved by the Court and sent to the Settlement Class Members.

e.      "Complaint" means the Second Amended Consolidated Class Action Complaint filed on September 7, 2023 (Dkt. 530, re-filed across the consolidated cases at Dkt. 728).

f.      "Court" means the United States District Court for the Middle District of Tennessee and the Honorable Waverly D. Crenshaw, Jr.

g.      "Defendants" means those Defendants named in Plaintiffs' Complaint (*i.e.*, Allied Orion Group, LLC; Apartment Income REIT Corp. d/b/a AIR Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Co.; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; CONAM Management Corporation; CONTI Texas Organization, Inc. d/b/a CONTI Capital; Cortland Management, LLC; Crow Holdings, LP; Trammell Crow Residential Co.; CWS Apartment Homes, LLC; Dayrise Residential, LLC; ECI Management, LLC; Equity Residential; Essex Group, Inc.; First Communities Management, Inc.; FPI Management, Inc.; Greystar Management Services, LLC; Highmark Residential, LLC; Independence Realty Trust, Inc.; Kairoi Management, LLC; Knightvest Residential; Lantower Luxury Living, LLC; Lincoln Property Co.; Mid-America Apartment Communities, Inc.; Mid-America Apartments L.P.; Mission Rock Residential, LLC; Morgan Properties Management Co.,

LLC; Pinnacle Property Management Services, LLC; Prometheus Real Estate Group, Inc.; RealPage, Inc.; Rose Associates, Inc.; RPM Living, LLC; Sares Regis Group Commercial, Inc.; Security Properties Residential, LLC; Sherman Associates, Inc.; Simpson Property Group, LLC; Thoma Bravo L.P.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; The Related Companies, L.P.; Related Management Co., L.P.; Thrive Communities Management, LLC; UDR, Inc.; Windsor Property Management Co.; WinnCompanies, LLC; WinnResidential Manager Corp.; and ZRS Management, LLC).

        h.     "Effective Date" shall have the meaning set forth in Paragraph 2 of this Settlement Agreement.

        i.     "Escrow Agent" means Huntington National Bank or its duly appointed successor, or such other bank as may be proposed by Settlement Class Counsel and approved by the Court.

        j.     "Execution Date" means the latest date of the execution of this Agreement by all Parties.

        k.     "Fee and Expense Award" means any portion of the Settlement Fund approved by the Court for payment to counsel who have represented Plaintiffs or the Settlement Class, including such counsel's attorneys' fees, costs, and litigation expenses, including fees, costs, and expenses of experts (excluding Notice and Administration Expenses).

        l.     "Net Settlement Fund" means the balance of the Settlement Fund remaining after payment of (a) Taxes and any Tax Expenses, (b) Notice and Administration Expenses; (b) any Fee and Expense Award; (c) any Service Awards to Plaintiffs; and (d) other fees and expenses, if any, authorized by the Court.

m.     "Notice and Administration Expenses" means the reasonable costs and expenses that are incurred in connection with locating Settlement Class Members in accordance with the Notice Plan; preparing, printing, disseminating, and publishing notice under the Notice Plan; soliciting the submission of Claim Forms; assisting with the submission of Claim Forms; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation; and paying escrow fees and costs for the Escrow Agent (if any).  All such Notice and Administration Expenses shall be paid from the Settlement Fund in accordance with the terms of this Agreement and Orders of the Court.

n.     "Notice Plan" means any plan and methodology used to notify Settlement Class Members of this Settlement that is approved by the Court.

o.      "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from this Settlement in accordance with the procedures set forth in the Class Notice.

p.     "Opt-Out Deadline" means the date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

q.     "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government or any political subdivision or agency thereof, and any other type of legal or political entity, any representative, and, as applicable, his, her or its respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

r.     "FCM's Counsel" means Gordon Rees Scully Mansukhani.

5

s.     "Plaintiffs" means Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes, individually and on behalf of Settlement Class Members.

t.     "Plaintiffs' Counsel" means Settlement Class Counsel and Plaintiffs' additional counsel, Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague, P.C.; Cafferty Clobes Meriwether & Sprengel LLP; Lowey Dannenberg, P.C.; Joseph Saveri Law Firm, LLP; Kozyak Tropin & Throckmorton LLP; and Burke LLP.

u.     "Plan of Allocation" means the plan of allocation approved by the Court for the allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

v.     "Preliminary Approval Order" and "Preliminary Approval" mean the order preliminarily approving the Settlement.

w.     "Properties" means all multifamily rental properties managed by FCM that at any point during the Settlement Class Period were subject to a license for RealPage's Revenue Management Solutions pricing recommendations for multifamily rental units.  The Properties account for all those for which FCM is deemed to have participated in RealPage's RMS as described in Paragraph 3 of the Agreement defining the "Settlement Class."

x.     "Released Claims" shall have the meaning set forth in Paragraph 4 of this Settlement Agreement.

y.     "Releasees" means FCM and any and all of its past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and

6

assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind. However, the release will not cover other Defendants named in the Complaint or owners of Properties for which FCM provides management services, even if such owners are FCM's past, present, or future direct and indirect parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind solely to the extent a claim arises from such person's ownership of a multifamily property.

z. "Releasors" means Plaintiffs, the Settlement Class, and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, or through the Releasors, with such claiming parties to include any and all of Releasors' past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations with whom

7

any of the foregoing have been or now will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

aa. "Revenue Management Solutions" or "RMS" means Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM").

bb. "Service Award" means the Court-approved monetary award for Plaintiffs paid from the Settlement Fund, as further defined in Paragraph 12.

cc. "Settlement Administrator" means the professional and independent entity or entities retained by Plaintiffs' Counsel and appointed by the Court to disseminate Class Notice of this Settlement to the Settlement Class and administer the distribution of the Net Settlement Fund to the Settlement Class Members, including all matters related thereto.

dd. "Settlement Amount" shall be USD $1,500,000 (one million five hundred thousand dollars) as specified in Paragraph 5.

ee. "Settlement Class" means the class defined in Paragraph 3 below.

ff. "Settlement Class Counsel" means Scott+Scott Attorneys at Law LLP, Robins Kaplan LLP, and Hausfeld LLP.

gg. "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

hh. "Settlement Class Period" means from October 18, 2018 to the date of Preliminary Approval.

ii. "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

jj. "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of Paragraph 7 (including, without limitation, expenses of tax

8

attorneys and/or accountants, and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 7).

kk. "Taxes" means taxes (including any interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon FCM with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for Federal or state income tax purposes.

2. **APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST FCM.**

a. FCM shall use its reasonable best efforts in connection with Plaintiffs' Counsel's motions for approval of this Settlement and any related documents necessary to effectuate and implement the terms and conditions of this Settlement Agreement. Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts consistent with this Settlement Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to seek the Court's approval of this Settlement and to carry out the terms of this Settlement Agreement.

b. By October 1, 2025, Plaintiffs shall submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.

c. Within thirty (30) calendar days after the Execution Date, or as soon thereafter as is practicable, FCM shall supply Plaintiffs with the contact information of Settlement Class Members who rented multifamily housing units in Properties managed and/or owned by FCM during the Settlement Class Period to the extent such information is reasonably available and

9

which does not require FCM to create new records. To the extent necessary to effectuate notice to Settlement Class Members, FCM shall reasonably supplement the contact information to account for additional Settlement Class Members who may have been added through to the entry of an order preliminarily approving the Settlement Agreement. The contact information shall be provided in a mutually agreeable electronic format. Plaintiffs shall use their reasonable best efforts to secure contact information of Settlement Class Members from other Defendants for the purpose of noticing and administering this Settlement. The Settlement Administrator and Plaintiffs may request from FCM additional data reasonably necessary to effectuate the Class Notice ordered by the Court and/or administer this Agreement, and FCM will not unreasonably deny any such additional requests or fail to timely produce such data, if available.

d. Plaintiffs shall submit to the Court a motion for authorization to disseminate Class Notice of the Settlement to the Settlement Class (the "Notice Motion"). The Notice Motion shall include a proposed Notice Plan, which addresses the form of, method for, and proposed dates of dissemination of Class Notice.

e. Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and FCM shall agree upon, and such agreement will not be unreasonably withheld. The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

i. certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii. approving finally this Settlement and its terms as being a fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule

10

23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

        iii.      directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4)

        iv.      directing that FCM shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against FCM  (as provided for in Paragraph 16);

        v.      directing that the Action (including the Complaint) be dismissed as to FCM with prejudice and, except as provided for in this Agreement, without costs;

        vi.      reserving to the Court the exclusive jurisdiction over this Settlement and this Agreement, including the interpretation, administration, and consummation of this Settlement, as well as over the reasonableness of Plaintiffs' requests for cooperation and FCM's provision of cooperation pursuant to this Agreement;

        vii.      determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to FCM shall be final;

        viii.      providing that Plaintiffs and FCM have each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure; and

        ix.      providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any (a) non-settling Defendant to contest certification of any other class proposed in the Action, or of (b) FCM's right to contest certification of any other proposed class in the Action should this Agreement not become

final as described in subsection (f) to this Paragraph; (2) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify any class in the Action or on the Court's rulings concerning any Defendant's motion; and (3) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

       f.     This Agreement shall become final and be deemed to have received final approval when (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 3, approved this Agreement under Federal Rule of Civil Procedure 23(e), and entered a final judgment dismissing the Action with prejudice as to FCM without costs other than those provided for in this Agreement; and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to FCM described in (i) hereof has expired in the Action or, if appealed, approval of this Agreement and the order and final judgment in the Action as to FCM have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review (the "Effective Date"). It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and FCM shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 5 and 14.

       **3.**     **CERTIFICATION OF A SETTLEMENT CLASS**. Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who paid rent on at least one multifamily residential real estate lease directly to any

Owner, Managing Defendants, and/or Owner-Operator participating in RealPage's Revenue Management Solutions,[2] including its pricing software and/or lease renewal staggering software programs, or from a division, subsidiary, predecessor, agent, or affiliate of any such Owner, Managing Defendant, and/or Owner-Operator, at any time during the period of October 18, 2018 until entry of an order preliminarily approving the Settlement Agreement (the "Class Period"). Specifically excluded from this Class are Opt-Outs; Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; any affiliate, legal representative, heir or assign of any Defendant; any federal, state, or local governmental entities; instrumentalities of the federal government; states and their subdivisions, agencies, and instrumentalities; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action.

FCM agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. If the Effective Date does not occur, FCM shall have the full ability to oppose any motion for certification of a litigation class, and Plaintiffs may not use anything in the Settlement Agreement, preliminary approval papers, or other settlement materials against FCM.

4.  **SETTLEMENT CLASS'S RELEASE**.

a.  Upon the occurrence of the Effective Date and in consideration of the payment by FCM of the Settlement Amount and the obligations to be fulfilled pursuant to Paragraph 13 of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Releasees from any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had or now have directly, representatively, derivatively or

---

[2] "Owner," "Managing Defendants," and "Owner Operator" are defined in the Complaint and include the Defendants other than RealPage, Thoma Bravo Fund XIII, L.P., Thoma Bravo Fund XIV, L.P., and Thoma Bravo. "RealPage's Revenue Management Solutions" are defined in the Complaint.

13

in any other capacity against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, arising from the conduct that was alleged or could have been alleged in this Action and relating to the Properties based on any or all of the same factual predicate of the Action, including but not limited to FCM's alleged participation in a conspiracy to fix or inflate the price of multifamily residential lease prices through the use of RealPage, Inc.'s Revenue Management Solutions including Lease Rent Options ("LRO"), YieldStar, and AI Revenue Management ("AIRM"), and any joint and several liability claim(s) against FCM related to or arising from the same factual predicate of this Action (the "Released Claims"). Released Claims shall not include: (i) claims asserted against any Defendant or co-conspirator other than FCM, or any owner of any of the Properties other than FCM; (ii) any claims wholly unrelated to the allegations in the Complaint or that may exist as a result of a landlord-tenant relationship between the Parties, including claims based on breach of contract, state landlord-tenant regulation, negligence, and personal injury; (iii) claims relating to the enforcement of the Settlement or its terms; or (iv) claims of any person or entity that submits a request for exclusion and whose request is accepted by the Court.

        b.      In addition to the provisions of Paragraph 4(a), the Releasors acknowledge that they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil

Code, with respect to the claims released herein. Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

c.     The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

d.     The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by FCM that induced the Releasors to grant the releases herein, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

**5.     SETTLEMENT AMOUNT.**

a.     FCM agrees that an amount equal to USD $1,500,000 (one million five hundred thousand U.S. dollars), will be paid on behalf of FCM as the Settlement Amount in settlement of the Action, inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), Service Awards, Notice and Administration Expenses, and all other costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action. The payment described above shall constitute the total amount to be paid by FCM in settlement of these claims. The Settlement Amount shall be paid into an interest-bearing escrow

15

account (the "Escrow Account") maintained by an escrow agent on behalf of the Settlement Class, within thirty (30) days after the Execution Date. Plaintiffs shall provide wire instructions to FCM for the purpose of FCM paying or causing to be paid the Settlement Amount. The Parties agree and acknowledge that none of the Settlement Amount paid by FCM under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

        b.     If FCM (or its successor) does not pay or cause to be paid the Settlement Amount in full within the time period specified above, then Settlement Class Counsel, in its sole discretion, may, at any time prior to the Court entering the judgment: (i) terminate the Settlement by providing written notice to counsel for the Parties; (ii) seek to enforce the terms of the Settlement and this Agreement and seek entry of a judgment and/or order to effectuate and enforce the terms of this Agreement; and/or (iii) pursue such other rights as Plaintiffs and the Settlement Class may have arising out of the failure to timely pay the Settlement Amount in full into the Escrow Account.

        c.     The Settlement is non-recapture, *i.e.*, it is not a claims-made settlement, and there will be no reversion of settlement funds to FCM, its insurance carriers, or any other person or entity who or which funded the Settlement Amount, if the Settlement becomes final. Upon the occurrence of the Effective Date, neither FCM, Releasees, or any other person or entity who or which paid any portion of the Settlement Amount (including, without limitation, any of FCM's insurance carriers), shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

        **6.**     **ESCROW ACCOUNT**. An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel. The Escrow Account shall be administered under the Court's continuing supervision and control.

16

a.     Any sums required to be held in escrow hereunder shall be held by the Escrow Agent, which shall be controlled by Settlement Class Counsel (subject to the supervision of the Court) for the benefit of the Settlement Class. To the extent that money is not paid out from the Settlement Fund as authorized by this Agreement or as otherwise ordered by the Court, all assets held by the Escrow Agent in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed or returned pursuant to this Agreement and/or further order of the Court. Other than amounts disbursed for Notice and Administration Expenses, Taxes and Tax Expenses, and any Fees and Expense Award, the remainder of the Settlement Fund shall not be distributed before the Effective Date occurs. The Escrow Agent shall not disburse the Settlement Fund, or any portion thereof, except as provided in this Settlement Agreement, or upon order of the Court. The Escrow Agent shall bear all risks related to the holding of the Settlement Fund in the Escrow Account.

b.     The Escrow Agent, at the direction of Settlement Class Counsel, shall invest all funds exclusively in eligible investments, meaning obligations or securities issued or guaranteed by the United States Government or any agency or instrumentality thereof, backed by the full faith and credit of the United States, or fully insured by the United States Government or an agency thereof, and including any mutual funds or similar funds invested solely in such obligations or securities, and the Escrow Agent (unless otherwise instructed by Settlement Class Counsel) shall reinvest the proceeds of these obligations or securities as they mature in similar instruments at their then-current market rates. Interest earned on the money deposited into the Escrow Account shall be part of the Settlement Fund and accrue to the benefit of the Settlement Class.

c.     Neither the Parties nor their respective counsel shall be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (i) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (ii) the investment of any Settlement Fund assets; or (iii) any act, omission, or determination of the Escrow Agent.

d.     The Settlement Fund shall be used to pay: (i) Taxes and any Tax Expenses, (ii) Notice and Administration Expenses as authorized by this Agreement; (iii) any Fee and Expense Award; (iv) any Service Awards to Plaintiffs; and (v) other fees and expenses, if any, authorized by the Court. The balance of the Settlement Fund remaining after the above payments shall constitute the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Agreement and the Plan of Allocation approved by the Court.

e.     In the event this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to FCM via wire transfer all funds remaining in the Escrow Account at that time, less any reasonable documented unpaid expenses incurred by Settlement Class Counsel under Paragraph 8 in attempting to effectuate this Settlement contemplated herein and/or performing their obligations under this Agreement, and the Parties' respective positions shall be returned to the status quo ante.  FCM shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective.  Settlement Class Counsel shall ensure that the Settlement Administrator also provides FCM full and complete information related to the Escrow Account to enable FCM to determine whether any taxes may be owed on the funds returned to FCM.

18

7.    **TAX TREATMENT**.

      a.    The Parties agree that the Settlement Fund is intended at all times to be and shall to the maximum extent permitted by law be treated as, a qualified settlement fund within the meaning of Treasury Regulation §1.468B-1 and §468B of the Internal Revenue Code of 1986, as amended (the "Code"), for the taxable years of the Settlement Fund, beginning with the date it is created. In addition, the Escrow Agent and, as required, Plaintiffs and FCM, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1(j)(2)(ii)) back to the earliest permitted date; provided that no election under Treasury Regulation §1.468B-1(k) to treat a qualified settlement fund as a subpart E trust shall be made. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

      b.    For purposes of §468B of the Code and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all tax returns necessary or advisable with respect to the Settlement Fund, and make all required payments of Taxes, including deposits of estimated Tax payments in accordance with Treas. Reg. §1.468B-2(k). Such tax returns (as well as the elections described in Paragraph 7(a) above) shall be consistent with this Paragraph 7 and reflect that all Taxes and Tax Expenses (including any estimated Taxes and Tax Expenses, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

c. All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, FCM and Releasees shall have no liability for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement (but not a Notice and Administration Expense) and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such Taxes and Tax Expenses or any other amounts required to be withheld by applicable laws, including pursuant to Treasury Regulation §1.468B-2(l), including the establishment of adequate reserves for any Taxes and Tax Expenses. Plaintiffs and FCM agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

d. FCM, Releasees, and FCM's Counsel shall have no liability for or obligations relating to Taxes and Tax Expenses, including with respect to acts or omissions of the Settlement Administrator or its agents with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each FCM, Releasees, and FCM's Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

e. Plaintiffs and Plaintiffs' Counsel shall have no liability for or obligations with regard to Taxes and Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold Plaintiff and each of Plaintiffs' Counsel harmless for any Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such indemnification).

**8.** **CLASS ADMINISTRATION AND NOTICE**. As soon as practicable, Settlement Class Counsel will retain one or more Settlement Administrator(s) that, jointly or separately, are

responsible for all aspects of settlement administration. Such Settlement Administrator(s) shall be approved by the Court and, if approved, overseen by Settlement Class Counsel. FCM will not have any involvement in the selection of the Settlement Administrator(s), the claims administration process, or the plan of allocation of the settlement proceeds. The Settlement Administrator(s) will be selected solely by Plaintiffs' counsel, and the plan of allocation will be proposed solely by Plaintiffs' counsel, subject to Court approval. Notice and Administration Expenses shall be paid from the Settlement Fund as authorized by this Agreement. In no event shall Plaintiffs or Settlement Class Counsel be responsible for paying any amount for the Notice and Administration Expenses. Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single Class Notice to the extent possible.

a. At no time and under no circumstances shall Plaintiffs, FCM, Settlement Class Counsel, Plaintiffs' Counsel, FCM's Counsel, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrator(s) or their agents.

b. Notice to Settlement Class Members of this Agreement shall be in conformance with the Notice Plan approved by the Court, after submission by Plaintiffs. The Claim Form shall conform to the form approved by the Court after proposed submissions by Plaintiffs. The procedures for submitting claims shall conform to the procedures outlined below.

c. Each Settlement Class Member wishing to participate in the Settlement shall be required to submit to the Settlement Administrator a Claim Form. Each Claim Form must be signed under the penalty of perjury and must be supported by such documents as specified in the instructions contained in the Claim Form or otherwise given by the Settlement Administrator.

21

d.	All Claim Forms must be received by the Settlement Administrator within the time prescribed in the Preliminary Approval Order unless otherwise ordered by the Court. Any Settlement Class Member who fails to submit a properly completed Claim Form within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Agreement or from the Settlement Fund. Notwithstanding the foregoing, Settlement Class Counsel may, in its discretion (i) accept for processing late submitted claims, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed; and (ii) waive what Settlement Class Counsel deem to be *de minimis* or technical defects in any Claim Form submitted. No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, or the Settlement Administrator by reason of any exercise of discretion with respect to such late submitted or technically deficient claims.

e.	Each Claim Form shall be submitted to and reviewed by the Settlement Administrator who shall determine, under the supervision of Settlement Class Counsel, in accordance with this Agreement, the Plan of Allocation approved by the Court, and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to review by the Court, as described below.

f.	Without regard to whether a Claim Form is submitted or allowed, each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claimant's claim, and such Claimant's claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Claim Forms.

g.     Payment pursuant to this Settlement shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund.

h.     All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of and decided by the Court, if they cannot otherwise be resolved during the claims process.  All Plaintiffs, Settlement Class Members, Claimants, and Releasors expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations as provided herein.  The decision of the Court with respect to objections to the Settlement Administrator's claim determinations shall be final and binding on all Plaintiffs, Settlement Class Members, Claimants, and Releasors, and there shall be no appeal to any court, including the United States Court of Appeals for the Sixth Circuit, such right of appeal having been knowingly and intentionally waived by each Plaintiff, Settlement Class Member, Claimant, and Releasor.

i.     No Person shall have any claim against FCM, FCM's Counsel, Releasees, Plaintiffs, Releasors, Plaintiffs' Counsel, or the Settlement Administrator, based on determinations or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation, or any orders of the Court.

9.     **EXCLUSIONS**.

a.     FCM reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

23

b.　A Settlement Class Member wishing to request exclusion must comply with the instructions set forth in the Class Notice.　Subject to Court approval, a request for exclusion that does not comply with the requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Settlement Agreement.

c.　Any Person who or which submits a request for exclusion may thereafter submit to the Settlement Administrator a written revocation of that request for exclusion, provided that it is received no later than two (2) days before the Fairness Hearing, in which event that person will be included in the Settlement Class.

d.　FCM or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

10.　**PAYMENT OF EXPENSES**.　Subject to Court approval, disbursements for payment of Notice and Administration Expenses (including any escrow fees and costs) and Tax and Tax Expenses may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to FCM, its insurance carriers, or any other person or entity who or which funded the Settlement Amount,　in the event this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses have actually been expended or incurred.　Any refund that becomes owed to FCM if this Settlement does not become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court.　Other than as set forth in this Paragraph, FCM shall not be liable for any of the Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court,

24

appeals, trials, or the negotiation of other settlements, or for class administration and costs. To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts to disseminate notice of this Settlement together with notice of any other settlements in the Action and to apportion the costs of notice and administration in an equitable manner across the applicable settlements.

11. **THE SETTLEMENT FUND**.

a. The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b. After the Effective Date, the Settlement Fund shall be distributed in accordance with a Plan of Allocation. FCM will take no position with respect to such Plan of Allocation proposed by Settlement Class Counsel, or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 10.

c. The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives. Instead, any and all such costs, fees, and expenses approved by the Court, or authorized by Paragraph 10, shall be paid out of the Settlement Fund in accordance with this Agreement.

12. **FEE AWARDS, COSTS AND EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS**.

a. Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval of the Agreement, submit an application or applications to

the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund, (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action; and/or (iii) and Service Awards for Plaintiffs, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"). Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable service awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

        b.     Attorneys' fees, costs, and expenses, as awarded by the Court, shall be payable from the Escrow Account, immediately upon final approval of the Settlement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on this Settlement or any part thereof. Settlement Class Counsel shall thereafter be solely responsible for allocating the Fee and Expense Award among Plaintiffs' Counsel in a manner in which Settlement Class Counsel may agree or have agreed based on their assessment of the overall respective contributions of such counsel to the initiation, prosecution, and resolution of the Action. However, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Amount is required, then within fifteen (15) business days after receiving notice from FCM of such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel law firm that that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction. Each law firm

26

that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the Attorneys' Fees and Expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for purposes of enforcing the provisions of this paragraph.

c. The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the Plaintiffs to be paid out of this Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving this Settlement.

d. Nothing in this Paragraph 12, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses shall impact the finality of this Agreement, regardless of what the courts may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph. No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of FCM or the Releasees, under this Agreement.

## 13. DISCOVERY OBLIGATIONS AND NON-MONETARY CONSIDERATION.

a. FCM shall answer reasonable questions about its structured data production made in accordance with the Parties' Settlement Term Sheet executed on July 30, 2025, provided that such assistance shall be provided to the extent it can be done without imposing undue burden

27

or expense on FCM, which shall not be required to conduct additional analysis, interpretation, or production of new data.

b.      FCM has not produced documents to any other plaintiffs, or any federal, state, or other domestic regulator, concerning the subject matter of the Action or any allegations within the same factual predicate of the Action. But if FCM makes such a production during the pendency of the Action, FCM will provide the production to Plaintiffs within five business days.

c.      FCM has produced custodial documents that hit on search terms agreed upon by the parties during their discovery negotiations from the following agreed-upon custodians Kevin Carr, Nicole Griffith, Zhen Ou, Stacy Baptiste, and Samantha Hoard. FCM reserves the right to revisit the produced documents' confidentiality designations at any point later in the litigation.

d.      FCM shall make available one 30(b)(6) witness, for a deposition not to exceed seven (7) record hours;

e.      FCM shall use reasonable efforts to assist Plaintiffs in authenticating documents and/or things produced in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations or affidavits, or, if the Court deems declarations or affidavits insufficient, then by the least onerous sufficient form of testimony (e.g., trial deposition); and

f.      RealPage Data Sharing. For a period of five (5) years after the Court enters Final Judgment in this Action, FCM shall (a) not provide to RealPage, Inc., any nonpublic data concerning multifamily residential leases, or permit RealPage, Inc., or any other company providing revenue management services that FCM knows or should have known uses as an input non-public data provided to RealPage, Inc. by FCM's competitors to share FCM's nonpublic data

concerning multifamily residential leases for use in revenue management services; and (b) not

contract with RealPage, Inc. or any other company providing revenue management services, to use

a revenue management service or program that FCM knows or should have known uses as an input

non-public data provided to RealPage, Inc. by FCM's competitors; provided that Settlement Class

Counsel may consent, or FCM may petition the Court, to delete or modify this provision based

upon changed circumstances.

        g.     Except as expressly set forth in this Paragraph 13, FCM shall have no

further obligation to provide additional discovery, production, supplementation or written

responses.

        **14.**     **T**ERMINATION AND **R**ESCISSION.

        a.     *Rejection or Alteration of Settlement Terms.*  If (i) the Court refuses to grant

preliminary or final approval of this Agreement or certify the Settlement Class or such grant or

certification is set aside on appeal; (ii) the Court does not enter final judgment with respect to FCM

or such final judgment is not affirmed on appeal; or (iii) if Opt-Outs exceed ten percent of

Settlement Class Members and FCM elects to revisit the terms of this Settlement, then the Parties

shall have sixty (60) days to meet and confer about possible reformulation of the Settlement

Agreement, and after such time, the Settlement Agreement automatically terminates, unless an

extension is otherwise agreed upon by the Parties.  Alternatively, if the Court provides feedback

such that its approval is conditioned on material modifications to this Settlement Agreement,  FCM

and Plaintiffs agree to discuss in good faith within sixty (60) days whether any adjustments to this

Settlement Agreement are appropriate, including whether termination is appropriate, unless an

extension is otherwise agreed upon by the Parties.  A refusal to approve or modification or reversal

on appeal based solely on or relating solely to the Settlement Class Counsel's fees and expenses

award and/or Plan of Allocation shall not be deemed a refusal to approve or modification of the terms of this Settlement Agreement.

b. *Termination of Settlement.* In the event of termination or rescission pursuant to this Paragraph 14, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Class Notice and costs of administration of the Settlement Fund, if any, shall be refunded by the escrow agent to FCM pursuant to written instructions from FCM's Counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective statuses in the Action as of July 30, 2025, and without waiver of any positions asserted in the Action prior to that date. Except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.

c. Plaintiffs, the Settlement Class, Settlement Class Counsel, and FCM agree that, whether or not the Court finally approves this Settlement Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by FCM or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable and the Plaintiffs and the Settlement Class cannot use them directly or indirectly except in a proceeding to enforce or interpret this Settlement Agreement. Nothing in this Settlement Agreement shall affect the application of Federal Rule of Evidence 408. However, the Parties agree that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Agreement or for any other purpose with respect to implementing or enforcing its terms.

15. **COVENANT NOT TO SUE**. The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Releasees based, in whole or part, upon any of the Released Claims. Plaintiffs and FCM agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure.

16. **FCM RELEASE**. Pending the Effective Date, FCM agrees not to seek relief against Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the pending Action. Upon the Effective Date, FCM shall release Plaintiffs, Settlement Class Members, Settlement Class Counsel, and Plaintiffs' Counsel from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against FCM, except for claims relating to the enforcement of the Settlement.

17. **NO ADMISSION OF LIABILITY**. The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by FCM, or any Releasees, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, and shall not be used against FCM or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against FCM or the Releasees.

18. **JOINT AND SEVERAL LIABILITY PRESERVED**. This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than FCM and the Releasees. All claims against such

31

non-Releasees are specifically reserved by Plaintiffs and the Settlement Class. FCM's and the other Releasees' pricing of multifamily housing rental properties for the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than FCM and the other Releasees. FCM and the Releasees shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount and the amounts specifically agreed to in Paragraphs 5 and 10.

19. **CONFIDENTIALITY**. The Parties agree that this Settlement Agreement, all settlement discussions, and all materials exchanged during settlement negotiations, shall remain confidential until publicly filed with the Court for approval. Nothing in Paragraph 19 shall prohibit Settlement Class Counsel from disclosing this Agreement to their clients or co-counsel. Similarly, nothing in this Paragraph 19 shall prohibit FCM or any Releasee from making general disclosures as necessary to comply with the securities laws and other obligations, as well as in its public filings. Following the Execution Date, FCM and Plaintiffs may inform other parties to this Action that they have executed a settlement agreement.

20. **CAFA**. FCM shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

21. **CONTINUING JURISDICTION**. The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and

32

agreement by Plaintiffs and FCM, including challenges to the reasonableness of any party's actions. The Parties will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction. The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22. **ENTIRE AGREEMENT**. This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and FCM pertaining to this Settlement of the Action against FCM, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and FCM in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and FCM and approved by the Court.

23. **BINDING EFFECT**. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and FCM. Without limiting the generality of the foregoing, upon the Effective Date, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than FCM, which is a party to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

24. **EXECUTION IN COUNTERPARTS**. This Agreement may be executed in counterparts by Plaintiffs and FCM, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

33

25. <u>**NOTICE**</u>.  Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

26. <u>**PRIVILEGE**</u>.  Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

27. <u>**VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**</u>.  Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement.  Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel.  Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28. <u>**NO PARTY IS THE DRAFTER**</u>.  This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for FCM.  None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any

statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

29. **HEADINGS**. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

30. **OPPORTUNITY TO CURE**. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

31. **GOVERNING LAW**. All terms of this Agreement shall be governed and interpreted according to the substantive laws of Tennessee without regard to its choice of law or conflict of laws principles. Any disputes relating to the Agreement shall also be governed by the substantive laws of Tennessee without regard to its choice of law or conflict of law principles.

32. **REASONABLE EXTENSIONS**. Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

33. **COUNSEL'S EXPRESS AUTHORITY**. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s) subject to Court approval.

Dated: September 30, 2025

For the Plaintiffs:


_____
Patrick Coughlin
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Ste 3300
San Diego, CA 92101
pcoughlin@scott-scott.com


_____
Stacey Slaughter
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com


_____
Swathi Bojedla
Hausfeld LLP
1200 17th St NW, Suite 600
Washington, DC 20036
sbojedla@hausfeld.com

**FOR THE DEFENDANT:**

**FIRST COMMUNITIES MANAGEMENT, INC.**

By: _____

Printed Name: Kevin L. Carr

Title: Chief Financial Officer

Dated: September 29, 2025


**APPROVED AS TO FORM:**

By: _____

Printed Name: Leigh Woodruff

Title: Partner, Gordon Rees Scully Mansukhani

Dated: September 29, 2025